UNITED STATES BANKRUPTCY COURT              February 10, 2006
SOUTHERN DISTRICT OF NEW YORK              10:00 a.m.
---------------------------------------------------------x
In re                                      Chapter 11

EAST 44TH REALTY, LLC,                     Case No.  05-16167

                        Debtor.
---------------------------------------------------------x


## MOTION TO ASSUME LEASE


East 44th Realty, LLC, the debtor and debtor-in-possession herein (the "Debtor"),

by its attorneys, Davidoff Malito & Hutcher, LLP, as and for its application for an order

authorizing the Debtor to assume that certain lease dated as of December 9, 1960, as amended

from time to time thereafter (the "Lease"), by and between the Debtor and East Forty Fourth

Street L.L.C. ("Landlord") for the building located at 228-238 East 44th Street, New York, New

York (the "Building"), respectfully represents as follows:


## INTRODUCTION


1.      The Debtor filed its Chapter 11 petition on August 5, 2005 ("Petition

Date").


2.      The Building subject to the Lease is a multi-story building comprised of

164 residential units and three commercial spaces.

3.      The Debtor is the sub-lessor of the premises.  The Debtor collects rent from its subtenants and manages the Building. The filing of this case was necessitated by an ongoing dispute between the Debtor and the Landlord concerning alleged defaults by the Debtor under the Lease and efforts by the Landlord to terminate the Lease. The issue of the existence of those defaults was the subject of an appeal pending in the Appellate Division as of Petition Date. The Appellate Division has since ruled, holding that the Debtor is responsible to complete certain repairs to the facade that were subject to a dispute between the parties.

4.      The Lease has substantial value to the Debtor's estate above any cure amount due to the Landlord.

5.      Although the Debtor does not have a formal appraisal, the Debtor estimates that the Lease has a value well in excess of the approximate $13 million due to the Debtor's secured creditor, New York Community Bank.

## BACKGROUND

6.      For some time, therefore, the Landlord has been waging a ruthless litigation campaign to terminate the Lease so that it can make the profit instead of the Debtor.

7.      On July 2, 2004, the Landlord served the Debtor with a notice of default based on the Debtor's purported failure to complete certain undelineated repairs and threatened

2

to terminate the Lease if the alleged default was not cured within thirty (30) days. On July 28, 2004, the Debtor commenced the action styled East 44th Realty, LLC v. East Forty-Fourth Street L.L.C., Index No. 110952/04 (Diamond, J.), in which the Debtor sought and was granted a Yellowstone injunction. The Landlord subsequently asserted counterclaims, and moved for summary judgment before issue was joined on its counterclaims. Significantly, at no time has the Landlord specified what repairs are required to cure the default.

      8.     The parties' motions were decided by the trial court in an order dated February 26, 2005.  Among other things, the court held that the Debtor was responsible for the repairs at issue, but failed to define the scope of the work ostensibly required, or to order the Landlord to do so. The trial court also vacated the Yellowstone injunction and failed to provide the Debtor with any time to effect the repairs, which would in all events require more than the four days remaining in the cure period to complete. On March 10, 2005, the Landlord purported to serve a Notice of Termination of the Lease as of March 31.  The Debtor served its Notice of Appeal of the Lower Court Order on March 18, 2005. On May 6, after the trial court denied a motion for a preliminary injunction reinstating the Yellowstone injunction, the Debtor made an emergency application to the Appellate Division for a stay pending appeal pursuant to CPLR §§ 5518 and 5519. An interim stay was granted on May 6 and on May 26, the Appellate Division granted the Debtor's motion for a stay pending appeal, thereby staying the effect of the purported Termination Notice.

9.      The Debtor's petition herein was filed before the expiration of the stay
pending appeal.  This Court's subsequent lift stay order permitted the pending appeal to proceed
to decision, but not to enforcement.  Thus, this Court continued the Debtor's protection from
lease termination notwithstanding the lifting of the stay to permit the Appeal to proceed.

10.     Ultimately, the Appellate Division entered its decision, holding that the
Debtor is required to make certain repairs and the Debtor has retained a contractor and an
engineer to do so.  See Exhibits A and B hereto.  Based on these agreement, the Debtor estimates
that the cost will be about $15,000.

