**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------x
                                    :
In re                               :    Chapter 11 Case No.
                                    :
EAST 44TH REALTY, LLC,              :    05-16167 (RDD)
                                    :
            Debtor.                 :
                                    :
------------------------------------------------------x
```

## LANDLORD'S MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF MOTION FOR ORDER
### DIRECTING RELEASE AND RETURN TO LANDLORD OF ITS PROPERTY
### INCLUDING ALL SUBLEASE PROCEEDS, AND OTHER RELATED RELIEF

Judy G.Z. Liu, Esq. (JL 6449)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153

- and -

Lawrence E. Tofel, Esq. (LT 8631)
TOFEL & PARTNERS, LLP
800 Third Avenue
New York, New York  10022

Co-Attorneys for Landlord, East Forty-Fourth Street, LLC


Dated: February 1, 2006

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS ................................................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

I.      THE DEBTOR CANNOT ASSUME A TERMINATED LEASE..................................... 4

II.     UNDER NEW YORK LAW, A LEASE THAT HAS TERMINATED IN
ACCORDANCE WITH ITS TERMS CANNOT BE REVIVED ..................................... 6

III.    UNDER NEW YORK LAW, ISSUANCE OF A "WARRANT OF EVICTION"
IS NOT A PREREQUISITE TO TERMINATION OF A LEASE ................................... 9

       A.     "WARRANTS OF EVICTION" UNDER THE NEW YORK REAL
PROPERTY AND PROCEDURES LAW ............................................................ 9

       B.     UNDER NEW YORK LAW, A LEASE MAY TERMINATE BY ITS
TERMS ABSENT THE ISSUANCE OF A "WARRANT OF EVICTION"...... 11

IV.    THE DEBTOR CANNOT CITE TO ANY AUTHORITY WHICH WOULD
ENTITLE IT TO RESURRECT, ASSUME AND CURE THE TERMINATED
LEASE ....................................................................................................................... 15

V.     THE LANDLORD IS ENTITLED TO ALL LEASE REVENUES DURING
ANY PERIOD OF DEFAULT IRRESPECTIVE OF LEASE TERMINATION ........... 20

CONCLUSION................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*In re Acorn Investments*, 8 B.R. 506 (Bankr. S.D. Cal. 1981)............................................................5

*Butner v. United States*, 440 U.S. 48 (1979)............................................................5

*In re Clark*, 47 B.R. 88 (Bankr. Vt. 1985) ............................................................5

*In re Éclair Bakery Ltd.*, 255 B.R. 121 (Bankr. S.D.N.Y. 2000)............................................................5, 18

*Matter of Escondido West Travelodge*, 52 B.R. 376 (D.C. Cal. 1985)............................................................5

*In re GSVC Restaurant Corp.*, 3 B.R. 491 (Bankr. S.D.N.Y. 1980), aff'd, 10 B.R. 300
    (S.D.N.Y. 1980)............................................................19

*In re Hudson Transfer Group, Inc.*, 245 B.R. 456 (Bankr. S.D.N.Y. 2000) ............................................................19

*In re Issa Corp.*, 142 B.R. 75 (Bankr. S.D.N.Y. 1992)............................................................19

*In re Joker Enterprises, Inc.*, 1995 WL 626372, Case No. 95-B-43754 (JLG), (Bankr.
    S.D.N.Y. Oct. 13, 1995)............................................................16, 17

*In re Onio's Italian Restaurant Corp.*, 42 B.R. 319 (Bankr. S.D.N.Y. 1984)............................................................19

*In re Policy Realty Corp.*, 242 B.R. 121 (S.D.N.Y. 1999), aff'd, 213 F.3d 626 (Table),
    2000 WL 534265 (2d Cir. 2000)............................................................5, 14, 15, 19

*In re Reinhardt*, 209 B.R. 183 (Bankr. S.D.N.Y. 1997) ............................................................19

*Robinson v. Chi. Hous. Auth.*, 54 F.3d 316 (7th Cir. 1995)............................................................5

*In re Scarsdale Tires Inc.*, 47 B.R. 478 (Bankr. S.D.N.Y. 1985) ............................................................14

*In re Seven Stars Restaurant, Inc.*, 122 B.R. 213 (Bankr. S.D.N.Y. 1990)............................................................12, 13

*In re W.A.S. Food Service Corp.*, 49 B.R. 969 (Bankr. S.D.N.Y. 1985)............................................................17

## STATE CASES

*30-88 Steinway St., Inc. v. H.C. Bohack Co.*, 65 Misc. 2d 1076 (N.Y. Civ. Ct. 1971)............................................................7

*American Airlines, Inc. v. Rolex Realty Co., Inc.*, 560 N.Y.S.2d 146 (App. Div. 1990)............................................................7

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Calvi v. Knutson*, 600 N.Y.S.2d 804 (App. Div. 1993) ................................................10

*Davenport Trading Corp. v. 684 Owners Corp.*, 650 N.Y.S.2d 516 (N.Y. Civ. Ct. 1995)............7

*First National Stores, Inc. v. Yellowstone Shopping Center, Inc.*, 21 N.Y.2d 630 (N.Y. 1968) ......................................................................................................6

*Grande Liberte Cooperative, Inc. v. Bilhaud*, 126 Misc. 2d 961 (App. Div. 1984)......................7

*Great Park Corp v. Goldberger*, 41 Misc. 2d 988 (N.Y. Civ. Ct. 1964).......................................10

*Kwong v. Eng*, 583 N.Y.S.2d 457 (App. Div. 1992) .......................................................11

*Lincoln Square Apartments, Section 1, Inc. v. Davis*, 58 Misc. 2d 292 (N.Y. Civ. Ct. 1968), <u>aff'd</u>, 64 Misc.2d 859 (N.Y. App. Term 1969) ...........................................10

*Mann Theatres Corp. of Cal. v. Mid-Island Shopping Plaza Co.*, 464 N.Y.S.2d 793 (App. Div. 1983), <u>aff'd</u>, 62 N.Y.2d 930 (1984).......................................................8, 9

*Norlee Wholesale Corp., Inc. v. 411 Hempstead Turnpike Corp.*, 525 N.Y.S.2d 873 (App. Div. 1988)...........................................................................................8

*Perotta v. West Regional Off-Track Betting Corp.*, 469 N.Y.S.2d 504 (App. Div. 1983) .....11, 12

*T.W. Dress Corp. v. Kaufman*, 533 N.Y.S.2d 548 (App. Div. 1988) ............................................7

### FEDERAL STATUTES

11 U.S.C. § 365.........................................................................................................4

### STATE STATUTES

N.Y. Real Property and Procedures Law § 711 (McKinney 2005) .......................................10, 16

N.Y. Real Property and Procedures Law § 749(3) (McKinney 2005)..........................9, 11, 15, 18

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------x
                                    :
In re                               :        Chapter 11 Case No.
                                    :
EAST 44TH REALTY, LLC,              :        05-16167 (RDD)
                                    :
            Debtor.                 :
                                    :
------------------------------------------------------x
```

