# DAVIDOFF MALITO & HUTCHER LLP

GARDEN CITY
200 GARDEN CITY PLAZA
GARDEN CITY, N.Y. 11530
(516) 248-6400

NEW JERSEY
744 BROAD STREET, FL. 16
NEWARK, N.J. 07102
(973) 735-0543

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230

WASHINGTON, D.C.
444 NORTH CAPITAL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: 212-557-7200
E-MAIL: est@dmlegal.com

February 14, 2006

**Via HAND DELIVERY AND ECF**
Honorable Robert D. Drain
United States Bankrupcty Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-2301

Re: In re East 44th Realty, LLC, Civ. 05-16167 (RDD)

Dear Judge Drain:

We write as counsel for the Debtor, East 44th Realty, LLC (the "Debtor"). In accordance with the Court's request at the hearing held on Friday, February 10, 2006, for a supplemental submission setting forth New York case law supporting the Debtor's position that the Lease was not terminated merely by virtue of the Landlord's service of the purported March 10, 2005 Termination Notice. Enclosed for the Court's reference are the Debtor's Main Appeal Brief and Reply Brief[1] submitted to the Appellate Division, First Department. For the sake of completeness, we have also included a copy of the one volume Record on Appeal. Finally, enclosed is a copy of the Temporary Restraining Order issued by Justice Diamond of the New York Supreme Court in connection with the Debtor's motion for reargument made following

---

1   As the arguments made and case law cited in the Debtor's memorandum of law in opposition to the Landlord's initial cross-motion to dismiss the appeal as moot was substantially the same as that contained in the Debtor's Reply Brief on the Appeal, in order to avoid overburdening the Court, we have not included that earlier memorandum with this submission.

00338382

DAVIDOFF MALITO & HUTCHER LLP

Honorable Robert D. Drain
February 14, 2006
Page 2

issuance of the summary judgment decision which was the subject of the Appeal (the "Order"), and the Affidavit of Josef Bildirici in support of the motion.

Although the narrow focus of the Court's inquiry at this juncture is to determine whether under New York law, the Lease was finally terminated, because equity abhors forfeiture, the analysis itself is an equitable one based on the full set of facts and circumstances underlying the dispute. *See Empire State Building Assoc. v. Trump Empire State Partners*, 245 A.D.2d. 225, 667 N.Y.S.2d 31 (1st Dep't 1997)(injunction issued after effective date of alleged termination to provide tenant with determination of merits of termination notice; noting that the equities clearly run in tenant's favor as default was curable and harm from losing 79 years remaining in lease plus renewals could not be compensated by money damages). *See also 225 East 36th Street Garage Corp. v. 221 East 36th Street Owners Corp.*, 211 A.D.2d 420, 621 N.Y.S.2d 301 1st Dep't 1995). Accordingly, while we have summarized below the narrow legal issue under consideration by the Court, we urge Your Honor to consider the full record in making your determination.

## **THE LEASE WAS NOT VALIDLY TERMINATED**

As Your Honor is aware, the Landlord's position on the Appeal, and throughout these proceedings, has been that the Lease was properly terminated after the *Yellowstone* injunction was vacated and before the Debtor obtained the stay pending appeal on May 6, 2005. The Landlord further argues the State Court and this Court are powerless to reinstate it.

The Landlord is incorrect. For one thing, the Landlord's position ignores the fact that the Debtor fully complied with the procedures established in *First National Stores, Inc. v. Yellowstone Shopping Center, Inc.*, 21 N.Y.2d 630, 290 N.Y.S.2d 721 (1968), and flies in the

DAVIDOFF MALITO & HUTCHER LLP

Honorable Robert D. Drain
February 14, 2006
Page 3

face of more than 35 years of jurisprudence that clearly establishes the Court's equitable power to reinstate the injunction and stay the termination of a lease when a *Yellowstone* injunction properly obtained has been vacated before a final determination on the merits of a disputed cure notice or termination notice. *See, e.g., Prince Lumber Co., Inc. v. CMC Holding Company L.L.C.*, 253 A.D.2d 718, 678 N.Y.S.2d 256 (1st Dep't. 1998) (citing *Mann Theatres Corp. v. Mid-Island Shopping Plaza Co.*, 94 A.D.2d 466, 476-77, 464 N.Y.S.2d 793 (2$^d$ Dep't 1983), *aff'd* 62 N.Y.2d 930, 479 N.Y.S.2d 213 (1984); *Fratto v Red Barn Farmers Market Corp.*, 144 A.D.2d 635, 535 N.Y.S.2d 53 (2$^d$ Dep't 1988). The cases cited by the Landlord in which the tenant failed to seek or obtain relief under *Yellowstone* in the first instance before their leases were terminated, are simply not relevant. (*See* discussion *infra*.)

