# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE · NEW YORK, NY 10153-0119

(212) 310-8000

FAX: (212) 310-8007

DALLAS

HOUSTON

MENLO PARK
(SILICON VALLEY)

MIAMI

WASHINGTON, D.C.

BRUSSELS

BUDAPEST

LONDON

PRAGUE

WARSAW

JUDY G.Z. LIU
DIRECT LINE (212) 310-8512

judy.liu@weil.com

February 17, 2006

**BY ECF AND FEDERAL EXPRESS**

Hon. Robert D. Drain
United States Bankruptcy Judge
United States Courthouse
1 Bowling Green
New York, New York 10004

    Re:  In re East 44th Realty, LLC
       Chapter 11 Case No. 05-16167 (RDD)

Dear Judge Drain:

   As co-attorneys for the Landlord, East Forty-Fourth Street L.L.C., we appreciate the opportunity to address the narrow issue raised by the Court at the February 10 hearing—whether, by issuing the stay, the Appellate Division effectively reinstated the vacated Yellowstone injunction. In fact, neither the Mann Theatres case[1] nor any other case that Debtor has cited supports the Debtor's contention that the stay the Appellate Division issued on May 26, 2005 retroactively tolled the remaining cure period under the Lease, despite the Supreme Court's previous vacatur of the Yellowstone injunction and the protracted delay that ensued before the Debtor sought the Appellate Division stay.

---

[1] Mann Theatres Corp. of Cal. v. Mid-Island Shopping Plaza Co., 464 N.Y.S.2d 793 (App. Div. 1983), aff'd, 62 N.Y.2d 930 (1984).

WEIL, GOTSHAL & MANGES LLP

Hon. Robert D. Drain
February 17, 2006
Page 2


Debtor relies on several cases for the proposition that a court may issue a

retroactive injunction to bridge the gap otherwise arising from an improperly vacated or

improperly denied Yellowstone injunction that results in a lapsed cure period. See, e.g.,

Mann Theatres[2]; Physicians Planning[3]; Fratto[4]; Prince Lumber[5]; Jemaltown[6]; 225 E. 36th

St. Garage[7]; Lexington Avenue[8]. Notably, however, these cases universally involved

materially different fact patterns from that pertaining here. Indeed, in each such case, the

tenant had *timely* taken action to obtain or extend the Yellowstone injunction prior to the

lapse of the remaining cure period, and in each such case, the appellate court expressly

determined that the lower court had erred in denying the requested injunction, due to

administrative or judicial blunder, or application of the wrong standard. See Physicians

Planning, 451 N.Y.S.2d at 425 (plaintiff timely moved to toll cure period; lower court

---

[2] 464 N.Y.S.2d 793. Even if the holding in Mann Theatres could somehow be interpreted to permit issuance of retroactive injunctions where *any* erroneous or inadvertent action – and not just judicial error – has occurred (such as erroneous or inadvertent conduct of the tenant), the Debtor's conduct here – the failure to make a timely effort to continue the vacated Yellowstone injunction – would not constitute the kind of erroneous, inadvertent action warranting the retroactive relief granted in Mann Theatres. See T.W. Dress Corp. v. Kaufman, 533 N.Y.S.2d 548, 548 (App. Div. 1988) (citing Mann Theatres in support of its holding that counsel's failure to appear at Yellowstone hearing on behalf of tenant did not constitute "an erroneous or inadvertent failure to continue a properly granted *ex parte* toll"). Notably, the cases Debtor cites which interpret Mann Theatres uniformly have granted retroactive relief solely in instances of judicial error.

[3] Physicians Planning Serv. Corp. of Conn. v. 292 Estates, Inc., 451 N.Y.S.2d 425 (App. Div. 1982).

[4] Fratto v. Red Barn Farmers Market Corp., 535 N.Y.S.2d 53 (App. Div. 1988).

[5] Prince Lumber Co., Inc. v. CMC MIC Holding Co., L.L.C., 678 N.Y.S.2d 256 (App. Div. 1998).

[6] Jemaltown of 125th St., Inc. v. Leon Betesh/Park Seen Realty Assocs., 496 N.Y.S.2d 16 (App. Div. 1985).

[7] 225 E. 36th St. Garage Corp. v. 221 E. 36th Owners Corp., 621 N.Y.S.2d 302 (App. Div. 1995).

[8] Lexington Ave. & 42nd St. Corp. v. 380 Lexchamp Operating, Inc., 613 N.Y.S.2d 402 (App. Div. 1994).

WEIL, GOTSHAL & MANGES LLP

Hon. Robert D. Drain
February 17, 2006
Page 3

denied motion based upon erroneous assumption that plaintiff could obtain necessary

injunctive relief in Civil Court, which does not have power to grant such relief); Fratto,

535 N.Y.S.2d at 54 (plaintiff timely moved to toll running of cure period, but Supreme

Court "erred both in striking the stay contained in the plaintiff's order to show cause and

in subsequently denying the plaintiff's motion for a Yellowstone injunction."); Prince

Lumber, 678 N.Y.S.2d at 256 (tenant timely moved to toll cure period; lower court's

failure to continue a TRO pending determination of plaintiff's motion for a Yellowstone

injunction found to be inadvertent); Jemaltown, 496 N.Y.S.2d at 18 (tenant timely moved

to toll cure period; in denying Yellowstone injunction, lower court applied wrong

standard for the relief sought); 225 E. 36th St. Garage Corp., 621 N.Y.S.2d at 304 (tenant

timely moved to toll cure period; lower court erred in finding that sworn statements of

plaintiffs' counsel were insufficient to evidence a two-day oral extension of tenant's cure

period); Lexington Ave., 613 N.Y.S.2d at 403-04 (tenant timely moved to toll cure

period; lower court erred in denying injunctive relief on ground that alleged default was

non-payment of rent).[9]

Debtor ignores the glaring factual distinction that renders its cited cases wholly

unpersuasive.  Here, Debtor *failed to act timely* in seeking the Appellate Division stay

---

[9] Empire State Building Associates v. Trump Empire State Partners, 667 N.Y.S. 2d 31 (App. Div. 1997), which Debtor also cites, is inapposite because in Empire the landlord's termination notice was patently invalid, having been served before the cure period expired.  Thus, while the court granted the Yellowstone relief, it was not issued in the context of a threatened lease termination.

