| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------x<br>In re<br><br>EAST 44TH REALTY, LLC,<br><br>                          Debtor.<br>-----------------------------------------------------------x | March 10, 2006<br>10:00 a.m.<br><br>Chapter 11<br><br>Case No.  05-16167 |

## MEMORANDUM IN OPPOSITION TO LANDLORD'S MARCH 3, 2006 SUBMISSIONS

        East 44th Realty, LLC (the "Debtor") and Yusef Bildirici, the Debtor's managing member, as and for their Memorandum in Response to East Forty Fourth Street L.L.C. ("Landlord") submissions dated March 3, 2006, respectfully represent as follows:

(a)     **The Landlord's failure to produce time sheets for review by the Debtor denies the Debtor the ability to challenge the reasonableness of the amounts sought**, and

(b)     **The Landlord's description of the Landlord's purported attempts to settle this case is predictably disingenuous, and in any event, does not change the fundamental fact that the Landlord's claim for attorneys fees is nonetheless unreasonable given the improper ends sought by the Landlord, and the relatively small amounts in issue for repairs.**

1

### THE LANDLORD'S FAILURE TO PRODUCE TIME SHEETS FOR REVIEW BY THE DEBTOR DENIES THE DEBTOR THE ABILITY TO CHALLENGE THE REASONABLENESS OF THE AMOUNTS SOUGHT

1. In support of its motion to assume the Lease, the Debtor argued that the approximately $ 1,000,000 of legal fees demanded as part of the Landlord's cure claim were not reasonable, and not compensable given, among other things, the Landlord's failure to proffer time sheets, invoices or other evidence of legal services performed so that the Court may evaluate the reasonableness of such demand.

2. Finding that the $1 million fee amount is "so high" given that the dispute concerned a repair costing no more than $15,000, Court ordered the Landlord to produce time records and to appear for a deposition by the Debtor to explain them.

3. In response, the Landlord, a mere four business days before the scheduled March 10 hearing filed and served a self-serving Affidavit of its Manager, Lawrence E. Tofel, sworn on March 3, 2006 (the "Tofel Fee Affidavit") with an incomplete set of invoices as exhibits. What is more, without making any application for a protective order, the Landlord (and its experienced bankruptcy counsel) unilaterally deemed its attorneys' time records to be "protected from disclosure by the attorney-client and attorney work product privileges." Tofel Fee Affidavit, p.2 note 1. The Landlord cited no law in support of this statement.

4. As a matter of law, the Landlord's unilateral designation of the records as protected by privilege is wrong. In similar circumstances, where a creditor sought attorneys' fees, but then refused to disclose it time sheets to the Debtor, the Bankruptcy Court denied the creditor's summary judgment motion for fees. The same analysis should apply in this case. As the Court held in In re 50 Pine, LLC, 317 B.R. 276, 286 (Bankr. S.D.N.Y. 2004):

> As noted above, CapitalSource submitted an accounting ledger which asserts that expenses and fees associated with the due diligence amounted to $78,816. (Bradshaw Cert. Ex. C.) At the hearing noted above, the Court found that the accounting did not provide adequate detail to determine the reasonableness of the expenses, and the parties agreed that CapitalSource would produce an accounting further detailing its expenditures. In its further submission, CapitalSource provided documentation indicating that the bulk of the $75,000 Deposit was expended on attorneys' fees in conducting due diligence. However, while attorneys' timesheets were provided, all descriptions of services rendered were redacted in their entirety, preventing the Court and the Debtor from making any determination of the reasonableness of the cost of the services.
>
> While information covered by the attorney-client privilege may be redacted, information not covered by the privilege needs to be produced. *Blumenthal v. Drudge,* 186 F.R.D. 236, 243-44 (D.D.C.1999). A more meaningful accounting of how the Debtor's $75,000 Deposit was spent is surely possible. Attorney timesheets containing a description of services rendered and the charges therefore are routinely disclosed, and it is impossible that all descriptions of services required redaction to accommodate the attorney-client privilege. CapitalSource also put "at issue" the amount and reasonableness of its attorneys' fees. It thereby waived the privilege to the extent necessary to determine this issue. See *S.N. Phelps & Co. v. Circle K Corp.* (In re Circle K Corp.), Nos. 90-5052-PHX-GBN, 90-5075-PHX-GBN, 1996 WL 529399, at *4 (Bankr.S.D.N.Y.1996).
>
> A question was also raised by the Debtor as to the propriety of charges by CapitalSource's inside counsel. Whether these are proper "out-of-pocket" costs and expenses cannot be decided until we know what the attorneys did.
>
> Because adequate information has not been provided and there exists a genuine issue of material fact as to the reasonableness of the fees charged against the Debtor's $75,000 Deposit, CapitalSource's motion for summary judgment on the unjust enrichment claim is denied.