11.     Given the substantial equity that the Debtor believes it has in the Lease
above and beyond any cure amount due to the Landlord, the Debtor intends to preserve that value
for the benefit of its bankruptcy estate, its creditors and equity security holders.  Now that the
Appellate Division has spoken, the Debtor seeks to assume that lease, to cure all defaults in
connection therewith, and to confirm a plan of reorganization as soon as possible that will
provide for payment in full for all creditors.  If that means fixing things that are not broken, the
Debtor will do so in order to comply with State Court rulings and assume the Lease.

12.     In any event, part of the financing for cure amounts will be available from
a large set off claim the Debtor has against the Landlord for approximately $113,000 of
overcharges.

4

13.    In that regard, it is well settled that a landlord may not collect real estate taxes and similar charges from a tenant under the guise of an additional rent clause when the landlord has not itself been obligated to pay such amounts, unless the lease is unmistakably clear on this point.  E.g.,  Wellington Tower Associates, L.P. v. New York First Ave. CVS, Inc. 3 A.D.3d 460, 770 N.Y.S.2d 859 (1st Dept. 2004); 1152 First Ave. LLC v. MNY Holdings Associates, LLC 5 Misc.3d 131(A), 798 N.Y.S.2d 714 (Table) (1st Dept. 20040; Fair Oak, L.L.C. v. Greenpoint Financial Corp. 5 Misc.3d 1004(A), 798 N.Y.S.2d 709 (Table) (Nassau Sup. 2004); 1411 Trizechahn-Swing, L.L.C. v. Henry I. Siegel Co., Inc. 2001 WL 1657274 (N.Y. Civil Ct 2001).  Indeed, "[t]o hold otherwise would allow the plaintiff-landlord to reap a windfall not envisioned by the parties' agreement."  Rudd v. 176 West 87th St. Owners Corp., 283 A.D.2d 202, 724 N.Y.S.2d 299 (1st Dep't 2001); S.B.S. Assocs. v. Weissman-Heller, Inc., 190 A.D.2d 529, 593 N.Y.S.2d 28 (1st Dep't 1993); Fairfax Co. v. Whelan Drug Co., Inc., 105 A.D.2d 647, 481 N.Y.S.2d 366 (1st Dep't 1984).

14.    Since December 4, 2002, the Debtor has been making monthly payments to the Landlord in the nature of additional rent for real estate tax, water and sewer charges to compensate the Landlord for the amounts that the Landlord was required to remit to the City of New York for those charges.

15.    The Debtor has reviewed the NYC Water Board's website which lists the amounts that the Landlord actually remitted to the City.  As set forth in the Debtor's earlier application in this case for an examination under Rule 2004, the Debtor's review of the website

indicates that the Landlord has overcharged the Debtor both pre-petition, and while under this Court's jurisdiction.  The amount paid by the Debtor appears to exceed the amount that the Landlord paid to the City by $112,693.49 as of December 28, 2004.

16.     Subsequent to the filing of this case, therefore, by letter dated October 17, 2005 to the Landllord's managing agent, the Debtor requested an accounting of the monies held by the Landlord in escrow under the Lease and/or overpaid by the Debtor to the Landlord.

17.     By letter dated October 19, 2005, the Landlord denied the Debtor's request claiming, inter alia, that they "note a respectful disagreement that the debtor retains any interest in any funds once remitted to the Landlord."  By letter dated October 24, 2005, the Debtor: (a) once again requested accountings; (b) explained that the Landlord must account for any asset that the Debtor may have had an interest in as of the date of the bankruptcy filing; (c) requested the express Lease provisions giving rise to the tax escrow rights asserted in the Managing Agent's letter of October 19, 2005.  The October 24, 2005 letter also provided the Debtor's accounting of the overpayments from December 2002 to date.

18.     By letter dated October 27, 2005, the Landlord again denied the Debtor's request claiming inter alia that "the lease is devoid of any provision that obligates our client to provide an 'accounting' of any payment made to it (including any one or more components of Additional Rent, in whole or in part)" but would consider same if the Debtor agreed to reimburse the Landlord for the Landlord's expenses.