## LANDLORD'S MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION FOR ORDER
## DIRECTING RELEASE AND RETURN TO LANDLORD OF ITS PROPERTY
## INCLUDING ALL SUBLEASE PROCEEDS, AND OTHER RELATED RELIEF

East Forty-Fourth Street, LLC (the "Landlord"), as owner and triple net lessor under a lease (the "Lease") with the Debtor's predecessor-in-interest governing the building located at and known as 228-238 East 44th Street in the City, County and State of New York, by and through its undersigned counsel, submits this memorandum of law in further support of its Motion for Order Directing the Release and Return to Landlord of Its Property Including All Sublease Proceeds, and Other Related Relief (the "Motion") [Docket No. 54], filed with this Court on January 3, 2006, and respectfully represents:

### PRELIMINARY STATEMENT

In an effort to maintain its hold on the Lease despite the fact that the Landlord effectuated a valid termination of it well before the Debtor commenced its chapter 11 case, the Debtor has glossed over the relevant statutes and jurisprudence, casting a web of confusion over the simple issue of when a lease terminates under New York law. The relevant facts are not disputed and the governing law could not be more clear. Under New York law, once a default condition exists, a notice of default may be given which, if not timely cured, provides a landlord the right to terminate the lease that is in default by a separate notice of termination issued in

accordance with the provisions of the lease.  If the default condition is not cured by the end of

the cure period, and the landlord exercises its right and gives notice terminating the lease, the

lease is terminated and no further act of the landlord is required.  Here, the Landlord provided

exactly this kind of notice to the Debtor in the prepetition period.  Notice of Default was given

on July 2, 2004, effective August 4, 2004 and the period provided for cure (until August 4, 2004)

was tolled by order (a "Yellowstone Injunction") dated July 30, 2004.  The period within which

the Debtor could effect a cure of its defaults then continued for more than seven (7) months until

the toll was vacated by order dated February 24, 2005.  During such period, the Debtor did

nothing; it took no steps to effect a cure, and in the period following issuance of the February 24

Order, when the Debtor still had time left to cure, it took no steps to extend or toll its opportunity

to cure.  Thus, by Notice dated March 10, 2005, the Landlord terminated the Lease, effective

April 1, 2005, in accordance with the express provisions of the Lease.  Under New York law,

that March 10 Notice terminated the Debtor's interests in the Lease and rendered it incapable of

being assumed pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy

Code").  In support of its untenable position, the Debtor contends that under New York law, a

lease is not terminated unless and until a "warrant of eviction" has issued.  According to the

Debtor, since no "warrant of eviction" was issued, the Lease is not terminated and, as such, may

be assumed under section 365.

It is time to untangle the web.  A careful review of relevant New York real

property law and applicable precedent reveals that the Debtor's position is entirely contrary to

governing authority and without any legal or factual basis whatsoever.  As explained herein,

section 365 of the Bankruptcy Code does not supersede or alter state law as to the termination of

a lease.  Rather, the question whether the Debtor may be permitted to cure a default and assume

the Lease is governed by state law, to which the bankruptcy courts universally refer in

determining whether a lease that a debtor seeks to assume has previously terminated or expired

and therefore cannot be assumed.  Under New York law, while the termination of a lease *may be*

and is sometimes effectuated by the issuance of a "warrant of eviction," the converse is not

true—issuance of a "warrant of eviction" is *not* a prerequisite for termination.  Accordingly, that

no "warrant of eviction" has been issued in this case is a red herring, and does not in any way

alter the fact that the Lease has terminated under state law and, as a result, the Debtor no longer

possesses any property rights with respect thereto.  This conclusion is in perfect accord with all

applicable precedent:  the Lease is terminated and this Debtor may not be afforded a further

opportunity to cure by this or any other court.

## **FACTS**

The undisputed facts are set forth in the affidavit of Lawrence E. Tofel, sworn to

on January 3, 2006 (the "Tofel Affidavit"), the exhibits annexed thereto and in the Landlord's

Motion.  All such facts are incorporated herein by reference as if set forth fully and at length

herein.