This conclusion is necessarily consistent with the very purpose of *Yellowstone* and its progeny to provide tenants with a meaningful opportunity to litigate the merits of default and/or termination notices. That is, considering the matter from the vantage point at the time the purported Termination Notice was served, if the lower court's Order were found to be erroneous, then it would have necessarily followed that the Termination Notice was also invalid. The fact the Appellate Division ultimately affirmed the lower court's Order should not, and cannot, be construed to have the retroactive effect of validating the Termination Notice so many months after the fact. Indeed, confirmation of the fact that the purported termination *was not* valid under controlling New York law is the fact that the Appellate Division clearly declined to dismiss the Appeal as moot.[2]

---

[2] The Debtor's response to the Landlord's misplaced mootness argument may be found in the Debtor's Reply Brief at 13-15 (Point I (B)).

00338382

DAVIDOFF MALITO & HUTCHER LLP

Honorable Robert D. Drain
February 14, 2006
Page 4

## New York Courts Plainly Have the Equitable Power to Stay the Effect of the Purported Termination

### 1. Applicable Law

Controlling law clearly establishes that appellate courts have the equitable power to reinstate a *Yellowstone* injunction and stay the termination of a commercial lease *nunc pro tunc* in order to afford a tenant a meaningful opportunity to challenge the merits of its landlord's default notice. This is so where a timely request for injunctive relief was denied, *see, e.g., Empire State Building Assoc.* 245 A.D.2d. 225, 667 N.Y.S.2d 31, or not granted within the prescribed cure period. *See, e.g., Fratto*, 144 A.D.2d 635, 535 N.Y.S.2d 53. As it pertains to this case, such an equitable prerogative also exists where an injunction was lifted before the merits of the relevant notice are finally adjudicated. *See, e.g., Prince Lumber Co. v. CMC Holding Company L.L.C.*, 253 A.D.2d 718, 678 N.Y.S.2d 256 (1st Dep't 1998); *Mann Theatres*, 94 A.D.2d at 476-77, 464 N.Y.S.2d at 801.

What these controlling cases establish—and what the Landlord simply ignores—is that "[b]y timely moving to toll the running of the cure period so as to maintain the status quo, the [Debtor] adhered to the accepted and standard procedure enunciated" in *Yellowstone*. *Fratto*, 144 A.D.2d at 636, 535 N.Y.S.2d at 54. Having done so, the cases conclude that the Debtor is entitled to rely on the fact that a court's erroneous refusal to grant or continue a *Yellowstone* injunction will not result in the extinction of its time to cure. *See, e.g., Purdue Pharma, LP v. Ardsley Partners, LP*, 5 A.D.3d 654, 774 N.Y.S.2d 540 (2nd Dep't 2004); *Tag 380, LLC v. Sprint Spectrum, L.P.*, 290 A.D.2d 404, 737 N.Y.S.2d 271 (1st Dep't 2002); *Empire State Building Assoc.*, 245 A.D.2d 225, 667 N.Y.S.2d 31; *Lexington Avenue & 42d St. Corp. v. 380 Lexchamp*

00338382

**DAVIDOFF MALITO & HUTCHER LLP**

Honorable Robert D. Drain
February 14, 2006
Page 5

*Operating, Inc.*, 205 A.D.2d 421, 423, 613 N.Y.S.2d 402 (1st Dep't 1994); *Fratto*, 144 A.D.2d at 636, 535 N.Y.S.2d at 54. That the notices may ultimately be upheld on appeal does not have any bearing on the analysis.

This is true even in the absence of additional temporary relief obtained pending appeal. As the court explained in *Mann Theatres*:

> [W]e rely on the fact that the *Yellowstone* rule is equitable in nature, and in equity the erroneous denial of a timely sought temporary toll or the inadvertent failure to continue one already granted, should not result in the forfeiture of a leasehold, *even if the tenant has failed to obtain a further temporary restraint pending appeal.*

94 A.D.2d at 477, 464 N.Y.S.2d at 801 (*emphasis added*). *See also, 225 East 36th Street Garage*, 211 A.D.2d at 422, 621 N.Y.S.2d at 302 (denial of *Yellowstone* injunction reversed and injunction granted because a "*Yellowstone* injunction's primary purpose is to maintain the status quo and . . . the law does not favor forfeiture of the leasehold.")