WEIL, GOTSHAL & MANGES LLP

Hon. Robert D. Drain
February 17, 2006
Page 4


after the Supreme Court vacated the Yellowstone injunction.  Instead, Debtor let the

remaining cure period under the Lease lapse for nearly two months before seeking a stay.

Debtor is no differently situated than the movant in the Yellowstone case, where

injunctive relief was denied, because the movant failed to apply for a stay until after the

cure period had lapsed.   In purporting to refute that it failed to act timely in seeking the

Appellate Division stay, Debtor points to its timely application for the Yellowstone

injunction it first obtained from the Supreme Court in June, 2004.  See Debtor's

submission, at 2-3.  This argument does not speak to the issue at hand.  Indeed, the issue

before the Court is not the timeliness of that *initial* application; rather, like in Mann

Theatres, the relevant issue is whether Debtor was required to take action to *extend* its

Yellowstone injunction to avoid the resulting lapse of the cure period when the Supreme

Court vacated the injunction.  If Debtor's unsubstantiated premise were correct (*i.e.*, that

as long as a tenant procured at least one timely Yellowstone injunction it is per se entitled

to obtain retroactive reinstatement of such injunction in the event it is vacated), then the

vacatur by a New York state court of its own Yellowstone injunction would be stripped

of any practical effect, as the tenant could always come back at some later time and ask to

have the injunction reinstated.  Manifestly, that is not the law in New York, and it would

be inappropriate for this Court to expand the law as the Debtor now urges.

Although Debtor has argued that a "chain of stays" "preserved at a minimum that

cure period which remained under the July 2, 2004 default notice" (Hr'g Tr. of 2/10/06 at

WEIL, GOTSHAL & MANGES LLP

Hon. Robert D. Drain
February 17, 2006
Page 5

7), the undisputed facts are otherwise.  There was no stay in place between the February,

2005 vacatur of the July, 2004 Yellowstone injunction and the May 6 stay issued by the

Appellate Division.  That break in the "chain" is fatal to the Debtor, and the cases Debtor

cites do not substantiate its contention that a court would (or did), on the facts of this

case, issue a "stay" retroactively.  Thus, while the Debtor did take timely action when it

first obtained its Yellowstone injunction in July, 2004, it subsequently failed to take

further timely action once the Yellowstone injunction was vacated in February, 2005.  It

did *nothing* throughout March, 2005 and did not seek a stay from the Appellate Division

until May; however, the Lease termination notice was dated March 10 and effective

March 31.  The fact that Debtor had only a few days remaining in which to cure once the

injunction was lifted in February, 2005 is a problem of Debtor's own making, due to the

fact that it waited until the eleventh hour of its cure period before seeking Yellowstone

relief in the first place.

Moreover, the Debtor's own failure to act when the Supreme Court vacated the

injunction is not the sort of erroneous or inadvertent occurrence that warranted a

retroactive stay, as evidenced by the line of cases where the appellate court did not

override the lower court's denial of injunctive relief.  See, e.g., T.W. Dress, 533 N.Y.S.2d

at 548 ("We reject the argument that the failure of plaintiff's counsel to obtain an

extension of the temporary restraining order constituted 'an erroneous or inadvertent

failure to continue a properly granted *ex parte* toll,'" citing Mann Theatres); Norlee

WEIL, GOTSHAL & MANGES LLP

Hon. Robert D. Drain
February 17, 2006
Page 6

Wholesale Corp. v. 4111 Hempstead Tpk. Corp., 525 N.Y.S.2d 873 (App. Div. 1988)

(plaintiff could not obtain *nunc pro tunc* Yellowstone relief because it had served notice

of its order to show cause improperly); Mucchi v. Eli Haddad Corp., 475 N.Y.S.2d 35,

36 (App. Div. 1984) (distinguishing cases where "substantial compliance has been

infected by a meaningless error in form," where plaintiff had not established that it was

the tenant of record and the "mistake in the name of the plaintiff and the moving party

[could not be said to be] an insubstantial error"). Importantly, the Appellate Division

issued a stay not an injunction,[10] and it rendered no opinion explaining why it issued a

stay or whether it in fact found that the Supreme Court's vacatur was erroneous or

inadvertent. It is Landlord's position that the Appellate Division's intention in issuing

the stay necessarily must have been to deter the Landlord from collecting the sublease

proceeds.[11] The events that transpired which led to the issuance of the Appellate

Division stay, in sharp contrast to the underlying facts in the cases on which Debtor

---

[10] As demonstrated by Debtor's notice of motion, annexed hereto as part of Exhibit "A", Debtor moved in the Appellate Division for both a stay and an injunction. The Appellate Division's order of May 26, 2005, by its terms, effected *only* a stay and declined to issue the requested "injunction". A stay is simply a postponement or halting of a proceeding, as compared to an injunction which can fashion either a prospective or retroactive remedy. See May 26, 2005 Order, annexed hereto as Exhibit "B".

[11] The Debtor's counsel erroneously contended during the February 10 hearing that the Landlord's attempt to collect the sublease proceeds was "unequivocally not the motivation" for the Debtor's application to the Appellate Division or the Appellate Division's stay. (Hr'g Tr. of 2/10/06 at 44.) This contention is belied by the application itself, which is annexed hereto as Exhibit "A". Even a cursory review reveals that the basis for that application largely was to avoid the Debtor's loss of the rental revenue which would result from the Landlord's collection of the sublease proceeds, which it had commenced on April 27. See, e.g., Aff. of Larry Hutcher in Support of Motion for Stay at ¶¶ 16-17; Aff. of Yusuf Bildirici in Support of Motion for Stay at ¶ 12.

WEIL, GOTSHAL & MANGES LLP

Hon. Robert D. Drain
February 17, 2006
Page 7

relies, do not constitute the erroneous or inadvertent events that led the appellate courts in

such cases to reverse the lower court's denial of the requested injunction.