5.      Against this background, the Landlord's failure to produce time sheets plainly shows hubris. Bankruptcy counsel are well aware of the scrutiny routinely applied to requests for compensation, and the Landlord's failure to subject itself to such scrutiny by the Debtor following this Court's order, establishes that a minimum, the Landlord has failed to make a prima facie case as to its entitlement to fees.

6.      Far from providing the Debtor or the Court with a reasonable proxy for the withheld time record, the self-serving Tofel Fee Affidavit creates more factual issues suggesting the patent unreasonableness of the Landlord's excessive fee demand than it clears up.

7.      For example, although the dispute plainly began in 2004 (and, according the Landlord's second affidavit submitted by Mr. Tofel, goes back to 2003), and despite the fact that in his February 7, 2006 Affidavit submitted in opposition to the Debtor's Motion to Assume (the "Tofel Assumption Affidavit"), he testified that the legal fees sought for his firm included fees for the period of April 2004 through January 2006 (Tofel Assumption Affidavit at 5, ¶ C), Mr. Tofel has only submitted invoices that purport to be from his firm (but reflect no letterhead), Tofel & Partners, LLP, for services rendered in 2005.[1]  What is more, although in his February Affidavit, Mr. Tofel stated that the fees for this 21 month period was $ 683,517.15, the total of the invoices he now submits for services rendered from December 2004 through January 31, 2006 equals $ 720,629.28. (Tofel Fee Affidavit, Exhibit A.)

---

[1]    This, of course, is with the notable exception of an invoice dated January 24, 2005, which purports to reflect a curiously round figure of $ 5,000 of fees and $ 171,65 of disbursements for "Professional services rendered through December 31, 2004.

       8.       Similarly, although in the Tofel Fee Affidavit, the Landlord's Manager states that his firm's aggregate fees for March, April and May 2005 equal $ 97,267.41 (Tofel Fee Affidavit ¶ 9 (at 7)), the total amount reflected on the purported invoices for services supposedly rendered during April and May—there is no invoice included for March—is $ 205,059.71, and indeed, the invoice for May, alone, shows $ 147,123.08 for service rendered during that month. (Tofel Fee Affidavit, Exhibit A.)

       9.       The descriptions of the activities engaged in by counsel during the relevant periods proffered in the Tofel Fee Affidavit, at best, are not helpful in explaining the exorbitant (not to mention inconsistent) fee amounts demanded. On the contrary, even the most cursory reading of the Landlord's missive raises serious questions as to the reasonableness of the demand. For example, Mr. Tofel's descriptions explicitly include ordinary management activities of the Landlord such as "steps to prepare for the termination of the Lease . . . to commence operation of the Premises, including the collection of the sublease proceeds and the administration of the affairs of the Premises." (Tofel Fee Affidavit at 7.) To charge the Debtor with legal fees for such mundane management activities is not only unreasonable, it violates the terms of the Lease, and in fact, were a central issue in the state court litigation. (*See* Record on Appeal[2] ("R.") at 156 – 167 (Summons and Complaint).)