6

19.    In summary, the Landlord has overcharged the Debtor for amounts that are not due, both pre-petition and post-petition, in direct violation of New York law and the Bankruptcy Code, to the severe prejudice of the Debtor's bankruptcy estate.  The Debtor intends to recover those amounts for the benefit of its estate, which will further reduce any amounts due to the Landlord for cure costs.

20.    The Landlord's legal fees are outrageously high, and the Landlord seeks compensation for all of those amounts.  Indeed, given the absence of any evidence of any significant problem that needs to be repaired at the Building, the Debtor contends that the Landlord has been manufacturing litigation for the improper purpose of terminating the Lease.  Accordingly, the Debtor intends to dispute the legal fees claims as unreasonable, and pay the amounts necessary by setoff against overcharges, and excess cash flow.  In addition, the Debtor may seek compensation for its own legal fees in defending itself against the Landlord's attacks, which the Debtor believes have been launched for the improper purpose of terminating the Lease.

21.    It should also be pointed out to the Court that in order to make it more expensive for the Debtor to operate the Building, the Landlord repeatedly interfered with the Building's management by taking control of the Debtor's responsibility for insurance and real estate tax, water and sewer charges, and then substantially over-billing the Debtor for these expenses as additional rent.  In the case of the $15,000 of facade work, however, the Landlord, although ostensibly dissatisfied with the Debtor's repair work on three occasions, chose not to

7

take control over that item and then bill the repair cost as additional rent, but  instead engaged in

years of unnecessary litigation for the purpose of taking back the Lease for which the Debtor had

paid $20 million, and running up legal fees.


## RELIEF REQUESTED HEREIN


22.     By this application, therefore, the Debtor seeks to assume the Lease

pursuant to section 365(a) of the Bankruptcy Code.


23.     In order to satisfy its cure obligations under section 365(b)(1)(A), the

Debtor intends to both repair the facade pursuant to the order of the Appellate Division, and, as

heretofore indicated, to provide for payment of such amount as the Bankruptcy Court deems

necessary as and for the Landlord's monetary Claim, which, upon information and belief, is

limited to legal fees.  Such payment, however, will be without prejudice to the Debtor's right to

pursue the Landlord for any and all claims that the Debtor may have against it for its pre-petition

and post-petition conduct.


24.     With respect to the facade work ordered by the State Court, pursuant to the

contract annexed hereto as Exhibit A, Wayne Bellet Construction estimates that the cost of the

facade work will be approximately $13,000.  In order to ensure that the facade work is performed

in accordance with the order of the Appellate Division, the Debtor has also retained Merrit

8

Engineering Consultants, P.C. to perform all necessary inspections pursuant to the agreement annexed hereto as Exhibit B.

     25.    The Debtor can only speculate as to the amount of legal fees that the Landlord will ultimately allege must be paid as part of a cure.  The Debtor, however, respectfully suggests that such "reasonable" fees as the Landlord might be entitled to should be no more than the approximate $113,000 amount that the Landlord has refused to transfer back to the Debtor's estate on account of amounts that have been over-billed for New York City tax, water and sewer charges.  Accordingly, any monetary cure amount can be paid by way of set-off.  In the event, however, that additional amounts may be due, the Debtor's projections, a copy of which is anexed hereto as Exhibit C, indicates available yearly excess cash flow of more than $371,000 in year one of the assumption period alone.

     26.    In addition, with respect to adequate assurance of future performance, the projections also show that the Building itself generates sufficient cash flow to carry its operating expenses and debt service.  Indeed, the Debtor has never fallen into default on those items.  Rather, this case was the result of the Landlord's unscrupulous attempt to unfairly terminate the Lease.

     27.    No prior request for the relief sought herein has been made to this or any other Court.

9

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order authorizing the Debtor to assume the Lease, and that the Court grant such other, further and different relief as this Court may deem just and proper.

Dated:        New York, New York
              January 31, 2006

                          **EAST 44TH REALTY, LLC**

              By:     s/ Joseph Bildirici

                          **DAVIDOFF MALITO & HUTCHER, LLP**
                          Attorneys for the Debtor

              By      s/ Larry Hutcher
                      605 Third Avenue, 34th Floor
                      New York, New York 10158
                      (212) 557-7200

10