As stated in the Tofel Affidavit, the Debtor's default arose under paragraph

THIRTEENTH of the Lease, subsection (2)(b).  Upon notice of default from the Landlord, the

Lease provided the Debtor with a thirty-day notice period within which to cure its default.  After

receipt of the Landlord's July 2, 2004 Notice of Default, the Debtor sought and obtained a seven

(7) month toll of such thirty-day cure period.  By virtue of the February, 2005 Decision and

Order of New York State's Supreme Court (Diamond, J.S.C.), the Debtor's right to cure expired

in early March, 2005 following vacatur of the previously issued Yellowstone Injunction and

service of that Order as required under New York's Civil Practice Law and Rules.  See Tofel

Aff., ¶ 17.  Pursuant to paragraph THIRTEENTH of the Lease, if the Debtor's defaults remained

uncured the Landlord had the right to terminate the Lease. Specifically, the Lease provides in

pertinent part:

> In the event of any such default of the Tenant, and at any time thereafter
> following the expiration of the respective grace periods above referred to
> [i.e., the thirty days], the Landlord may serve a written notice upon the
> Tenant that the Landlord elects to terminate this lease upon a specified
> date not less than twenty days after the date of the serving of such notice,
> and *this lease shall then expire on the date so specified as if that date had
> been originally fixed as the expiration date of the term herein granted.*
> (Emphasis added).

As the Debtor had not cured its default under the Lease within the applicable cure period, in

accordance with the foregoing provision, the Landlord did send such notice of termination (dated

March 10, 2005; see Tofel Aff., ¶ 18 and Exhibit "C" thereto) to the Debtor. The Lease thus

"expired" according to its own terms on April 1, 2005 "as if that date had been originally fixed

as the expiration date of the [Lease]."

Under the express terms of the Lease, the Debtor has no further right or

opportunity to cure its default. The termination notice was properly issued and the Lease expired

on April 1, 2005. The commencement of the Debtor's chapter 11 case did not and cannot change

this fact because, pursuant to established state law, the Lease was already terminated prior to the

bankruptcy filing. Accordingly, there is nothing left for the Debtor to assume under section 365

of the Bankruptcy Code.

## ARGUMENT

### I.

### THE DEBTOR CANNOT ASSUME A TERMINATED LEASE

Pursuant to section 365 of the Bankruptcy Code, a debtor is permitted to "assume

or reject any executory contract or unexpired lease…." 11 U.S.C. § 365. Whether a lease has

expired and therefore is incapable of being assumed is determined by reference to applicable

state law.  See Butner v. United States, 440 U.S. 48, 55 (1979) (noting that, in bankruptcy

context, "[p]roperty interests are created and defined by state law"); Robinson v. Chi. Hous.

Auth., 54 F.3d 316, 317-20 (7th Cir. 1995) (noting that "it is well established that courts look to

state law to determine what constitutes an 'unexpired' lease"); In re Policy Realty Corp., 242

B.R. 121, 128 (S.D.N.Y. 1999) ("The Bankruptcy Code directs that the question of 'termination'

is to be resolved by reference to 'applicable nonbankruptcy law.'  In this context, 'applicable

nonbankruptcy law' is state law.") (citing 11 U.S.C. § 365); In re Éclair Bakery Ltd., 255 B.R.

121, 132 (Bankr. S.D.N.Y. 2000) ("Congress has generally left the determination of property

rights in the assets of a bankruptcy estate to state law."); In re Clark, 47 B.R. 88, 89 (Bankr. Vt.

1985) (noting that, in bankruptcy context, "[i]t is axiomatic that property rights arise under state

law.")  A lease that has been "terminated" within the meaning of state law is "expired" for

purposes of section 365 and, as such, may not be assumed.  See Robinson, 54 F.3d at 320

("[T]he federal law allowing 'unexpired' leases to be assumed calls for a determination whether

a lease has ended under state law."); Matter of Escondido W. Travelodge, 52 B.R. 376, 378

(D.C. Cal. 1985) ("Expiration [of a lease]…has been defined by the case law to include

termination under state law prior to the filing of the Chapter 11 petition."); In re Acorn Invs., 8

B.R. 506, 510 (Bankr. S.D. Cal. 1981) ("It is clear that a lease which has been terminated prior to

the filing of a chapter 11 petition has 'expired,' or ceased to be executory, within the meaning of

section 365 of the Code.").

     As discussed more fully below, the Lease at issue in the instant case terminated

by its terms prior to the commencement of this case.  Under New York law, therefore, the Lease

expired and, as such, may not be assumed.

## II.

## UNDER NEW YORK LAW, A LEASE THAT HAS TERMINATED IN ACCORDANCE WITH ITS TERMS CANNOT BE REVIVED

New York courts universally recognize the ability of a landlord to terminate a lease of real property by reason of an uncured default by the tenant, if the provisions of the lease entitle the landlord to do so. A prime example of a case in which a lease was terminated by notice given pursuant to the terms of the lease is the seminal Court of Appeals decision in First National Stores, Inc. v. Yellowstone Shopping Center, Inc., 21 N.Y.2d 630 (N.Y. 1968). In Yellowstone, the tenant under a commercial lease was required by the lease to install a sprinkler system on the subject premises. The tenant failed to do so and, as a result, the landlord terminated the lease by providing the tenant with a notice of termination in accordance with the terms of the lease. In considering whether the tenant was nonetheless entitled to cure its default under the (then terminated) lease, the court unequivocally declared that no such equitable relief was available to the former tenant under such circumstances. Specifically, the court reasoned that "once the Appellate Division determined that the tenant had in fact defaulted by not installing the sprinkler system, the conclusion had to be drawn that the lease was terminated in accordance with its terms." Yellowstone, 21 N.Y.2d at 637. Further, the court noted that "a landlord's right to terminate a lease based upon a tenant's breach of his covenant is commonplace" and that "*stability of contract obligations must not be undermined by judicial sympathy*." Id. at 638 (emphasis supplied).