### 2.   The Debtor's *Yellowstone* Injunction Was Properly Reinstated.

Since the Debtor not only sought, but was granted, a *Yellowstone* injunction well before the 30-day cure period provided for in the July 2 Default Notice had elapsed, the Appellate Division plainly had the equitable power to (and did) reinstate the injunction *nunc pro tunc*. *See, e.g., Prince Lumber Co.*, 253 A.D.2d 718, 678 N.Y.S.2d 256; *Mann Theatres Corp.*, 94 A.D.2d at 476-77, 464 N.Y.S.2d at 801; *Fratto*, 144 A.D.2d 635, 535 N.Y.S.2d 53.

It is also highly relevant that although the Appellate Division concluded that the Default Notice sufficiently identified the work that was required to cure the default, the court did not

00338382

**DAVIDOFF MALITO & HUTCHER LLP**

Honorable Robert D. Drain
February 14, 2006
Page 6

conclude that the time provided was sufficient, much less did it conclude that it was. There is no question that when the lower court lifted the injunction with only four or five days remaining in the noticed cure period left the Debtor without a sufficient time to erect the scaffolding and complete the work, and thus vulnerable to the forfeiture of its leasehold before obtaining "a judicial determination of its breach and what would be required to cure it."[3] Thus, under the New York Court of Appeals' decision in *Waldbaum, Inc. v. Fifth Avenue of Long Island Realty. Assoc.*, 85 N.Y.2d 600, 606, 627 N.Y.S.2d 298, 301 (1995), this alone made the Default Notice defective. Indeed, to leave this circumstance unaddressed by the courts would severely undermined the central purpose of a *Yellowstone* injunction "to maintain the status quo so that the tenant may challenge the landlord's assessment of its rights without the tenant, during the pendancy of the action, forfeiting its valuable property interest in the lease," *Lexington Avenue & 42$^d$ St.*, 205 A.D.2d at 423, 613 N.Y.S.2d at 402 (*citations omitted*), and would plainly be contrary to prevailing law. *See also Graubard Mollen Horowitz Pomerante & Shapiro v. 600 Third Avenue*, 93 N.Y.2d 508, 718 N.E.2d 117, 514, 693 N.Y.S.2d 91, 94 (1st Dep't 1999); *Empire State Building Assoc.*, 245 A.D.2d at 227, 667 N.Y.S.2d at 34; *Jemaltown*, 115 A.D.2d at 382, 496 N.Y.S.2d at 18.

Indeed, under *Waldbaum* reinstatement of the *Yellowstone* injunction in this case was all the more appropriate. That is, even if it had been appropriate to assume at the time the Order was issued that the Debtor was obligated under the Settlement to complete additional repairs generally described in the July 2 Default Notice (the Debtor reasonably contended that it was

---

3   In this connection, it bears reminder that even as of May 2, 2005, the Landlord's engineer was unable to advise the Landlord as to the precise nature and extent of the alleged defect and necessary cure without the erection of scaffolding. *See* Exhibit C of Affidavit of Lawrence E. Tofel, sworn to February 7, 2006 ("Tofel Aff."), submitted in opposition to Debtor's Motion to Assume.

00338382

**DAVIDOFF MALITO & HUTCHER** LLP

Honorable Robert D. Drain
February 14, 2006
Page 7

not), the Notice failed to specify with sufficient clarity what the Debtor has to do to cure the default, and indeed, the Landlord's engineer admitted in the recently disclosed May 2, 2006, Cost Estimate report that the erection of scaffolding and an additional inspection was required in order to determine the nature and scope of the cure. *See* Tofel Aff., Ex. C. Under Waldbaum, and the First Department's decisions in *Empire State Building Assoc.*, 245 A.D.2d 225, 667 N.Y.S.2d 31; *Garland v. Titan West Associates*, 147 A.D.2d 304, 543 N.Y.S.2d 56 (1st Dep't 1989), the ambiguity of the Notice also rendered it defective.