Having no substantive argument to make, Debtor's counsel lamely tries to

distinguish T.W. Dress from the case at bar by arguing that a TRO is not a Yellowstone

injunction.  But, a TRO (similar to that issued *ex parte* to this Debtor by Justice Diamond

in July, 2004, and similar to that issued in virtually every case on which Debtor relies) is

frequently obtained in conjunction with scheduling the hearing on the preliminary

(Yellowstone) injunction, so that the cure period is tolled pending the hearing on the

injunction motion.  The lesser standard governing the issuance of Yellowstone

injunctions (as opposed to the higher standard for issuance of a typical preliminary

injunction) applies equally at the TRO and Yellowstone injunction stages.  See, e.g.,

Fratto, 535 N.Y.S.2d at 54 (plaintiff timely moved by order to show cause for a

temporary restraining order and preliminary injunction tolling two 30-day cure periods

commenced upon service of two default notices).

The balance of Debtor's submission may be summarily dismissed, as those issues

are not – and should not be – before the Court.  The adequacy of the initial default notice,

and the fact that the Debtor was indeed in default, have been fully litigated before the

state courts.

WEIL, GOTSHAL & MANGES LLP

Hon. Robert D. Drain
February 17, 2006
Page 8


In short, Debtor has provided no authority to contradict the inescapable conclusion that the Lease irrevocably has terminated and, as a result, may not be assumed by the Debtor.  Accordingly, Landlord's motion of January 3, 2006 should be granted.

In the alternative, Landlord respectfully submits that the issue of Lease termination is one that also could be decided by the State Court.  There is already an appropriate framework in place for such a determination by Justice Diamond.  See Order entered July 10, 2005, annexed hereto as Exhibit "C", in which Justice Diamond declined to address this very issue on account of the stay issued by the Appellate Division, which stay has now been lifted.  Accordingly, Landlord respectfully suggests that an alternative means of resolving the issues associated with termination of the Lease would be to hold the parties' respective motions in abeyance and to further modify the automatic stay to permit litigation of this threshold New York state law issue to proceed in the State Court before Justice Diamond.

Respectfully submitted,

Judy G.Z. Liu

JGZL/mas
cc:    Lawrence E. Tofel
       Abraham Backenroth
       Gary Becker
       Mark Frankel
       Ronald Greenberg
       Larry Hutcher
       Esther Trakinski

# EXHIBIT A

# EXPEDITED SERVICE AND/OR INTERIM RELIEF   M-2013
## (SUBMITTED BY MOVING PARTY)

Date _May 5, 2005_

Title
of
Matter _East 44th Realty LLC_
_v._
_East Forty-Farth Street LLC_

Index/Indict # _110952/04_

Appeal
by _Plaintiff_ from

(order)
judgment of
decree

(Supreme)
Surrogate's
Family

County _NY_

Court entered on _Feb. 28_, 20_05_

Name of
Judge _Diamond_

Notice of Appeal
filed on _March 22_, 20_05_

If from  administrative determination, state agency _____

Nature of _Action for declaratory relief, and Yellowstone Injunction and damages_
action
or proceeding _arising out of Net Commercial Lease dispute_

Provisions of

(order)
judgment  appealed from _declaration that Plaintiff is obligated to perform_
decree
_certain repairs; declaration that dispute is not arbitrable; dismissal of_
_First of Cause of Action; denial of cross-motion to serve late Reply to_
(appellant) _Counterclaim; order lifting Yellowstone Injunction_

This application by  respondent  is for _STAY OF ORDER_

_____

_____

If applying for a stay, state reason why requested _Appellant will lose 85 year net_
_lease if Respondent is not enjoined from terminating Lease and removing_
_Appellant from Premises; Appellant will further default under Mortgage if Respondent_
_is not enjoined from_

Has any undertaking been posted _NO_       If "yes", state amount and type_____ _soliciting_
_and_
_collecting_
_____ _rent from_
_Appellant's_
Has application been made to    _NO_      If yes, state _sub-tenants._
court below for this relief _____    Disposition _____

Has there been any prior application              If "yes", state dates
herein in this court _____       and nature _____

_____

_____

Has adversary been advised                       Does he/she
of this application _____yes___                  consent _____

**Name** Davidoff Malito & Hutcher LLP          Tkawitz & Harwood

**Address** 605 Third Avenue                     305 Broadway - 7th fl

NY NY 10158                                       NY NY 10007

                                                  (212) 822-1400 X 102

**Tel. No** (212) 557-7200

**Appearing by** Larry Hutcher

---

**(Do not write below this line)**

**DISPOSITION**

Interim stay of J. Diamond's
order granted on condition
that by 5-10-05 plaintiff
pay def $350,000 by ~~certify~~
wired funds or bank check
which def may accept w/o prejudice
and on the further condition that
plaintiff remains current on the
rent. Expedite motion

                    Df
                  Justice DF              5-06-05
                                          Date

**Motion Date** 5/18/05   **Opposition** 5/10   **Reply** 5/13 — reply on 5/1
                          + cross          + resp to x

**EXPEDITE** ✓   **PHONE ATTORNEYS** ✓   **DECISION BY**

**ALL PAPERS TO BE SERVED PERSONALLY.**
                                          EKH
                                    Court Attorney

**"Revised 02/01"**

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT
-------------------------------------------------------------------------x
EAST 44th REALTY LLC,                                    Index No. 110952/04

                    Plaintiff-Appellant,                 **NOTICE OF MOTION**

          -against-

EAST FORTY-FOURTH STREET LLC,

                    Defendant-Respondent.

-------------------------------------------------------------------------x

**PLEASE TAKE NOTICE** that upon the Affidavit of Larry Hutcher

sworn to on May 5, 2005, the Affidvit of Josef Bildirici, sworn to on May 4, 2005, and

the Exhibits annexed thereto, a motion will be made on behalf of Appellant East 44th

Realty LLC before the Appellate Division, First Department at the courthouse at 27

Madison Avenue, New York, New York on the ___ day of May 2005 at 10:00 o'clock

in the a.m. or as soon thereafter as counsel may be heard for an order pursuant to CPLR

§§5518 and 5519:  a) Staying enforcement of the order of the Supreme Court, New

York County entered February 28, 2005 (Diamond, J.)(the "Order"); b) enjoining

Respondent, its attorneys, agents, employees and assignees or anyone acting on their

behalf from commencing any action or proceeding to recover possession of the

premises at 228-238 East 44th Street, New York, New York (the "Premises"), pending

the hearing and determination of this motion and the appeal by Appellant herein; c)

enjoining Respondent, its attorneys, agents, employees and assignees and anyone acting

on their behalf from interfering with the Appellant's use, occupancy and possession of

the Premises, including, but not limited to interfering with the relationship between

Appellant and its tenants by soliciting and accepting payments of rent or otherwise,

00326856

pending the hearing and determination of this motion and the appeal by Appellant

herein; d) staying the hearing on Respondent's Counterclaims before a referee, all

pending the hearing and determination of this motion and the appeal herein; and e)

granting Appellant such other relief that may be just and proper.