---

[2]     The Record on Appeal was submitted to the Court as an exhibit to the Debtor's February 14, 2006 letter submission. Because of its volume, the Debtor will not burden the Court or the files with it attachment hereto.

10. The myriad frivolous motions that the Landlord would have the Debtor pay for, including an wholly unfounded motion to the New York State Court of Appeals for leave to appeal the First Department's grant of the Stay Pending Appeal, will not be addressed herein, except to note that the reasonableness of the Landlord's hyper-litigiousness is certainly deserving of more pointed scrutiny than is permitted on the face of the inadequate submissions made thus far.

11. Similarly, Mr. Tofel's general descriptions of the activity of Weil Gotshal & Manges his "special bankruptcy counsel" to justify nearly a quarter of a million dollars in legal fees[3] are grossly deficient. Indeed, as with the Tofel & Partners invoices and testimony related thereto, the invoices and Tofel Fee Affidavit raise significant questions of reasonableness, not least of which is the participation of six different lawyers and an undisclosed number of paralegals, and the necessity for multiple lawyers (sometimes as many as three) appearing at hearings that were handled by Mr. Tofel, himself.

12. Finally, it does not appear that the Landlord's invoices, much less Mr. Tofel's testimony, reflect fees already paid for by the Debtor. Indeed, except for one curious invoice, dated January 18, 2006, that shows $ 333,234.48 in "Payments on account", and an obtuse reference by Mr. Tofel to their being $ 683,517.15 of unreimbursed fees to his firm (Tofel Fee Affidavit ¶ 9), the Landlord's submission is curiously silent on this issue. And, as the Court is aware, the Debtor is not in a position to address this issue because of the Landlord's persistent

---

[3] We note that Weil's invoices were not provided to the Debtor until after 6:30 pm on Monday, March 6, 2006.

refusal to account for the $ 350,000 the Debtor paid it on May 10, 2005, as a condition of the stay . This is important information necessary to determine the reasonableness of fees still allegedly due.

13.   In the event that the Court nonetheless allows the Landlord to proceed with its claim for attorneys fees, notwithstanding the fact that (i) the Landlord, by its own admission, has been paid some portion of the fees, perhaps in excess of $ 330,000; and (ii) has so flagrantly disregarded the letter and spirit of the Court's direction to provide discovery with respect to the fee demand, the Debtor and Mr. Bildirici respectfully request the opportunity to take discovery pursuant to the discovery notices served in early February, before any further consideration of the issue.

**THE LANDLORD'S DESCRIPTION OF THE LANDLORD'S PURPORTED ATTEMPTS TO SETTLE THIS CASE IS PREDICTABLY DISINGENUOUS, AND IN ANY EVENT, DOES NOT CHANGE THE FUNDAMENTAL FACT THAT THE LANDLORD'S CLAIM FOR ATTORNEYS FEES IS NONETHELESS UNREASONABLE GIVEN THE IMPROPER ENDS SOUGHT BY THE LANDLORD, AND THE RELATIVELY SMALL AMOUNTS IN ISSUE FOR REPAIRS**

14.     Significantly, the Landlord has not addressed the issues raised by, among other things, the <u>Nicfur-Cruz</u> case in the Debtor's initial reply to the Landlord's demand for fees. Again, the Landlord <u>concedes</u> that at all relevant times, the Landlord <u>was aware of the limited cost of the work necessary</u>, and the fact that the work would serve cosmetic purposes only. Thus, the Landlord has been manufacturing litigation for the improper purpose of terminating the Lease.

15.     Instead of dealing with such issues, the Landlord's affidavit attempts to legitimize its conduct by blaming the Debtor for the absence of a settlement in this case. Putting aside the fact that settlement discussions are typically not admissible as evidence, nothing in the voluminous materials the Landlord provided indicates that the Landlord was ever willing to engage in a dialogue regarding what work the Landlord wanted done in order to deal with the repair issue. Rather, that the Landlord' sole submission on the settlement issue consists of another biased and incomplete affidavit from its Manager/counsel is indicative of the Landlord's tendency to gloss over the truth in general, and the damage caused by its obstreperous behavior in particular.