Although Yellowstone was decided in 1968, it remains good law today. Indeed, while a tenant may request that a court intervene to stay the running of the cure period (as was done in this very case) provided under the lease (the so-called "Yellowstone Injunction"), New York courts have routinely recognized the running of the contractual notice/cure period as an

event that cuts off the tenant's right to cure and also eliminates any further right to equitable

relief from the court. See e.g. Am. Airlines, Inc. v. Rolex Realty Co., Inc., 560 N.Y.S.2d 146,

146 (App. Div. 1990) (concluding that lease had validly terminated because, "as was held in

Yellowstone, a commercial tenant is entitled to injunctive relief restraining a landlord from

terminating a lease upon a showing that such relief is sought prior to the expiration of the

tenant's cure period and prior to the issuance of a notice of termination from the landlord.  The

tenants in this case have failed to fulfill any of the prerequisites for obtaining the requested

injunctive relief."); Grande Liberte Cooperative, Inc. v. Bilhaud, 126 Misc.2d 961, 964 (App.

Div. 1984) (noting, with reference to Yellowstone, that "since the termination clause in the

lease...is enforceable, and since we perceive no factual issue in the papers as to tenant's default,

we are required to grant landlord a possessory judgment"); 30-88 Steinway St., Inc. v. H.C.

Bohack Co., 65 Misc.2d 1076, 1081 (N.Y. Civ. Ct. 1971) ("Where a lease is violated and notice

is sent to cure the violation and said notice is not complied with, the landlord has the right to

evict the tenant since the lease is terminated.").

        Here, consistent with the foregoing cases, the fact that the State Supreme Court

initially issued a Yellowstone Injunction, which it later vacated, in no way modifies the

unavoidable conclusion that the Lease ultimately was terminated.  New York courts dealing with

an intervening Yellowstone Injunction have considered the effect of such facts and have

universally concluded that the termination is effective as of the time the notice period, exclusive

of any intervening Yellowstone Injunction, lapses.  See e.g., Davenport Trading Corp. v. 684

Owners Corp., 650 N.Y.S.2d 516, 518 (N.Y. Civ. Ct. 1995) (finding that "lease automatically

terminated by operation of law" when notice period ran after Yellowstone Injunction was lifted);

T.W. Dress Corp. v. Kaufman, 533 N.Y.S.2d 548, 548 (App. Div. 1988) ("[T]he cure period

expired and the [landlord] served a termination notice in accordance with the terms of the

lease"); Norlee Wholesale Corp., Inc. v. 411 Hempstead Turnpike Corp., 525 N.Y.S.2d 873, 873

(App. Div. 1988) (pointing to "irrevocable lapse of the time to cure"; while tenant could "litigate

the substantive question of the breach of the lease, it can do so only under the peril that a

negative determination will destroy the leasehold without a further opportunity to cure") (citing

Mann Theatres Corp. of Cal. v. Mid-Island Shopping Plaza Co., 464 N.Y.S.2d 793 (App. Div.

1983)).

      Notably, in the case presented here, when the Supreme Court lifted the

Yellowstone Injunction in February 2005, having held that defaults had occurred under the Lease

that the Debtor had failed to cure, the Debtor still had time left to cure or seek to further extend

the time to do so.  It did neither.  The Debtor's remaining time to cure lapsed, notice of

termination was duly given and another seventy (70) days ensued before the Appellate Division

issued (inexplicably) another stay.  Thus, given the Landlord's notice of termination, the Lease

had already terminated well before the Appellate Division issued its stay.  See Tofel Aff., ¶ 18.

Thereafter, in December 2005, the Appellate Division affirmed the Supreme Court's decision

that defaults had occurred under the Lease, and the stay issued by the Appellate Division lapsed.

Once the Debtor lost on the "substantive issue" (i.e., default), the Lease was irrevocably ended.

The Mann Theatres decision supports the unavoidable conclusion here that once the cure period

provided for in the Lease had lapsed and the Landlord had issued the termination notice, the

Lease was irrevocably ended:

> Absent a toll of the cure period, a judicial determination that the lease has been violated leaves the tenant without the ability to cure if the time to cure has elapsed by the time of decision. Therefore, a tenant who fails to seek a restraining order tolling the time to cure must either cure during the time limited or litigate under the peril that a negative determination of the substantive issues will destroy the leasehold without a further opportunity to cure.

Mann Theatres, 464 N.Y.S.2d at 801 (citations omitted); aff'd, 62 N.Y.2d 930 (1984). In this case, just as in Mann Theatres, it is incontrovertible that under New York law, once the events and time-periods specified in the Lease occurred and expired, no further act or proceeding is required; the Lease is ended.

### III.

### UNDER NEW YORK LAW, ISSUANCE OF A "WARRANT OF EVICTION" IS NOT A PREREQUISITE TO TERMINATION OF A LEASE

Notwithstanding the foregoing, the Debtor argues in its objection to the Motion, that under section 749(3) of the New York Real Property and Procedures Law ("RPAPL"), the Landlord is required to obtain a warrant of eviction before the Lease can be deemed truly terminated. (Debtor's Objection, ¶ 12). The Debtor further argues that, because no warrant of eviction was issued with respect to the Lease, the Lease therefore is not terminated. The Debtor's contentions are based upon a mischaracterization of applicable statutory language and governing case law.