In this same vein, and equally significantly, neither the lower court nor the Appellate Division addresses the sufficiency of the time period provided in the Default Notice, nor did the lower court address on summary judgment, much less did it dismiss, the Second Cause of Action seeking a declaration that the notice is defective. (R. 6-9; 162-63.) Thus, even though the Order was ultimately affirmed, maintenance of the *Yellowstone* injunction (or the automatic stay under section 362) is nevertheless necessary to permit the Debtor the sufficient time to cure the default in accordance with the plan and proposal proffered in support of its Motion to Assume. *See, e.g., Waldbaum*, 85 N.Y.2d at 606, 627 N.Y.S.2d at 301; *Empire State Building Assoc.*, 245 A.D. 2d at 229, 667 N.Y.S.2d at 35; *See also Garland v. Titan West Associates,* 147 A.D.2d 304, 311, 543 N.Y.S.2d 56, 61 (1st Dep't 1989).

Accordingly, the Appellate Division's December 15, 2005 decision must be read under prevailing law and the principals of equity to have concluded that the Lease had not been terminated; and the May 26, 2005, stay order must be read to have reinstated the improvidently lifted *Yellowstone* injunction to permit the Debtor reasonable time to cure the default as provided in Paragraph Thirteenth of the Lease, which expressly provides the Debtor with as long a period

00338382

**DAVIDOFF MALITO & HUTCHER LLP**

Honorable Robert D. Drain
February 14, 2006
Page 8

to cure as is necessary, so long as it exercised reasonable diligence in commencing and continuing its efforts to cure. (R. 123.[4]) Clearly, by having retained an engineer and contractor to perform the work as soon as the weather reasonably permits constitutes the exercise of reasonable diligence under Paragraph Thirteenth.[5] See *Waldbaum*, 85 N.Y.2d at 606, 627 N.Y.S.2d at 301 ("[b]y definition, an event of default does not occur under the [L]ease until the tenant has failed to effect a cure of the nonperformance of the obligation within the appropriate cure period after notice.") And finally, it bears noting that the Appellate Division *did not* vacate its May 26 stay.

### The Landlord Disregards the Relevant Law.

Disregarding all of this relevant law, the Landlord argues that the Debtor's request for relief should have been denied in the Appellate Division, and should be denied by this Court because it (i) failed to obtain emergency relief between March 3, when Notice of Entry was served, and March 10, when the Landlord ostensibly served the termination notice and (ii) failed to seek relief from this Court until May 5.[6] These arguments, however, are of no moment, for

---

[4]   Paragraph Thirteenth provides : "For purposes of subdivision (2)(b) hereof, no default on the part of the Tenant in the performance of work required to be performed . . . shall be deemed to exist if steps have in good faith been commenced promptly by Tenant to rectify the same and shall be prosecuted to completion with diligence and continuity."

[5]   Clearly, since the exterior repairs that the court had just declared the Debtor is obligated to undertake would require city permits and the erection of exterior scaffolding, they could not possibly be commenced—much less completed—in just the five days remaining in the Debtor's 30 day cure period after the Yellowstone was obtained. Indeed, they could not have been completed within the 30 days provided in the Default Notice.

[6]   The fact is that the Debtor did take prompt, decisive action to avoid forfeiture during the pendency of the appeal by obtaining a temporary restraining order and making a motion for reargument and reinstatement of the injunction shortly after the Notice of Entry was served. (*See* TRO enclosed.) When the motion was submitted, however, the trial court declined to grant an interim injunction. Promptly thereafter, the Debtor retained new co-counsel and sought and obtained a stay from this Court. Thus, the Debtor can hardly be said to have sat idly by, knowingly risking the forfeiture of its Lease.

00338382

**DAVIDOFF MALITO & HUTCHER LLP**

Honorable Robert D. Drain
February 14, 2006
Page 9

having satisfied *Yellowstone's* requirement to timely move for injunctive relief, if the injunction is denied or later lifted, the law simply does not require the Debtor to have obtained expedited emergency relief before the balance of its cure period would have theoretically run. *See Mann Theatres*, 94 A.D.2d at 477, 464 N.Y.S.2d at 801.

Ignoring the relevant cases in which the tenant has complied with the procedures established in *Yellowstone*,[7] the Landlord relies exclusively on cases (including *Yellowstone*, itself), in which the tenant *failed* to seek injunctive relief before its cure period expired. (Landlord's Br. at 14-19.) These cases, however, are not controlling.