**PLEASE TAKE FUTHER NOTICE** that pursuant to CPLR § 2214(b),

answering papers, if any, shall be served at least ___ days before the return of this

motion.

Dated:    New York, New York
          May 5, 2005

Respectfully submitted,

Davidoff Malito & Hutcher LLP.

By: _____
    LARRY HUTCHER
    Attorneys for Plaintiff-Appellant
    605 Third Avenue
    New York, New York 10158
    (212) 431-1300

TO:    ITKOWITZ & HARWOOD
       Attorneys for Defendant-Respondent
       305 Broadway, 7th Floor
       New York, New York  10007
       (212) 822-1400

SUPREME COURT OF THE STATE OF NEW YORK

APPELLATE DIVISION: FIRST DEPARTMENT

------------------------------------------------------------------------x

EAST 44th REALTY LLC,

                    Plaintiff-Appellant,

           -against-

EAST FORTY-FOURTH STREET LLC,

                  Defendant-Respondent.

------------------------------------------------------------------------x

Index No. 119952/04

**AFFIDAVIT OF
LARRY HUTCHER,
ESQ. IN SUPPORT OF
MOTION FOR STAY**

STATE OF NEW YORK    )
                       ) ss.:
COUNTY OF NEW YORK  )

      **LARRY HUTCHER,** being duly sworn deposes and says:

      1.    I am a member of Davidoff Malito & Hutcher LLP, attorneys for Plaintiff-Appellant East 44th Realty LLC ("Appellant") and as such am fully familiar with the facts and circumstances recited herein. I submit this Affirmation in support of the instant application for an order pursuant to CPLR §§ 5518 and 5519(c) staying enforcement of the order issued by the Honorable Marylin G. Diamond, dated February 24, 2005, and entered in the office of the Clerk of the Supreme Court, New York County, on February 28, 2005 (the "Order"), pending the final determination of this appeal. (A copy of the Order is annexed hereto as Exhibit A. The Notice of Appeal, filed on March 22, 2005, is annexed hereto as Exhibit B.)

<strong><u>PRELIMINARY STATEMENT</u></strong>

      2.    As will be more fully set forth below, this application is both urgent and compelling. Absent the immediate equitable intervention of this Court, Appellant *will* suffer irreparable injury by losing its valuable interest in the net-lease it owns for the

00326879

building located at 228-238 East 44th Street (the "Building"), the term of which runs

through the end of 2091 and for which it paid nearly $20,000,000. Indeed, if left

unchecked, Respondent's unilateral acts to terminate Appellant's lease and divert

Appellant's income from the Building to itself will also serve to accelerate Appellant's

obligation to repay more than $12,600,000 under the Promissory Note, Mortgage and

Security Agreement executed by Appellant in connection with its acquisition of the Lease

(collectively the "Mortgage"). That this could occur when the amount actually in

controversy is less than $100,000 only serves to underscore the inequity Appellant faces.

3.      Thus, although we are confident that Appellant will ultimately prevail on

the merits of the appeal, without the issuance of immediate injunctive relief, Appellant

will have already been compelled to surrender its valuable property interest and the

appeal will have been rendered moot. By contrast, if this relief were granted, Respondent

will not suffer any prejudice to its interests. Moreover, in the unlikely event that it

prevails on the Appeal, any injury Respondent may suffer will adequately be remedied by

an award of money damages.

4.      Most significantly, all that Appellant seeks to do by this application and

motion is preserve the *status quo* until the appeal can be heard.

## BACKGROUND

5.      As more fully set forth in the accompanying Affidavit of Yusuf Bildirici,

sworn to on May 4, 2005 (the "Bildirici Aff."), the facts are as follows.

6.      The Lease[1] covers a 164-unit residential building with a parking garage

and other commercial sub-tenants on the ground floor. Defendant Respondent East

---

1      The lease at issue was originally entered into by parties unrelated to the parties hereto in 1960 and
has been amended and modified from time to time, most recently in 2000. The original lease along with its
amendments and modifications will be referred to at the "Lease".

Forty Fourth Street, LLC ("Respondent") is the owner of the Building. Appellant is its net lessee, having acquired its interest in the Lease for approximately $20,000,000 pursuant to an Assignment and Assumption of Lease dated December 4, 2002 .

7.      Sometime in early 2004, a dispute arose between the parties concerning (i) the scope of Appellant's obligation to complete repairs to the Building under a Settlement Agreement entered into on May 5, 2003 (the "Settlement"); and (ii) whether tens of thousands of dollars in fees that the Respondent's manager (who happens to be a lawyer) was charging to Appellant as legal fees due under the Lease, in fact were management fees which Appellant was not responsible for paying. It is this dispute—and Respondent's use of it as a pretext to wrest the valuable leasehold from Appellant—that underlies the instant action.

## FACTS

8.      As it relates to the instant application, the Settlement required Appellant to complete certain repairs to the Building, the scope of which was defined in two documents: The September 20, 2002 contract with Wayne Bellett Construction Company (the "Construction Contract") and an April 17, 2003 letter from Leonard Messer, P.E. (the "Contract Letter")(collectively the "Settlement Scope of Work").

9.      Following execution of the Settlement, Appellant promptly commenced the work specified in the Settlement Scope of Work and completed it in a timely fashion. On or about May 10, 2004, Appellant's engineer reported that the required work had been satisfactorily completed. [2]   On May 12, Appellant certified this to Respondent.

---

2       It is significant that Appellant's engineer, Douglas Schultz, was employed by Merritt Engineering Consultants, P.C. ("Merritt"), a reputable engineering firm, and was responsible for preparing the scope of work contained in the Construction Contract that formed the basis of the Settlement Scope of Work. The trial court erroneously characterized Mr. Schultz as merely being Appellant's senior project manager and

10.    Respondent, however, disputed that all of the required repairs were completed and insisted that substantial additional work be done. Despite its good faith attempt to resolve the issue, including actually completing some additional repairs after having certified completion, Appellant (and its engineer) believed that Respondent's ever-expanding and ill-defined demands went well beyond the Settlement Scope of Work.[3] Thus, Appellant was unable to reach a reasonable resolution with Respondent, and on July 2, 2004, Respondent served a Notice of Default based on the purported failures by Appellant to complete all repairs required under the Settlement (the "July 2 Default Notice"). Under the July 2 Default Notice, Appellant had 30 days to cure the default.