8

16. The fact is that throughout the relevant period of time, which commences at the time the Landlord rejected the Debtor's certification on or about May 10, 2004 of the completion of the Work called for in the 2003 settlement (R. 287-302), and not prior to that time, as the Landlord would now have the Court believe. Moreover, the Record on Appeal demonstrates the Landlord's consistent refusal to address what we now know to be a small, $15,000 issue. (*See e,g,*, R. 158, 305-307.) Indeed, as recently as last week, when a scaffold was erected on the portions of the Building that require the bulging brick and mortar joint work at issue, the Landlord instructed its engineer, Haim Najit, not to accompany the Debtor's engineer to inspect the Building in order to prepare the scope of work for the contractors. Such conduct, even at this late juncture, is simply not reasonable, particularly in light of the Debtor's repeated offers to pay for Mr. Najit's time.

17. The fact is that the verity of the Landlord's self-serving presentation must be probed in discovery (which, in fact, has been the Debtor's intent all along), before the Court can possibly ascertain any objective perspective on the issue.

18. Although such discovery, which would have to be had from both parties' former counsel, has not been taken, the Debtor and Mr. Bildirici believe that it will show a consistent pattern of behavior by the Landlord, including "settlement proposals" that demand unreasonable risks of forfeiture by the Debtor,[4] arrogant dismissals of the Debtor's reasonable

---

[4] For example, the "settlement" proposal made by the Landlord at the September 7, 2005 meeting referred to in Mr. Tofel's Affidavit would have had the Debtor agreeing to a complete forfeiture of the Lease plus reimbursement of the Landlord's fees if the Debtor was unable to sell the Lease in less than 90 days.

9

requests for information required in the ordinary course and in order to perform the cure, violations of the Stay Order by instructing tenants to hold rent payments in escrow, dismissing the Debtor's efforts to meet to discuss settlement, and blatant misstatements concerning phantom defaults by the Debtor.  (*See* Affidavit of Esther S. Trakinski, Esq., sworn March 9, 2006 ("Trakinski Aff.") ¶¶ 4-12 and Exhibit A and B.)

19. The Landlord, in its attempt to effectuate a forfeiture, has apparently lost sight of the fact that the entire dispute involved a indisputable (and undisputed) issue of minor repairs.  Although the Landlord's affidavit alleges its willingness to engage in a dialogue that would result in the Debtor's loss of the Lease and/or the Debtor's payment of large legal fees to the Landlord, unfortunately for the Debtor, the fact is that the Landlord has never been willing to engage in a dialogue that would result in the Debtor making the repairs demanded by the Debtor so that the Debtor could maintain undisturbed ownership of the Lease.

20. Based upon the foregoing, the Debtor respectfully submits that nothing in the Landlord's submission indicates that the Landlord's purported efforts to settle constitute an excuse for the Landlord's generating over $1 million of fees to deal with a problem that amounted to no more than $15,000.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order authorizing the Debtor to assume the Lease, and order the Landlord and or it's attorneys to comply with the Debtor's discovery requests, including to produce full records to support their claim for fees, including detailed time entries, and to appear for deposition, and that the Court grant such other, further and different relief as this Court may deem just and proper.

Dated:    New York, New York
          March 9, 2006

                              BACKENROTH FRANKEL & KRINKSY, LLP
                              Attorneys for Yusef Bildirici


                    By:   s/Mark Frankel
                          Mark A. Frankel (MAF-8417)
                          489 Fifth Avenue
                          New York, New York  10017
                          (212) 593-1100


                          DAVIDOFF MALITO & HUTCHER, LLP
                          Attorneys for the Debtor


                    By    s/Larry Hutcher
                          605 Third Avenue, 34th Floor
                          New York, New York 10158
                          (212) 557-7200