### A.   "WARRANTS OF EVICTION" UNDER THE NEW YORK REAL PROPERTY AND PROCEDURES LAW

A warrant of eviction is a component of a New York statutory mechanism known as a "summary proceeding," which is codified in Article 7 of the RPAPL. In order to fully appreciate the purpose and effect of a warrant of eviction, it is helpful to consider the general purpose and mechanics of the summary proceeding itself.

The primary purpose of a summary proceeding is to facilitate the quick resolution of a landlord and tenant dispute over the right of the landlord to immediate possession of its real property. Lincoln Sq. Apartments, Section 1, Inc. v. Davis, 58 Misc. 2d 292, 294 (N.Y. Civ. Ct. 1968), aff'd, 64 Misc.2d 859 (N.Y. App. Term 1969) ("The purpose of a summary proceeding is to afford a means of obtaining a swift determination of disputes between landlord and tenant as to the right of possession."); Great Park Corp v. Goldberger, 41 Misc. 2d 988, 989 (N.Y. Civ. Ct. 1964) ("The primary purpose and intention of summary proceedings is the speedy and expeditious disposition of the issue as to the right of the landlord to the immediate possession of his real property.").

Pursuant to RPAPL § 711, a landlord wishing to recover possession of its real property by summary proceeding may initiate such a proceeding only if certain requirements are met.[1]  Specifically, RPAPL § 711 provides that a summary proceeding may be initiated if, among other things, (i) "the tenant continues in possession of any portion of the premises after the expiration of his term, without the permission of the landlord…", or (ii) "the tenant has defaulted in the payment of rent, pursuant to the agreement under which the premises are held, and a demand of the rent has been made [pursuant to certain specified notice requirements]." RPAPL § 711. Courts refer to the former proceeding as a "summary holdover proceeding"

---

[1] If the circumstances do not qualify a landlord to initiate a summary proceeding under RPAPL § 711, the landlord's alternative to recover possession of its premises is to initiate an action in ejectment.  See Calvi v. Knutson, 600 N.Y.S.2d 804, 807 (App. Div. 1993).

(hereinafter, a "Holdover Proceeding")[2] and the latter as a "summary nonpayment proceeding" (hereinafter, a "Nonpayment Proceeding").[3]

In the event that a landlord prevails in either a Holdover Proceeding or a Nonpayment Proceeding, the court overseeing the proceeding is then empowered to issue a "warrant of eviction" under RPAPL § 749(3). The issuance and subsequent "execution" of a warrant of eviction in a summary proceeding "cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant." RPAPL § 749(3).

**B.    UNDER NEW YORK LAW, A LEASE MAY TERMINATE BY ITS TERMS ABSENT THE ISSUANCE OF A "WARRANT OF EVICTION"**

The Debtor contends that, because the issuance of a "warrant of eviction" terminates a lease (as provided under RPAPL § 749(3)), and no "warrant of eviction" was issued with respect to the Lease here, the Lease has not terminated. A thorough analysis of summary proceedings under the RPAPL and applicable case law reveals, however, that this Court was correct in voicing its skepticism of the Debtor's argument at the January 11, 2006 hearing (the "January Hearing"), when the Court stated:

> I'm not sure I buy the warrant of eviction argument. That is one way to dispossess and terminate a lease, but the [L]ease by its own terms may terminate and that may have occurred as a result of [the Debtor's default thereunder].

(Hr'g. Tr. of 1/11/06, at 48.)

---

[2] See e.g. Perotta v. W. Reg'l Off-Track Betting Corp., 469 N.Y.S.2d 504, 505 (App. Div. 1983) (referring to summary proceeding based upon tenant's holdover following expiration of lease as a "summary holdover proceeding").

[3] See e.g. Kwong v. Eng, 583 N.Y.S.2d 457, 458 (App. Div. 1992) (referring to summary proceeding based upon tenant's nonpayment of rent owing under lease as a "summary nonpayment proceeding").

Notably, the Debtor fails to appreciate the key distinction that, while the issuance of a warrant of eviction in a summary proceeding is necessary in order to cancel an *existing* lease, it is not necessary that a warrant issue to cancel a lease that *already has terminated by its terms*. Importantly, to initiate a Holdover Proceeding in the first instance, a landlord must demonstrate that the lease at issue *previously* has expired. See Perrotta, 469 N.Y.S.2d at 505 ("To maintain a summary holdover proceeding a landlord must allege and prove that, as of the time the proceeding is commenced, the tenant remains in possession *beyond the expiration of his term*.") (emphasis added). A termination of a lease by its terms constitutes "expiration" of the lease for the purpose of initiating a Holdover Proceeding under RPAPL § 711. See id. ("If a clause in a lease provides that the lease cannot endure beyond the time when a contingency happens, it creates a conditional limitation upon the occurrence of which the lease automatically expires; a summary proceeding will lie to evict a tenant who remains thereafter."). If the issuance of a "warrant of eviction" were truly a prerequisite to termination of a lease in every instance, the requirement under RPAPL § 711 that a landlord establish the prior expiration or termination of the lease in order to initiate a Holdover Proceeding would be rendered meaningless.