The only case that the Landlord discusses at any length, *T.W. Dress Corp v. Kaufman*, 143 A.D.2d 900, 533 N.Y.S.2d 548 (2nd Dep't 1988), is not an exception to this general rule. As the Landlord recite the facts of the case, in *T.W. Dress*, the plaintiff's lease was terminated after the lower court had "lifted a previously-imposed *Yellowstone* injunction" and the tenant failed "to toll the curative period under the Lease." When the plaintiff appealed, continues the Landlord, the Second Department held that "the failure of the plaintiff to toll the curative period under the lease divested the court of its power to grant a [further] *Yellowstone* injunction." (Landlord's Br. at 16-17.) This recitation of the facts in *T.W. Dresser*, however, is a fabrication.

---

7    Remarkably, although the Debtor made each of these arguments and cited each of these cases in its various submissions in support of its application for a stay pending appeal, the only case the Landlord even attempts to address is *Mann Theatres*. Its argument that *Mann Theatres* does not support the Debtor's position (Landlord's Br. at 17-18), however, is singularly unpersuasive. What the Landlord cites as a "reaffirmation" of principals that undermine the Debtor's citation to *Mann Theatres*, in fact, is nothing more than a discussion of relevant legal principals. The Landlord does not, moreover, address in any fashion that court's holding that appellate courts do have the equitable power to restore a lease terminated as a consequence of an improvidently vacated *Yellowstone* injunction even in the absence of interim relief pending appeal, nor was counsel able to do so at the February 10 Hearing. *Mann Theatres*, 94 A.D.2d at 477, 464 N.Y.S.2d at 801. Furthermore, the Landlord's statement that "subsequent decisions have not expanded the application of *Mann*" is simply incorrect. *See, e.g., Fratto*, 144 A.D.2d 635, 535 N.Y.S.2d 53; *Prince Lumber*, 254 A.D.2d 178, 678 N.Y.S.2d 256.

00338382

**DAVIDOFF MALITO & HUTCHER** LLP

Honorable Robert D. Drain
February 14, 2006
Page 10

What the Landlord calls a "previously-imposed *Yellowstone* injunction" was merely a temporary restraining order issued pending a hearing on the plaintiff's motion for a *Yellowstone* injunction, and the "[further] *Yellowstone* injunction" the court was supposedly powerless to grant, in fact, would have been the first, and only one to issue in that case. Finally, the "failure of the tenant" to toll the cure period that was noted by the court, and which the Landlord states was the failure to secure a second *Yellowstone* injunction after the first was lifted, in reality was a reference to the initial TRO that lapsed when the tenant's counsel failed to appear at the injunction hearing. *See T.W. Dress*, 143 A.D.2d at 900, 533 N.Y.S.2d at 549. Thus, the plaintiff in *T.W. Dress*, unlike the Debtor, plainly failed to comply with the procedure established in *Yellowstone*, and accordingly that case decidedly is not "like the case at bar." (Landlord's Br. at 16.)

*Norlee Wholesale Corp., Inc. v. 4111 Hempstead Turnpike Corp.*, 138 A.D.2d 466, 525 N.Y.S.2d 873 (2nd Dep't 1988), cited on page 18 of the Landlord's Brief, is similarly of no moment. Although the plaintiff in that case took steps to commence a proceeding under *Yellowstone* by filing an Order to Show Cause with Temporary Restraining Order, because the Order to Show Cause was not properly served, the TRO never took effect, and the plaintiff's lease was terminated before the court could address the request for *Yellowstone* relief. *See id.* On appeal, the Second Department concluded that "[i]n this regard, the plaintiff herein is in the same position as the plaintiff in *Yellowstone*," i.e., having watched the termination of its lease come and go before seeking to enjoin it. *Id.* at 468, 525 N.Y.S.2d at 875.

*   *   *   *

**DAVIDOFF MALITO & HUTCHER LLP**

Honorable Robert D. Drain
February 14, 2006
Page 11

Thus, for the reasons set forth above, during the February 10 Hearing, and in light of the full facts and circumstances set forth in the Record, the Debtor's Lease plainly continues to be viable and the Landlord's purported termination of that Lease prior to the adjudication of the merits of its Default Notice simply was not valid as a matter of law or equity.

           Respectfully submitted,

           Esther S. Trakinski

EST/afb
Enclosures

Cc: Abraham Backenroth, Esq. (w/enclosures)
   Mark Frankel, Esq. (w/enclosures)
   Judy Liu, Esq. (w/enclosures)
   Lawrence E. Tofel, Esq. (w/enclosures)
   Ronald S. Greenberg, Esq. (w/enclosures)
   Gary Becker, Esq. (w/enclosures)

00338382