11.    Faced with the threatened termination, on July 28, 2004, Appellant commenced the underlying action and sought and was granted a Yellowstone injunction. (A copy of the Verified Complaint is annexed hereto as Exhibit C.) Respondent answered the Complaint on September 2, 2004, asserting two Counterclaims. (A copy of the Verified Answer and Counterclaims is annexed hereto as Exhibit D.) Then, on October 15, 2005, before issue was joined on its Counterclaims and before *any* discovery was taken, Respondent moved for summary judgment on its Counterclaims and to dismiss the Complaint. Appellant made a cross motion for leave to file a late Reply to the Counterclaims[4] and for other relief. The Order under appeal constitutes the trial court's decision with respect to these motions.

---

summarily ignored his opinion on the issue.

3    One of the principal issues was Respondent's refusal to specify precisely what additional work it contended had to be done. To date, Respondent has still never satisfactorily done so, but rather persists in referring to it as in the same general terms as adopted by the court below, namely "bulging brick work, defective mortar joints and shallow mortar joints."

4    Due to law office failure, Appellant's Reply was proffered approximately two weeks late.

12.     Among other things, in the Order the trial court (i) "declared that [Appellant] is obligated under the parties' lease and settlement agreement to undertake and complete repairs on the building's south façade and chimney, which includes bulging bricks, defective mortar joints and shallow mortar joints at various elevations"; and (ii) lifted the Yellowstone injunction.

13.     Although it maintains that the court's conclusion was erroneous, Appellant commenced preparations to complete the additional work ordered by the trial court. Among other things,, in early March, Yusuf Baldirici, Appellant's managing member, promptly contacted Merritt to begin planning the additional work and on March 16 obtained preliminary proposals from Merritt and  Wayne Bellet Construction. (Copies of the preliminary proposals from Merritt and Wayne Bellet Construction, each dated March 16, 2005, are annexed to the Baldirici Aff. as Exhibits A and B, respectively.)

14.     On March 10, notwithstanding Appellant's good faith in moving forward with the additional work, Respondent served Notice that the Lease was to terminate as of March 31 on the grounds of Applicant's failure to cure the defaults specified in the July 2 Default Notice.

15.     On March 15, the Mortgagee under the Mortgage sent Appellant a Notice that the Lease termination constitutes a default under the Mortgage and if such default is left uncured, the Mortgagee will commence proceedings to foreclose on its security interest.

16.     And finally, the Notice of Attornment served on April 27 and the companion notice to subtenants directing them to remit rental payments directly to Respondent (the "Rent Notice")(A copy of the Rent Notice is attached as Exhibit C to the

Bildirici Aff.) underscore the urgency of Appellant's need for interim relief.[5] The fact is that the rental stream from the Building's subtenants is Appellant's sole source of income to finance its payments under the Mortgage.

17.     Plainly stated, if the Appellant's income stream from the property is choked off, Appellant will be without the financial resources to meet its Mortgage obligations and will surely lose its Lease.[6]

## ARGUMENT

### The Merits of the Appeal

18.     Appellant is confident that it will prevail on the appeal because the court below clearly erred in several respects as set forth below.

19.     First, summary judgment should have been denied because there are several triable issues of material fact, including the specification of what work Respondent alleged was not completed and whether that work, in fact was included in the Settlement Scope of Work. The record clearly demonstrates that the parties' respective engineers disagreed with respect to these issues—a fact that was ignored by the trial court.

20.     But even if the engineers' disagreement had been acknowledged below, the record simply was not sufficiently complete to permit the court to resolve these critical issues because (i) the Construction Contract that in large part defined the Settlement Scope of Work *was not before the court*; (ii) the documents upon which the

---

5     Appellant made a motion, by Order to Show Cause, for reargument and interim injunctive relief which was heard and submitted on April 8. At the hearing, the trial court declined Appellant's request for an injunction during the pendancy of the motion.

6     In addition, although it has not yet commenced an action for eviction, Appellant fully expects that Respondent is preparing to do so.

court did rely were incomplete and ambiguous; and (iii) although the disputed subject

matter is of a sufficiently technical nature so as to warrant expert evidence to assist the

court in interpreting it, no discovery of any kind, much less expert discovery, had yet

been taken.

21.     Second, the noted absence of any discovery is another, independent

ground to have denied Respondent's summary judgment motion as premature.  It is well

settled that a party should be permitted a reasonable opportunity to take discovery prior to

the determination of a motion for summary judgment.  *Boyer v. New York Property*

*Insurance Underwriters Association*, 90 A.D.2d 737, 455 N.Y.S.2d 797, 798-99 (1st

Dep't 1982); *General Electric Capital Auto Lease, Inc. v. Stephens*, 248 A.D.2d 668, 670

N.Y.S.2d 582 (2d Dep't 1998).  When it appears that facts supporting the position of the

party opposing summary judgment exist but cannot be stated, the court may deny the

motion or order a continuance to permit disclosure to be had.  *See* CPLR 3212(f)).  *See*

*also First Bank of Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 690 N.Y.S.2d

17, 22 (1st Dep't 1999) ("Before [defendant's] motion can be granted, [plaintiff] is

entitled to obtain necessary discovery to ascertain whether there are grounds to pierce the

corporate veil"); *Nager v. Teachers' Retirement System of City of New York*, _ A.D.2d _,

691 N.Y.S.2d 406, 407 (1st Dep't 1999) ("the motion court properly denied defendants'

motion for summary judgment to permit plaintiffs to complete discovery (CPLR

3212[f])"); *Sovik v. Healing Network*, 244 A.D.2d 985, 665 N.Y.S.2d 997, 999 (4[th] Dep't

1997) (held, motion for summary judgment properly denied pursuant to CPLR 3212(f)

because plaintiffs were entitled to conduct discovery on essential facts).

22.     Here, the court granted partial summary judgment in favor of Respondent

notwithstanding the lack of discovery and the existence of numerous triable issues of

material fact.