That the issuance of a "warrant of eviction" is not necessary to terminate a lease that *already* has terminated by its terms is aptly illustrated by Judge Schwartzberg's decisions in In re Seven Stars Restaurant, Inc., 122 B.R. 213 (Bankr. S.D.N.Y. 1990) and In re Scarsdale Tires Inc., 47 B.R. 478 (Bankr. S.D.N.Y. 1985). Seven Stars involved facts strikingly similar to those underlying the instant dispute. The landlord under a commercial lease notified its tenant of certain monetary and non-monetary defaults existing under the lease. Seven Stars, 122 B.R. at 215-16. After the expiration of the applicable cure period under the lease during which the

tenant failed to cure the alleged defaults, the landlord notified the tenant that it was exercising its

right (as provided in the lease) to terminate the lease and that, accordingly, the lease therefore

was "null and void, terminated, and of no further force or effect." Id. at 216.  When the tenant

did not relinquish possession to the landlord of the leased premises, the landlord initiated a

Holdover Proceeding against the tenant.  The purpose of the Holdover Proceeding was "to obtain

a final judgment of eviction awarding possession of the premises to the [landlord]." Id.

　　　　　Shortly before the expiration of the deadline for the tenant to respond to the

petition in the Holdover Proceeding, the tenant commenced a voluntary chapter 11 case.  As a

result, the Holdover Proceeding was stayed pursuant to section 362 of the Bankruptcy Code.

The landlord argued before the bankruptcy court, that due to the valid termination of the lease

before the commencement of the debtor's chapter 11 case, the debtor had "no property interest in

the lease subject to the automatic stay imposed under 11 U.S.C. § 362(a) or assumable under 11

U.S.C. § 365(b)." Id. at 217.  The court agreed with the landlord, finding that the landlord had

"effectively terminated the lease in accordance with its terms" and that "the debtor's failure to

cure the defaults after the 15-day cure notice issued by the landlord, bars the debtor from

resurrecting the terminated [l]ease because it may not be included among the debtor's assets."

Id. at 218.  Notably, in reaching its decision, the court relied explicitly upon Yellowstone which,

as noted above, observed that failure to recognize a landlord's right to terminate a lease in

accordance with its terms would render such rights "meaningless and ineffectual." Id. at 217

(citing Yellowstone, 21 N.Y.2d at 638).  Accordingly, notwithstanding that no warrant of

eviction had issued in the Holdover Proceeding, the court unequivocally determined that, as a

result of the landlord having given notice terminating the lease prepetition, the lease had, as a

matter of fact and law, terminated and was more importantly, incapable of being brought back to life by the commencement of the tenant's bankruptcy case.

That a "warrant of eviction" is not a prerequisite for termination of a lease is further illustrated by Judge Schwartzberg's earlier decision in In re Scarsdale Tires Inc., 47 B.R. at 478. In Scarsdale Tires, the landlord under a commercial lease notified its tenant that the lease had terminated, due to the tenant's failure to remit all rental payments as was required under the lease. After the termination became effective, the debtor did not vacate the premises and, in addition, became subject to an involuntary chapter 11 proceeding. The landlord subsequently sought an order from the bankruptcy court "declaring the stay imposed by 11 U.S.C. § 362(a) to be inapplicable to any action by the landlord to recover the premises leased to the debtor, or in the alternative, granting the landlord's application to lift the stay so as to permit it to commence a state court eviction against the debtor to recover the premises." In re Scarsdale Tires, 47 B.R. at 481. The tenant contended that the landlord's termination notice had been sent to the wrong address, but the court found that the notice was properly sent and the landlord had validly terminated the lease pursuant to its terms prior to the debtor's chapter 11 case. Id. As a result, the court was bound to follow the "settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C. § 362(a) nor may it be assumed by the debtor under 11 U.S.C. § 365." Id. at 480 (citing cases).

The case of In re Policy Realty Corp., 242 B.R. 121 (S.D.N.Y. 1999), aff'd, 213 F.3d 626 (Table), 2000 WL 534265 (2d Cir. 2000), is also on point. In that case, a landlord notified its tenant of certain alleged defaults existing under the lease. In re Policy Realty Corp., 242 B.R. at 123. Subsequently, just as provided in the Lease here, the landlord in Policy Realty gave notice to the tenant that the lease would be terminated in accordance with its terms as of a

date certain. Id. at 123-24.  In the context of the tenant's subsequent chapter 11 case, the court

considered whether the protections of the automatic stay applied to the lease such that the

landlord could not, absent relief from the stay, seek to evict the tenant in a state court proceeding.

In concluding that the automatic stay did not apply to the lease, the court noted:

> a lease may be terminated under New York law by operation of a
> conditional limitation…. In this manner, the landlord sends the tenant in
> default a notice of termination of the lease, stating that the lease will be
> deemed terminated upon a specified date due to tenant's default. *The
> lease is terminated when the time expires*, rather than on any further act by
> the landlord.

Id. (emphasis added).[4]

Based upon the foregoing, the Debtor cannot seriously quarrel with the well-

settled principle of New York law that a lease may be terminated in accordance with its terms,

notwithstanding the absence of issuance of a warrant of eviction under RPAPL § 749(3).