23.    Third, the trial court also erred in holding that Respondent "is entitled to

reasonable attorney's fees incurred since issuance of the Messer Report [on March 14,

2002]" because that holding ignored the express terms of the Settlement.  In paragraph 6

of the Settlement, the parties agreed that Appellant's payment of the liquidated amount of

up to $90,000 shall be in full satisfaction of "any and all fees of counsel or otherwise

incurred by Owner . . . which is due or to become due on account of" all issues pertaining

to the Messer Report[7] and the defaults alleged there under.  Thus, there is a triable issue

of fact as to what, if any, right Respondent has to claim fees in this matter because, as

Respondent contends and the court found, all of the alleged defaults which form the basis

of the July 2 Default Notice are defaults of obligations required under the Messer Report.

24.    Finally, the court below also erred in denying Appellant's request for

leave to serve a late Reply to the Counterclaims because there was a reasonable excuse

for the brief two week delay (law office failure), and Appellant clearly has a meritorious

defense:  A bona fide dispute concerning the scope of the work Appellant was required to

complete in order to comply with its obligations under the Lease and Settlement.  It is

beyond peradventure that Appellant's reliance on the engineer who defined the scope of

work at issue in taking the position that the required work was completed was reasonable.

**Balance of the Equities**

25.    In *Empire State Building Assoc.*, this Court held that harm to the plaintiff

---

7    The "Messer Report" refers to the Building Condition Survey Report dated march 14, 2002,
prepared by L. Leonard Messer, P.E.   The dispute that lead to the Settlement derived from the failure by
Appellant's assignor to complete the repairs called for in this report, and the Settlement Scope of Work was
based, in part, on its findings.

00326879                                    8

that would flow from the loss of a net lease that had 79 years left in its terms and possible

renewals would be irreparable, reasoning that it is "difficult to imagine how damages

could adequately compensate Empire for the value of approximately 79 years remaining

under the lease." 245 A.D. 2d 225, 667 N.Y.S.2d 31

26.     In this case, the remainder of the Lease term and its possible renewals is

even longer—85 years. Thus, if Appellant loses the Lease, the injury to it would be

irreparable as a matter of law.

27.     As shown above and in the Baldirici Aff, absent the immediate equitable

intervention of this Court, Appellant will surely lose its interest in the Lease, along with

the $20,000,0000 Appellant paid to purchase it. As this Court noted in *State Building*

*Assoc.*, Appellant would suffer irreparable injury because it truly would be "difficult to

imagine how damages could adequately compensate" if for such a loss. *See Empire State*

*Building Assoc.*, 245 A.D. 2d 225, 667 N.Y.S.2d 31; *Workbench, Inc. v. Sylbin Realty*

*Corp.*, 140 A.D.2d 693, 528 N.Y.S.2d 888 (1st Dept 1988).

28.     By contrast, Respondent stands to suffer no greater prejudice by the

granting of the interim stay than its own inconvenience.

29.     Moreover, if the Lease were lost to Appellant, the instant appeal will be

effectively rendered moot.

30.     Thus, it is clear that the balance of equities in this case further weighs in

favor of Appellant:  Appellant was reasonably led to believe by its engineer that its

obligations under the Settlement had been satisfied, it negotiated in good faith with

Respondent to resolve the dispute as to the purportedly remaining work, and it would be

irreparably harmed absent a stay pending appeal. *See Empire State Building Assoc.*, 245

A.D. 2d 225, 667 N.Y.S.2d 31; *Workbench,* 140 A.D.2d at 697, 528 N.Y.S.2d at 891.

## CONCLUSION

31.    Thus, it indisputable that without the grant of an immediate stay of enforcement of the order appealed from, a grave injustice will result: Appellant will be deprived of its constitutional rights to due process and fundamental fairness by being forcibly ejected from its valuable Lease prior to being afforded the opportunity to be heard.  Only the grant of interim relief will serve to vindicate the rule of law and Appellant's right to due process.

**WHEREFORE,** it is respectfully prayed that the within requested relief be granted in its entirety.

_____
Larry Hutcher

Sworn to before me this
5th day of May, 2005

_____
Notary Public

PATRICIA A. KENNEDY
Notary Public, State of New York
No. 4834291
Qualified in Putnam County
Commission Expires April 30, 2007

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT
-------------------------------------------------------------------------x

EAST 44th REALTY LLC,                                    Index No.119952/04

               Plaintiff,                          **AFFIDAVIT IN**
                                                          **SUPPORT OF**
       -against-                               **MOTION FOR STAY**

EAST FORTY-FOURTH STREET LLC,

               Defendant.


-------------------------------------------------------------------------x

STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF NEW YORK  )

        **YUSUF BILDIRCI**, being duly sworn deposes and says:

    1.    I am the managing member of the Plaintiff-Appellant, East 44th Realty

LLC ("Appellant"), and as such am fully familiar with the facts and circumstances of this

matter. I submit this in support of Appellant's application for an order pursuant to CPLR

§§ 5518 and 5519(c) staying enforcement of the order of the Honorable Marylyn G.

Diamond, dated February 24, 2005, and entered in the office of the Clerk of the Supreme

Court, New York County, on February 28, 2005 (the "Order"), pending the final

determination of this appeal. Among other things, the Order vacated a <u>Yellowstone</u>

injunction restraining the landlord/defendant from interfering with Appellant's

possession, use and occupancy of 228-238 East 44th Street (the "Building").

## FACTS

    2.    The Lease[1] is a triple net lease for the entire Building. Appellant is the net

---

1      The lease at issue was originally entered into by parties unrelated to the parties hereto in 1960 and
has been amended and modified from time to time, most recently in 2000. The original lease along with its
amendments and modifications will be referred to at the "Lease".

00326987

lessee of the Building under the Lease, which it acquired for approximately $20,000,000

pursuant to an Assignment and Assumption of Lease dated December 4, 2002 . The

leasehold includes a 164-unit residential building with a parking garage and other

commercial sub-tenants on the ground floor.   Defendant- Respondent East Forty Fourth

Street, LLC ("Respondent") is the owner of the Leasehold.