## IV.

### THE DEBTOR CANNOT CITE TO ANY AUTHORITY
### WHICH WOULD ENTITLE IT TO RESURRECT,
### ASSUME AND CURE THE TERMINATED LEASE

Notably, the Debtor cannot point to a single case wherein a landlord effectuated a

prepetition termination of a lease *by its terms* and the debtor/tenant nonetheless was allowed to

assume the lease pursuant to section 365 of the Bankruptcy Code.  Significantly, the line of cases

to which the Court referred at the January Hearing as possibly supporting the conclusion that the

Debtor is still entitled to cure and assume the Lease are factually inapposite and thus cannot

---

[4] Ironically, Davidoff & Malito (now Davidoff, Malito & Hutcher, LLP), counsel to the Debtor
in the instant case, represented the landlord which prevailed on its appeal of the bankruptcy
court's decision in Policy Realty; Backenroth & Grossman, LLP (now Backenroth, Frankel &
Krinsky, LLP), counsel to Yusef Bildirici (Debtor's principal) in the instant case, represented the
debtor, and were assisted on the ultimately unsuccessful appeal to the Second Circuit by Weil,
Gotshal & Manges LLP.

govern the outcome of the issues presented here.  Such cases concern the residual rights of a

debtor/tenant under a lease that had *not* been terminated by its terms at the time the landlord

initiated a summary proceeding in the state court.  Rather, the cases cited by the Court involve

the prepetition issuance of a "warrant of eviction" in the context of a Nonpayment Proceeding,

where the landlord sought rent payments but had not yet effectuated a lease termination pursuant

to the terms of the lease.[5]

For example, in In re Joker Enterprises, Inc., 1995 WL 626372 (Bankr. S.D.N.Y.

1995), the landlord under a commercial lease initiated a Nonpayment Proceeding for the purpose

of recovering unpaid rents from the tenant.  The parties agreed to a stipulation providing for

"entry of a final judgment of [certain unpaid rents] and the issuance of a warrant of eviction, the

execution of which was stayed provided debtor remained current under the lease and promptly

cured its defaults."  In re Joker Enterprises, Inc., 1995 WL 626372, at *1.  Notably, the

stipulation between the parties evidenced their intent to continue the lease relationship (which

the landlord did not purport to have terminated), if the debtor remained current with respect to its

payments under the lease.  After the tenant defaulted under the stipulation and in light of the

pending execution of the warrant of eviction, the tenant commenced a chapter 11 case.  See id.

In considering the debtor's motion to sell the lease to a third party, the court addressed the extent

of the debtor's interest under the lease and noted that "while the issuance of a warrant of eviction

divests the tenant of its legal interest in the lease, the tenant retains an equitable interest therein,

---

[5] As noted above, in a Nonpayment Proceeding, a landlord may seek to recover possession of its
leased premises upon a showing that the tenant is not current in its rent payments under the lease.
RPAPL § 711.  Nonpayment Proceedings involve active leases under which the tenant is alleged
to be in monetary default for nonpayment of rent or other obligations due under the lease, as
opposed to leases that have already been terminated by the landlord through notice issued in
accordance with the lease terms.  Accordingly, it is only in this *specific* context (i.e.,
Nonpayment Proceedings), as opposed to *all* contexts (as the Debtor would have this court
believe), that issuance of a warrant of eviction serves to terminate the lease.

and the potential to reinstate the landlord-tenant relationship." Id.  Importantly, however, unlike

the leases in Seven Stars, Scarsdale Tire and Policy Realty, the lease in Joker had *not* been

terminated by the landlord in accordance with the terms of the lease prior to the initiation of the

Nonpayment Proceeding and the tenant's bankruptcy case.

Similarly, in In re W.A.S. Food Service Corp., 49 B.R. 969 (Bankr. S.D.N.Y.

1985), based on the tenant's monetary defaults under a commercial lease, the landlord initiated a

summary proceeding for the dual purpose of obtaining a judgment for rent arrearages and

evicting the tenant.  In re W.A.S. Food Serv. Corp., 49 B.R. at 970.  The parties entered into a

stipulation which provided for (i) payment of rent arrears, (ii) continued payments of rent and

(iii) immediate issuance of a warrant of eviction, execution of which would be stayed if all

payments under the stipulation were timely made.  Id. at 971.  Following the tenant's default

under the stipulation but before execution of the warrant, the tenant commenced a chapter 11

proceeding.  Id.  Upon consideration of the chapter 11 trustee's motion to assume the lease, the

court concluded that the tenant "has some residual interest in the property even after issuance of

the warrant of eviction since the state court retains the power to vacate the warrant for good

cause shown."  Id.  Accordingly, the court "continue[d] the automatic stay in effect for a

reasonable period of time to allow the trustee to seek vacatur of the warrant of eviction" which, if

successful, may have enabled the trustee to assume the lease.  Id. at 973.  Notably, unlike in the

present case, the landlord in W.A.S. Food Service Corp. had not terminated the lease and did *not*

contend that it had terminated the lease prior to commencing the summary proceeding.

Likewise, in In re Éclair Bakery Ltd., 255 B.R. 121 (Bankr. S.D.N.Y. 2000), a

commercial landlord initiated a series of Nonpayment Proceedings against the tenant, which

proceedings were routinely frustrated by the debtor's filing of successive chapter 11 petitions.

See In re Éclair Bakery, 255 B.R. at 126-29. As of the commencement of the debtor's fourth, and final, chapter 11 case, a warrant of eviction had been issued against the debtor, but the warrant had not yet been executed. See id. at 129. While the court ultimately disposed of the case on bad faith grounds, it nonetheless noted that notwithstanding the issuance of the warrant, the tenant "had still another opportunity to relieve itself from the eviction process by paying [the rent] arrears [by a date and time certain]." Id. It is noteworthy that the court expressly limited its analysis in this regard to Nonpayment Proceedings:

> Particularly because it is common, in New York *rent nonpayment summary proceedings*, for a warrant of eviction to be issued with the actual execution of the warrant stayed (thereby providing the tenant a further opportunity to cure before eviction)...it is not uncommon for the debtor still to be in possession in its leasehold at the time of filing, notwithstanding the earlier issuance of the warrant of eviction and consequent termination of the lease. What then remains are (1) an equitable interest in the property and the potential to reinstate the landlord-tenant relationship, as RPAPL § 749(3) provides, and (2) a possessory interest in the property.