        3.      Sometime in early 2004, a dispute arose between the parties concerning (i)

the scope of Appellant's obligation to complete repairs to the Building under a Settlement

Agreement entered into on May 5, 2003 (the "Settlement"); and (ii) whether tens of

thousands of dollars in management fees that Respondent's manager (who happens to be

a lawyer) was charging to Appellant as legal fees due under the Lease, were in fact for

services rendered that should have been included as part of management fees for which

Respondent is responsible.  It is this dispute—and Respondent's use of it as a pretext to

wrest the valuable leasehold from Appellant—that underlies the instant action.

        4.      The portion of the Settlement that is relevant to the matter now before this

Court required Appellant to complete certain repairs to the Leasehold, the scope of which

was defined in two documents:  The September 20, 2002 contract with Wayne Bellett

Construction Company (the "Construction Contract") and an April 17, 2003 letter from

Leonard Messer, P.E. (the "Contract Letter")(collectively the "Settlement Scope of

Work").

        5.      Following execution of the Settlement, Appellant promptly commenced

the work specified in the Settlement Scope of Work and completed it in a timely fashion.

On  or about May 10, 2004, Appellant's engineer reported that the required work had

been satisfactorily completed.[2]  On May 12, on behalf of Appellant, I so certified to

Respondent.

6.      Respondent, however, disputed that all of the required repairs were

completed and insisted that substantial additional work be done.  Despite good faith

efforts to resolve the issue, including actually completing some additional repairs after

having certified completion, I (along with Mr. Schultz) believed that Respondent's ever-

expanding and ill-defined demands went well beyond the Settlement Scope of Work.

One of the principal issues was Respondent's refusal to specify precisely what additional

work it contended had to be done.  To date, Respondent has still never satisfactorily done

so, but rather persists in referring to the work in the same general terms as adopted by the

court below, namely "bulging brick work, defective mortar joints and shallow mortar

joints."

7.      When Respondent served a Notice of Default on July 2, 2004, based on

the purported failures by Appellant to complete all repairs required under the Settlement

(the "July 2 Default Notice") and threatened to terminate the lease if the supposed default

was not cured within 30 days, Appellant commenced the underlying action.  At that time,

Appellant also sought and was granted a Yellowstone injunction.

8.      Appellant commenced this action based upon its good faith belief that it

had fully satisfied its obligations to complete repairs under both the Lease and the

Settlement.  This belief was based on the reports and inspections of the façade completed

---

2       It is significant that Appellant's engineer, Douglas Schultz, was employed by Merritt Engineering
Consultants, P.C. ("Merritt"), a reputable engineering firm, and was responsible for preparing the scope of
work contained in the Construction Contract that formed the basis of the Settlement Scope of Work.  The
trial court erroneously characterized Mr. Schultz as merely being Appellant's senior project manager and
summarily ignored his opinion on the issue.

00326987

by our engineer, Douglas Schultz. We believed Mr. Schultz's conclusions to be

particularly reliable because he had played a significant role in defining the scope of what

we were required to do. It was our feeling that the alleged default is highly suspect, and

that Respondent was and is using it as a pretext to wrest the valuable Leasehold from us.

9.      Although we believe that the trial court was incorrect when it "declared

that [Appellant] is obligated under the parties' lease and settlement agreement to

undertake and complete repairs on the building's south façade and chimney, which

includes bulging bricks, defective mortar joints and shallow mortar joints at various

elevations, I commenced preparations to complete the additional work ordered by the

trial court shortly after receiving notice of the Order.

10.     Among other things, in early March I contacted Merritt to begin planning

the additional work and, to the extent it was feasible to outline the job given the

imprecise nature of Respondent's demands, on March 16, I received preliminary

proposals for the work from Merritt and  Wayne Bellet Construction. (Copies of the

preliminary proposals from Merritt and Wayne Bellet Construction, each dated March 16,

2005, are annexed hereto as Exhibits A and B, respectively.)

11.     On March 10, notwithstanding our good faith in moving forward with the

additional work, Respondent served Notice that the Lease was to terminate as of March

31 on the grounds of Applicant's failure to cure the defaults specified in the July 2

Default Notice. And a few days later, I received a notice from the Mortgagee under the

Mortgage dated March 15 that the Lease termination constitutes a default under the

Mortgage and if such default is left uncured, the Mortgagee will commence proceedings

to foreclose on its security interest.

00326987

12.    And finally, the Notice of Attornment served on April27 and the companion notice to subtenants directing them to remit rental payments directly to Respondent (the "Rent Notice")(A copy of the Rent Notice is attached hereto as Exhibit C) underscore the urgency of Appellant's need for interim relief.[3]  The fact is that the rental stream from the Leasehold's subtenants is Appellant's sole source of income to finance its payments under the Mortgage.  If the Appellant's income stream from the property is chocked off, Appellant will simply be without the financial resources to meet its Mortgage obligations and will surely lose the Lease.

## CONCLUSION

13.    Thus, it is indisputable that if denied the relief requested herein, Appellant will be irreparably harmed by losing its valuable Leasehold and being made to forfeit its $ 20,000,000 investment in the property.  Such a result would be all the more unjust given that Appellant has consistently acted in good faith in its attempts to resolve the issues.  Certainly defendant will not be prejudiced in any meaningful respect by the relief requested and the status quo will be maintained until the appeal is decided by this Court.

---

3        On April --, 2005, Appellant moved, by Order to Show Cause, for reargument and interim injunctive relief.  the motion was heard and submitted on April 8, but the trial court declined Appellant's request for an injunction during the pendency of the motion.

00326987

**WHEREFORE**, Appellant East 44th Realty LLC respectfully requests that the

instant Application for emergency relief and and Motion for a stay pending appeal

pursuant to CPLR §§ 5518 and 5519(c) be granted.

JOSEF BILDIRICI
Yusuf

Sworn to before me this
4th day of May, 2005

Notary Public

PATRICIA A. KENNEDY
Notary Public, State of New York
No. 4834291
Qualified in Putnam County
Commission Expires April 30, 2007

00326987

MAY-03-2005 04:01 PM  WILLIE3

# EAST FORTY-FOURTH STREET L.L.C.
800 THIRD AVENUE
NEW YORK, N.Y.  10022

(212) 752-0007
TELECOPIER:  (212) 752-8881

**To:**     **All Commercial and Residential Tenants
at 228-238 East 44th Street**

**From:**   **Lawrence E. Tofel, Owner's Representative**

**Date:**   **April 27, 2005**

This Company is the owner of the land and building located at 228-238 East 44th Street; you are receiving this Notice as an occupant of the building. Since December, 2003 East 44 Realty, LLC ("East 44") has been the net lessee of the building and, as such, has been our only tenant.  It has acted as your landlord entitled to collect all rent, etc.