Id. at 133 (emphasis added). Accordingly, the court was *not* faced with a situation wherein, prior to the commencement of the summary proceeding, the landlord claimed to have terminated the lease by its terms.

In light of the foregoing, it is evident that there exists a crucial distinction between cases such as Joker, W.A.S. and Éclair Bakery on the one hand, and Seven Stars, Scarsdale Tires and Policy Realty Corp. on the other. The leases at issue in the former three cases had *not* been terminated by the landlords at the time the Nonpayment Proceedings were commenced. Rather, those leases would have terminated upon the *execution* of the warrant of eviction, in the context of the summary proceeding. Notwithstanding the *issuance* of the warrant of eviction, however, these and other courts often would stay the execution of the warrant, thereby providing the tenant with every possible chance to retain its interest in the lease –

05-16167-rdd    Doc 74    Filed 02/01/06    Entered 02/01/06 20:49:54    Main Document
Pg 23 of 25

affording the tenant an opportunity to cure defaults and protecting the tenant's "equitable" or

possessory interests.[6]  See, e.g., In re Hudson Transfer Group, Inc., 245 B.R. 456 (Bankr.

S.D.N.Y. 2000); In re Issa Corp., 142 B.R. 75 (Bankr. S.D.N.Y. 1992); In re Onio's Italian Rest.

Corp., 42 B.R. 319 (Bankr. S.D.N.Y. 1984); In re GSVC Rest. Corp., 3 B.R. 491 (Bankr.

S.D.N.Y. 1980), aff'd, 10 B.R. 300, 301 (S.D.N.Y. 1980); see also In re Reinhardt, 209 B.R. 183

(Bankr. S.D.N.Y. 1997).[7]

        In sharp contrast, however, the leases at issue in Seven Stars, Scarsdale Tires and

Policy Realty had been terminated by their terms (after the landlords provided notice of default

and a subsequent notice of termination in accordance with the provisions of the leases).  As a

result, the courts in these cases were bound to adhere to the well-settled legal principle embodied

by Yellowstone and its progeny:  to wit, under New York law, a lease which has been terminated

by its terms is not capable of being revived, even in a bankruptcy proceeding, and the tenants

were not permitted to assume the leases under section 365 of the Bankruptcy Code.

---

[6] Notably, here the Debtor is *not* in possession of the leased premises—rather, it subleases all of
the space to a variety of subtenants.  See In re Policy Realty Corp., 242 B.R. at 129 (dismissing
as "totally without support" debtor-tenant's argument that equitable possessory interest in
property should trigger automatic stay where tenant was not in physical possession of the leased
premises and subleased all of the space to subtenants).

[7] Reinhardt's underlying facts differ somewhat from the foregoing cases, in that while the initial
lease in Reinhardt had terminated, the landlord apparently allowed the tenant to remain in the
premises on a month-to-month basis.  See In re Reinhardt, 209 B.R. at 185.  While the landlord
gave notice of termination of such tenancy (presumably pursuant to section 232-a of New York's
Real Property Law), the opinion is not at all clear as to whether such notice was sufficient to
terminate the oral month-to-month arrangement.  In any event, as explained earlier, the factual
circumstances of Reinhardt are highly distinct from those of the instant case which involves a
written Lease with express termination procedures that the Landlord invoked in accordance with
well-settled state law.

**V.**

## THE LANDLORD IS ENTITLED TO ALL LEASE REVENUES
## DURING ANY PERIOD OF DEFAULT IRRESPECTIVE OF LEASE TERMINATION

In its original Motion, the Landlord sought restoration to it of proceeds of the Lease from and after the Debtor's now-fully litigated and adjudicated default. The Landlord is entitled to that relief whether this Court concludes the Lease was terminated, or not. The Landlord would even be entitled to such relief if this Court were to purport to permit the Debtor to somehow cure its default.[8]

Under paragraph TWENTY-FOURTH of the Lease, the subleases and their proceeds were assigned to the Landlord as of the date of expiration of the thirty-day cure period. The Debtor points out that the Lease effectuates only a "contingent" assignment in that the assignment will be "permanent" only in the event that the Debtor fails to cure the defaults. As explained above, however, such cure is no longer possible under the Lease so the assignment is now "permanent". Even assuming that cure were available (which it is not), the amount of sublease proceeds collected by the Debtor and owing to the Landlord (all of which is the subject of the Motion) is considerable.

In sum, the Landlord is entitled to the funds sought in the Motion, by reason of the assignment specified in paragraph TWENTY-FOURTH of the Lease.

---

[8] This is a matter having significant financial impact, for the Debtor has been permitted to collect rent from subtenants purportedly in excess of $300,000 per month, while paying rent to the Landlord under the Lease of only approximately $60,000 per month, and Landlord's notice of default dates back to July, 2004.

## **CONCLUSION**

For all of the foregoing reasons, the Court should grant the Landlord's Motion

and determine that, because the Lease was terminated prior to the Debtor's chapter 11 case, the

Debtor may not assume the Lease pursuant to section 365 of the Bankruptcy Code.

Dated: February 1, 2006
     New York, New York

                         Judy G.Z. Liu, Esq. (JL 6449)
                         WEIL, GOTSHAL & MANGES LLP
                         767 Fifth Avenue
                         New York, New York  10153

                               - and -

                         Lawrence E. Tofel, Esq. (LT 8631)
                         TOFEL & PARTNERS, LLP
                         800 Third Avenue
                         New York, New York  10022

                         Co-Attorneys for Landlord,
                         East Forty-Fourth Street, LLC