For many months we have made efforts to obtain East 44's compliance with several of its obligations to us, including completing certain repairs which it had agreed to make in a May, 2003 agreement.  Since July, 2004, the disputes between us and East 44 have been in the Courts.

In late February, 2005, the Supreme Court of the State of New York ruled in our favor and against East 44.  East 44 took no action and neither made nor commenced the required repairs.  As a result, and in accordance with appropriate notices which are consistent with applicable agreements and the Court's rulings, the lease pursuant to which East 44 occupied the building as our tenant and your landlord, has terminated.

By virtue of the termination of Lease, East 44's right to receive rent for your premises has terminated and such right of collection has been assigned to us. **No further payments due under your lease should be made to East 44. Effective immediately, all such payments due under your lease should be made payable to "East Forty-Fourth Street L.L.C."**

EAST FORTY-FOURTH STREET L.L.C.

By: _____
Lawrence E. Tofel, Manager

LET:jal

# EXHIBIT B

At a Term of the Appellate Division of the Supreme
Court held in and for the First Judicial Department in
the County of New York on May 26, 2005.

Present - Hon. Angela M. Mazzarelli,        Justice Presiding,
                Richard T. Andrias
                David B. Saxe
                George D. Marlow
                Joseph P. Sullivan,         Justices.

-----------------------------------------x
East 44th Realty LLC,
        Plaintiff-Appellant,

        -against-                          M-2013 and M-1932
                                           Index No. 110952/04
East Forty-Fourth Street LLC,
        Defendant-Respondent.
-----------------------------------------x

        An appeal having been taken to this Court from the order of the
Supreme Court, New York County, entered on or about February 28, 2005,

        And plaintiff-appellant having moved, pursuant to CPLR 5518 and
CPLR 5519(c), for a preliminary appellate injunction, inter alia,
enjoining respondent from commencing any action or proceeding to
recover possession of the premises located at 228-238 East 44th Street,
New York, New York; interfering with appellant's use, occupancy and
possession of the premises, including appellant's relation with its
tenants, and staying proceedings with respect to respondent's
counterclaims, all pending hearing and determination of this appeal,
and for related relief,

        And defendant-respondent having cross-moved for dismissal of the
aforesaid appeal or, in the alternative, for an order fixing an
undertaking,

        Now, upon reading and filing the papers with respect to the
motion and cross motion, and due deliberation having been had thereon,

        It is ordered that the motion for a stay is granted upon the
terms and conditions contained in the order of a Justice of this Court
dated May 6, 2005, and upon the further condition that plaintiff
perfects the appeal for the October 2005 Term.  Upon failure to so
perfect, defendant may enter an ex parte order vacating the stay, on
condition that respondent serves a copy of this order upon appellant
within 10 days of the date of entry hereof.

        The cross motion is granted only to the extent indicated, and
otherwise denied, with leave to address the issue of mootness on the
appeal.

                ENTER:       *Catherine O'Hagan Wolfe*

                                  Clerk

# EXHIBIT C

**SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY**
**PRESENT:**      **HON. MARYLIN G. DIAMOND**                    **PART 48**
——————————————————————— Justice ———————————————————

EAST 44 REALTY, LLC,                                    INDEX NO. 110952/04

                    Plaintiff,

                    - v -                                MOTION DATE

EAST FORTY-FOURTH STREET, LLC,                          MOTION SEQ. NO.  006
                    Defendant.                          MOTION CAL. NO.

———————————————————————————————————————

Cross-Motion:    [X] Yes    [ ] No

        **Upon the foregoing papers, it is ordered that:** This is a landlord-tenant dispute involving the
question of whether the plaintiff/tenant breached the terms of its lease by failing to make certain repairs.
After the defendant/landlord served plaintiff with a notice of default, plaintiff commenced this action
seeking declaratory and injunctive relief, as well as monetary damages. In its answer, the defendant
asserted counterclaims for declaratory relief and for attorney's fees. Upon the plaintiff's motion, the court
issued a *Yellowstone* injunction which tolled the plaintiff's time to cure its alleged default and restrained
the defendant from taking any steps to enforce the notice of default during the pendency of this action. By
decision and order dated February 24, 2005, this court granted the defendant's motion for summary
judgment and declared that plaintiff is obligated to make the repairs at issue. The court also denied
plaintiff's cross-motion for leave to serve a late reply to the defendant's counterclaims and referred to a
Special Referee the issue of the reasonable legal fees which the defendant is entitled to recover from
plaintiff under the lease. Finally, the court lifted the *Yellowstone* injunction which it had previously issued.
        The plaintiff has now moved to reargue that portion of the court's order which lifted the
*Yellowstone* injunction. It seeks additional time to make the requisite repairs prior to the expiration of the
cure period. Although the notice of motion states that plaintiff also seeks to reargue the court's denial of
its cross-motion for leave to serve a late reply to defendant's counterclaims and, in addition, seeks a stay
of all proceedings before the Special Referee, the plaintiff failed to submit any affidavit or provide any
argument in support of this relief. The defendant has cross-moved for leave to amend its answer so as to
assert a counterclaim seeking a declaration that the lease has been terminated.
        Subsequent to the submission of the motion and cross-motion, the Appellate Division, First
Department, by order issued May 26, 2005, stayed all proceedings to enforce this court's February 24, 2005
order pending the appeal which has been taken therefrom. Although the plaintiff has not cited any authority
in support of its argument that a *Yellowstone* injunction may be continued even after a decision has been
issued finding that a tenant has been in breach of its lease, the court need not address the matter since the
motion must be denied as moot in view of the stay which the First Department has issued. As to the
defendant's cross-motion for leave to amend its answer, the motion is denied as premature in view of the
appeal from this court's order which is pending before the First Department. In any event, the court has
been stayed from issuing any such order.
        Accordingly, the plaintiff's motion and the defendant's cross-motion are hereby denied.
                            ENTER ORDER

**Dated:** 2/24/05                                    _M G D_

                                              **MARYLIN G. DIAMOND, J.S.C.**

**Check one: [ ] FINAL DISPOSITION**              **[X] NON-FINAL DISPOSITION**