UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

March 10, 2006
10:00 a.m.

---------------------------------------------------------x

In re

Chapter 11
Case No.  05-16167

EAST 44TH REALTY, LLC,

Debtor.

---------------------------------------------------------x

State of New York )
                  )  ss:
County of New York )

## AFFIDAVIT OF ESTHER S. TRAKINSKI
## IN OPPOSITION TO THE LANDLORD'S
## MARCH 3 AND MARCH 6, 2006 SUBMISSIONS

Esther S. Trakinski, being duly sworn, deposes and says:

1.     I am an attorney duly admitted to practice before the Courts of the State of New York and this Court.  I am of counsel to firm of Davidoff, Malito & Hutcher, LLP, counsel for the Debtor East 44th Realty LLC (the "Debtor").  I submit this Affidavit in response and opposition to the submissions made by the Landlord on March 3 and March 6, 2003.  This Affidavit is made on personal knowledge and information and belief.

2.     I have been acting as counsel for the Debtor since early May, 2005, and have been the attorney principally involved in the representation of the Debtor before the Appellate Division, First Department, as well as with respect to most interactions with the Landlord since that time.  I have also participated in the representation of the Debtor in this proceeding.  As such, I have been the principal point of contact between the Debtor and the Landlord since May, 2005, and have been kept informed of all activities of the Debtor as they pertain to the defaults, and alleged defaults, asserted by the Landlord.

3. I have reviewed the Landlord's submissions, including the Affidavits submitted by the Landlord's Manager, and wish to respond to, and correct, certain misstatements contained in each.

4. As concerns the parties' attempts to settle the dispute, I have reviewed the Affidavit of the Landlord's Manager, Lawrence E. Tofel, sworn to March 3, 2006, purportedly addressed to the Landlord's purported efforts to the settle this matter (the "Tofel Settlement Affidavit")and cannot disagree more with the verity of the picture the Landlord wishes to paint for the Court.

5. Since becoming involved with this matter last Spring, I have repeatedly broached Mr. Tofel in an effort to clarify the repairs that needed to be done so that an end could be put to the litigation, and repeatedly suggested that Mr. Haim, or some other engineer of the Landlord's choosing, prepare a scope of work so that there would be no issue as to its completeness. Of course, each of these requests was made with the understanding (express and implied) that such undertaking would be made at the Debtor's expense.

6. Each and every overture was met with the Landlord's flat refusal, assertion that it had not obligation under the Lease or the law to provide such information, that the Lease was terminated and thus the Debtor had not right to do the repairs, and that it was not in the Landlord's interest to help the Tenant, in any event, because the Landlord would surely prevail, and wanted the Tenant out of possession, in any event.

7. I have consulted with predecessor counsel, including a partner in the firm of Seligson, Rothman & Rothman (R. 305[1]) and understand that each of them was met with similar refusals by the Landlord to cooperatively address the repair issue in an effort to

---

[1] Citations to "R." refer to the Record on Appeal, which was annexed as an exhibit to the Debtor's February 14, 2006 letter submission to the Court.

avoid protracted, expensive litigation.[2]  While I did not participate in these early

overtures, I understand that Mr. Tofel walked out on meetings and cancelled meetings

without explanation.

8.      In this connection, Mr. Tofels' description of the meeting scheduled for June 9,

2005, which Larry Hutcher of this firm supposedly cancelled without explanation (Tofel

Settlement Affidavit ¶ 6) is incomplete and misleading.  The exchange referred to came

in the middle of and admittedly combative exchange in an effort to schedule a meeting,

and in fact, Mr. Hutcher and I both continued in our efforts to arrange a meeting with the

Landlord.  The Landlord, however, persisted in its refusal to meet unless the Debtor made

a formal, written settlement proposal acceptable to the Landlord, and a stalemate was

reached.

9.      The description contained in paragraph 8 of the Tofel Settlement Affidavit of the

parties September 7 meeting and "Mr. Bildirici's concept of "settlement"" is also

inaccurate and misleading.  At the September 7, 2005 meeting referred to, the Landlord

proposed that the Debtor have a specific period of time within which to sell the Lease,

after which period if it was not successful in doing so, it would agree give up the Lease.

Although no specific time period was suggested by the Landlord, Mr. Tofel did expressly

state that it would have to be less than 90 days—which the Court well understands is not

a commercially reasonable period of time within which to sell an asset such as the Lease.

Mr. Tofel also insisted that the Landlord's fee demand was not negotiable.  Thereafter,

and during the subsequent meeting between Mr. Tofel and I (held on October 11), what

---

[2]      In his affidavit, Mr. Tofel recounts conversations he supposedly had with the Debtor's counsel,
Gary Soumas, who conducted the litigation before the New York State Court, including the *Yellowstone*
motion.  Suffice it to say that such recounting is pure hearsay, and not particularly relevant, in any event, as
it amounts to little more than posturing.

the Debtor proposed, but what the parties were unable to reach, was agreement with respect to a minimum offer price which would have to be achieved before the forfeiture provision would be triggered and a commercially reasonable period within which such sale had to be consummated.

10.    At no time since May 2005, has the Debtor "rebuffed" any settlement efforts made by the Landlord.

11.    The fact is that the Landlord has been not bee cooperative, and has been consistently aggressive to the point of engaging in unreasonable and frivolous motion practice, unwarranted threats, and personal attacks on the integrity and truthfulness of each lawyer and principal involved.  (Attached as Exhibit A is a sampling of correspondence with the Landlord and its counsel that evidence the aggressive refusal to cooperate, and in fact, interfere with the Debtor's ability to operate the property in an efficient manner.)

12.    Attached as Exhibit B is a copy of a memo received by the Debtor from one of its residential sub-tenants on May 17, 2005, informing the Debtor of a conversation she had with the Landlord that morning in which the Landlord "advised" her to keep her rent in escrow pending a decision by the Appellant Division.  Notably, this "advice" was rendered by the Landlord after the Stay Pending Appeal was issued.

13.    The Landlord's refusal to cooperate apparently persists to this day.  Last week, in accordance with the contracts entered into by the Debtor with respect to the $15,000 repair cure, a scaffold was erected on the portions of the Building that require the bulging brick and mortar joint work at issue to permit the Debtor's engineer, Douglas Schultz of Merritt Engineering, to inspect the area and prepare a scope of work for completion of the

work. On my instruction, Mr. Schultz invited the Landlord's engineer, Haim Najit, to

accompany him on the inspection. Mr. Haim, however, declined the invitation (we

believe on the Landlord's instruction), and indicated that he would inspect the job upon

its completion. Such conduct, even at this late juncture, is simply not reasonable,

particularly in light of the Debtor's repeated offers to pay for Mr. Najit's time, and

plainly evidences the Landlord's consistently uncooperative conduct.

14.     Attached as Exhibit C is the November 7, 2005 memo prepared by me and

delivered to the Landlord certifying that the Debtor compliance with its repair duties

under the February 16, 2005, inspection report. Prior to raising the issue in its objection

to the Debtor's Motion to Assume the Lease, the Landlord had never indicated (orally or

on writing) that the certification was in any way inadequate, much less that there

remained outstanding issues to be addressed. The Landlord certainly never served a

Notice of Default addressed to such matters.

_____
                    Esther S. Trakinski

Sworn to before me
this 9th day of March 2006

_____
             Notary Public

LAURENE MULLARKEY
Notary Public, State Of New York
No. 01MU6083875
Qualified In Orange County
Commission Expires November 25, 2006

# EXHIBIT A

# DAVIDOFF MALITO & HUTCHER LLP

## ATTORNEYS AT LAW
### 605 THIRD AVENUE
### NEW YORK, NEW YORK 10158

GARDEN CITY
200 GARDEN CITY PLAZA
GARDEN CITY, N.Y. 11530
(516) 248-6400

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230

(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

NEW JERSEY
744 BROAD STREET, FL. 16
NEWARK, N.J. 07102
(973) 735-0543

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: (646) 428-3213
E-MAIL: EST@DMLEGAL.COM

May 9, 2005

<u>Via Facsimile</u>
Lawrence E. Tofel, Esq.
Tofel & Partners, LLP
800 Third Avenue
New York, New York 10022

Re:   East 44th Realty, LLC v. East Forty Fourth Street LLC, Index No. 110952/04

Dear Larry:

At last Friday's hearing at the Appellate Division before Justice Friedman, you represented to the Court that East 44th Realty, LLC ("44th Realty") owes East Forty Fourth Street LLC ("Forty Fourth Street"), among other things, approximately $350,000 in back rent and additional rent, including insurance premiums. Justice Friedman granted 44th Realty's request for an interim stay on the condition that 44th Realty pay that amount to Forty Fourth Street by tomorrow. We hereby request a breakdown and description (including original due dates) of the rents, charges and expenses that you contend comprise the $350,000 figure. Please provide us with this information by the close of business tomorrow.

Be advised that 44th Realty's payment of the $350,000 in accordance with the Court's order shall be made without prejudice and with a full reservation by 44th Realty of its right to dispute any item or items, other than base rent.

Sincerely,

Esther S. Trakinski

cc:   Jay Itkowitz, Esq.

00327130

**Graham, Margaret L.**

| | |
|---|---|
| om: | Trakinski, Esther S. |
| Sent: | Wednesday, July 06, 2005 3:46 PM |
| To: | Trakinski, Esther S.; Graham, Margaret L. |
| Subject: | FW: East 44th street: GAB Invoice |

Esther S. Trakinski
Davidoff Malito & Hutcher LLP
605 Third Avenue, 34th Floor
New York, New York 10158
Tel: (646) 428-3213
Fax: (212) 286-1884
est@dmlegal.com

-----Original Message-----
From: Trakinski, Esther S.
Sent: Wednesday, July 06, 2005 3:44 PM
To: 'Lawrence E. Tofel'
Cc: Hutcher, Larry K.; Eisland, Evan M.; 'Jay B Itkowitz'; 'Robert Tofel'; 'Alex Gardner';
'Daniel Spitalnic'
Subject: RE: East 44th street: GAB Invoice

Larry,

If in fact, GAB has been paid, please remit proof of such payment. The materials you sent me
yesterday, and which you sent Mr. Bildirici on June 29, contained no such evidence. But
regardless of whether you chose to remit payment to GAB on the first or 30th day after you got
the bill, the Tenant is entitled to a reasonable period of time within which to submit its
reimbursement, if obligated to do so.

Your apparent attempt to establish such an obligation, however, is lacking as your reference to
" the triennial insurance review which is presently ongoing" is meaningless under the terms of
the Lease. Paragraph 10 of the Lease provides that "the Landlord shall be entitled to
periodically review insurance coverage for the premises . . . and the Landlord agrees that the
reviews shall only be as reasonably required and shall not be more frequently than once every
three (3) years." There is no clear right to conduct triennial reviews. Accordingly, we reiterate
our request that you confirm that the review for which our client reimbursed the Landlord
under the Settlement Agreement was conducted more than three years ago and explain why the
GAB review was reasonable required at this time.

1

Rest assured, that if the Landlord is entitled to reimbursement for the $2,800 GAB bill, such payment will be made in a reasonable manner.

Going forward, it would be much more productive if you would refrain from assuming such a combative stance with respect to every mundane issue, particularly when we are acting in good faith in trying to dispose of a routine business issue.

Esther


Esther S. Trakinski
Davidoff Malito & Hutcher LLP
605 Third Avenue, 34th Floor
New York, New York 10158
Tel: (646) 428-3213
Fax: (212) 286-1884
est@dmlegal.com

-----Original Message-----
From: Lawrence E. Tofel [mailto:letofel@ttplaw.com]
Sent: Wednesday, July 06, 2005 3:22 PM
To: Trakinski, Esther S.
Cc: Hutcher, Larry K.; Eisland, Evan M.; 'Jay B Itkowitz'; 'Robert Tofel'; 'Alex Gardner'; 'Daniel Spitalnic'
Subject: RE: East 44th street: GAB Invoice
Importance: High


GAB was retained as part of the triennial insurance review which is presently ongoing. GAB has been paid and the payment terms to the Landlord of 30 days do not entitle your client to those terms. Have the sums remitted now or we will seek relief forthwith upon notice, if any, as required.
I will not grace your remaining comments with a response.
-----Original Message-----
From: Trakinski, Esther S. [mailto:est@dmlegal.com]
Sent: Wednesday, July 06, 2005 3:15 PM
To: Lawrence E. Tofel
Cc: Hutcher, Larry K.; Eisland, Evan M.; Jay B Itkowitz; Robert Tofel; Alex Gardner; Daniel Spitalnic
Subject: RE: East 44th street: GAB Invoice


Larry,

Thank you for sending me the GAB materials yesterday. We have now had the opportunity to review them with our client.

As a preliminary matter, we note that the GAB invoice for which you demand immediate payment is dated June 15, 2005, with payment terms net 30 days. We further note that the invoice was not sent to Mr. Bildirici until June 29, 2005. Thus, your demand on Friday, July 1 that he submit payment to you by no later than Tuesday, July 5, typifies the overly aggressive manner in which you have conducted yourself in the management of this Building and is simply not acceptable. Your threat to "seek appropriate relief without notice" is patently improper. In the future, should you have the right to reimbursement for any expenses from our client, we expect you to afford him the opportunity to address those requests in the ordinary course of business. In addition, please make sure that all such reimbursements are properly reflected on the monthly statement submitted by the Landlord to the Tenant. (It seems this charge was not.)

As for the merits of the demand, itself, while we recognize that the Landlord has the right under para 10 of the Lease to conduct an insurance review no more frequently than every three years, we wish to confirm that the last such review took place prior to June 15, 2002.
(In this connection, we note that while para. 2 of the Settlement Agreement, required our client paid approximately $ 2,015 to reimburse the Landlord for an insurance review, the agreement does not specify the
date.) Once you have so confirmed the timeliness of the current GAB review, we will instruct ur client to pay GAB directly.

Esther S. Trakinski
Davidoff Malito & Hutcher LLP
605 Third Avenue, 34th Floor
New York, New York 10158
Tel: (646) 428-3213
Fax: (212) 286-1884
est@dmlegal.com

-----Original Message-----
From: Lawrence E. Tofel [mailto:letofel@ttplaw.com]
Sent: Tuesday, July 05, 2005 11:40 AM
To: Trakinski, Esther S.
Cc: Hutcher, Larry K.; Eisland, Evan M.; Alex Gardner; Jay Itkowitz; Robert L. Tofel
Subject: Re: East 44th street: GAB Invoice

Esther
I am not in my office.
Friday you received a courtesy copy of a telecopy to Joe demanding payment.
As you request, and at your client's expense, I will have the GAB correspondence gathered and sent to you by fax. It is a simple invoice which should have been, and now should be paid.

3

I will wait for you until tomorrow morning. Beyond that I will not guarantee.

Larry

-----Original Message-----
From: "Trakinski, Esther S." <est@dmlegal.com>
Date: Tue, 5 Jul 2005 11:25:17
To:"Lawrence E. Tofel" <letofel@ttplaw.com>
Cc:"Hutcher, Larry K." <LKH@dmlegal.com>,     "Eisland, Evan M."
<EME@dmlegal.com>,     "Alex Gardner" <agardner@ttplaw.com>,
"Jay B Itkowitz" <jitkowitz@Itkowitz.com>,     "Robert Tofel"
<rltofel@ttplaw.com>
Subject: East 44th street: GAB Invoice

Larry,

Your facsimile dated July 1, which was addressed to Larry Huthcer and Evan Eisland and sent
by you as Manager of the Building, was referred to me for response.

In the fax, you refer to the GAB invoice about which you inquired and we responded and
threaten to seek relief from the Court without notice unless you receive payment of that invoice
by today. Your statement that we (meaning counsel) requested the invoice is incorrect, nor was
our response (whatever that my have been) directed to us. The fact is that we, counsel, have
no knowledge or information concerning this purported invoice. Rather, we understand that
your communication concerning this matter was with our client, Josef Bildirici. (In this
connection, I note that Friday's fax transmission was neither addressed nor copied to Mr.
Bildirici.)

In order that we may promptly address this matter, we ask that you please send us a copy of the
response you previously sent to our client, with the transmission addressed to me, as well as to
Larry and Evan.
When I return to the office tomorrow, I will address the issue with our client. You should
expect to hear from us by the close of business tomorrow. In the meantime, we trust that you
will not bother the Court with this matter before we have had an opportunity to address it.

Finally, as concerns the manner of communication in this matter, we repeat our request made
in May that all communications concerning this matter be addressed to me, as well as to Larry
and Evan.

Esther

*****************************************************************
STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any attachments to this message are

intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify us immediately by email reply to sender or by telephone to Davidoff Malito & Hutcher LLP at (800) 793-2843, ext. 3281, and destroy all copies of this message and any attachments.
*******************************************************************

Yours truly,
Lawrence E. Tofel, Esq.
Tofel & Partners, LLP
800 Third Avenue
New York, New York 10022
Tele. (212) 752-0007
Fax (212) 752-8881
E-Mail: letofel@ttplaw.com
Cell: (917) 847-1433


Sent via Cingular Xpress Mail with Blackberry

## TOFEL & PARTNERS, LLP

800 THIRD AVENUE

NEW YORK, N.Y. 10022

(212) 752-0007

TELECOPIER: (212) 752-8881

July 6, 2005

Larry Hutcher, Esq.
Davidoff Malito & Hutcher LLP
605 Third Avenue
New York, NY  10158

Re:  East 44 Realty, LLC v. East Forty-Fourth Street L.L.C.

Dear Mr. Hutcher:

Our client received from yours today a multi-page facsimile requesting certain information.  Previous requests for the same or similar information have been answered and/or responded to.

We are not aware of any provision of the Lease which obligates our client to provide the "accounting" requested.  If you believe otherwise, please advise me of a Lease provision to that effect.

To the extent questions are posed concerning tax escrows, your client has previously been referred to the subject Lease. To the extent that your client still does not understand those provisions, I think he needs your help; not advice from us or our client.

The foregoing is without prejudice to issues which have arisen in recent correspondence, in respect of which all of our client's rights are expressly reserved.

Yours truly,

Robert L. Tofel

RLT:jal
cc:  Lawrence E. Tofel

{00019358.}

7/6/05

ATT: MR. Tufel Larry / KELLY

Ref: ACCOUNTING.

1. COULD YOU PLEASE SEND US THE BREAKDOWN OF THE $350,000 cHeck we paid 5/9/05 by court order so we clarify our accounting.

2. WATER/SEWER BILL (See

a) OUR ACCOUNT SHOWS THAT YOU ARE HOLDING $140,605 OF OUR MONEY IN YOUR ESCROW THAT IS NOT NEEDED BY OUR LEASE. (Please see attached - fax Resent again) as of 3/1/2005 (See appendix A1, A2)

b) As of Today 7/1/05 Account shows you owe us 144,20 See appendix (B)

From what I understand from our lease the amount of escrow should not really exceed any average frontage bill that we receive every few month - Please explain how the calculation is done.
Best Regards - Josef Biedracci

( TOTAL  6 pages - including this page )

*Appendix B*

Prepand 7/6/05.

## AS 7/1/05

LANDOWNER PAID
For below period

|  |  | balance |  |
|---|---|---|---|
| 01/24/03 |  | 9,302.88 | 9,302.88 |
| 02/01/03 |  | 9,302.88 | 18,605.76 |
| 03/01/03 |  | 9,302.86 | 27,908.62 |
| 04/01/03 |  | 9,302.86 | 37,211.48 |
| 05/01/03 |  | 9,302.86 | 46,514.34 |
| 05/29/03 | tofel paid | (27,945.89) | 18,568.45 | (12/32/2002 - 5/1/2003.) |
| 06/01/03 |  | 9,302.86 | 27,871.31 |
| 07/01/03 |  | 9,302.86 | 37,174.17 |
| 08/01/03 |  | 9,302.86 | 46,477.03 |
| 09/01/03 |  | 9,302.86 | 55,779.89 |
| 09/03/03 | tofel paid | (28,919.11) | 26,860.78 | (5/1/03 - 7/30/03) |
| 10/01/03 |  | 9,302.86 | 36,163.64 |
| 11/01/03 |  | 9,302.86 | 45,466.50 |
| 12/01/03 |  | 9,302.86 | 54,769.36 |
| 12/1/04 | tofel paid | (33,360.44) | 21,408.92 | (7/2/03 - 7/4/04) |
| 01/01/04 |  | 9,302.86 | 30,711.78 |
| 02/01/04 |  | 9,303.30 | 40,015.08 |
| 03/01/04 |  | 9,303.30 | 49,318.38 |
| 04/01/04 |  | 9,303.30 | 58,621.68 |
| 05/01/04 |  | 9,302.86 | 67,924.54 |
| 06/01/04 |  | 9,302.86 | 77,227.40 |
| 07/01/04 |  | 9,302.86 | 86,530.26 |
| 08/01/04 |  | 9,302.86 | 95,833.12 |
| 09/01/04 |  | 9,302.86 | 105,135.98 |
| 10/01/04 |  | 9,302.86 | 114,438.84 |
| 11/01/04 |  | 9,302.86 | 123,741.70 |
| 12/01/04 |  | 9,302.86 | 133,044.56 |
| 12/23/04 | tofel paid | (20,346.07) | 112,698.49 | (7/29/04 - 10/27/04) |
| 1/1/05 |  | 9,302.86 | 122,001.35 |
| 2/1/05 |  | 9,302.86 | 131,304.21 |
| 3/1/05 |  | 9,302.86 | 140,607.07 |
| 3/1/05 | tofel paid | (12,490.02) | 128,117.05 | (10/1/04 - 2/04/05) |
| 6/1/05 |  | 9,302.66 | 137,419.71 |
| 7/1/05 |  | 6,782.03 | 144,201.74 | ⇐ |

[ * 2/1/05 - 4/29/05 #10,936⁰² shall not paid by LANDOWNER it is outstanding

Our account shows that you have 144,201⁷⁴

in escrow.

Please call us if any question.

As of 7/1/05 -

| date from | to | usage | water | sewer | late fee | total | balance | TOFEL PAID | |
|---|---|---|---|---|---|---|---|---|---|
| 12/2/02 | 1/30/03 actual | 4893 | 7045.92 | 11203.01 | | 18,248.93 | (22,851.26) | - | |
| 1/30/03 | 5/1/03 actual | 8727 | 12,566.88 | 19,981.34 | | 32,548.22 | (4,602.33) | | |
| 5/1/03 | 7/30/03 actual | 7613 | 11,165.68 | 17,753.43 | | 28,919.11 | 27,945.89 | 27,945.89 | 5/29/03 |
| 7/30/03 | 11/2/03 estimated | 8474 | 12,880.48 | 20,479.96 | | 33,360.44 | 28,919.11 | 28,919.11 | 9/3/03 |
| | 11/2/03 credit for est. | -8474 | (12,880.48) | (20,479.96) | | (33,360.44) | 33,360.44 | 33,360.44 | 12/4/03 |
| 7/30/03 | 2/1/04 actual | 3113 | 4,731.76 | 7,523.50 | | 12,255.26 | (33,360.44) | | |
| 2/1/04 | 4/29/04 actual | 4011 | 6,096.72 | 9,693.78 | | 15,790.50 | (21,105.18) | | |
| 4/29/04 | 6/19/04 actual | 853 | 1,298.02 | 2,063.85 | | 3,361.87 | (5,314.68) | | |
| 6/19/04 | 7/29/04 actual | 2288 | 3,610.45 | 5,740.62 | | 9,351.07 | (1,952.81) | | |
| 7/29/04 | 10/27/04 actual | 3084 | 4,934.40 | 7,845.70 | 167.71 | 12,947.81 | 7,398.26 | | |
| 10/27/04 | 2/1/05 actual | 3014 | 4,822.40 | 7,667.62 | | 12,490.02 | 20,346.07 | 20,346.07 | 12/23/04 |
| 2/1/05 | 4/29/05 actual | 2639 | 4,222.40 | 6,713.62 | | 10,936.02 | 12,490.02 | 12,490.02 | 3/1/05 |
| | | | | | | | 10,936.02 | | |

**123,061.53**



# EAST 44 RELATY LLC.
## 12 E 37TH STREET
### NY, NY 10016

*Resent 7/6/05*

Phone: 212 447 6848                    Fax: 212 447 6851


To: East Forty-Fourth Street L.L.C / Tofel, Troup & Partners, LLP.

# Attn   : Kelly
# From : Aysel

## 03/01/05

# Ref: Water / Sewer

### Dear Kelly,

According to the records we have paid you $223,268.64 for the period of 1/1/03 thru 12/31/04 for the water/sewer. (Per month $9,302.86 X 24 months = $223,268.64)

Our actual usage for the period 12/02/02 thru 10/27/04 was $110,571.51 and you made the payment to the NYC water Board a) 27,945.89 on 5/29/03 b) 28,919.11 on 9/03/03 c) 33,360.44 on 12/04/03 d) 20,346.07 on 12/23/04 for the period ending date is 10/27/04

Could you please check your records and confirm that you have $112,697.13 overpayment in you records as of 12/31/04.

And we also have paid you additional 27,908.58 for water/sewer usage for the year 2005. ( Jan/05 – Feb/05 – March/05)

As of 03/1/05 we have $140,605.71 for the water/sewer usage in your account.

Thank you


Aysel

*Appendix A2*

*Resent 7/6/05*

according to internet
water & sewer charges

| date from | to | usage | water | sewer | balance | late fee | | |
|---|---|---|---|---|---|---|---|---|
| 1/30/03 | 5/1/04 | 8727 | 12,566.88 | 19,981.34 | (4,602.33) | | | |
| 5/1/03 | 7/30/03 | 7613 | 11,165.68 | 17,753.43 | 27,945.89 | | 27,945.89 | 5/29/03 |
| 7/30/03 | 11/2/03 | 8474 | 12,880.48 | 20,479.96 | 28,919.11 | | 28,919.11 | 9/3/03 |
| | | | | | 33,360.44 | | 33,360.44 | 12/4/03 |
| | | | | | | | | |
| 7/30/03 | 2/1/04 | 3113 | 4,731.76 | 7,523.50 | 12,255.26 | | (33,360.44) | |
| 2/1/04 | 4/29/04 | 4011 | 6,096.72 | 9,693.78 | 15,790.50 | | (21,105.18) | |
| 4/29/04 | 6/19/04 | 853 | 1,298.02 | 2,063.85 | 3,361.87 | | (5,314.68) | |
| 6/19/04 | 7/29/04 | 2288 | 3,610.45 | 5,740.62 | 9,351.07 | | (1,952.81) | |
| 7/29/04 | 10/27/04 | 3084 | 4,934.40 | 7,845.70 | 12,780.10 | 167.71 | 7,398.26 | |
| | | | | | | | 20,346.07 | 12/23/04 |
| | | | | | | | | |
| 1/1/03 | 12/31/03 | 9302.86 X 12 MONTHS | | 111,634.32 | **PAID** | | | |
| 1/1/04 | 12/31/04 | 9302.86 X 12 MONTHS | | 111,634.32 | 5/29/03 | | | |
| 1/1/05 | 3/1/05 | 9302.86 X 3 MONTHS | | 27,908.58 | 9/3/03 | | | |
| | | | | 251,177.22 | 12/4/03 | | | |
| | | | | (27,945.89) | 12/23/04 | | | |
| | | | | (28,919.11) | | | | |
| | | | | (33,360.44) | | | | |
| | | | | (20,346.07) | | | | |
| | | | | **140,605.71** | | | | |

# DAVIDOFF MALITO & HUTCHER LLP

| | | |
|---|---|---|
| GARDEN CITY | ATTORNEYS AT LAW | ALBANY |
| 200 GARDEN CITY PLAZA | 605 THIRD AVENUE | 150 STATE STREET |
| GARDEN CITY, N.Y. 11530 | NEW YORK, NEW YORK 10158 | ALBANY, N.Y. 12207 |
| (516) 248-6400 | | (518) 465-8230 |

(212) 557-7200

FAX (212) 286-1884

WWW.DMLEGAL.COM

NEW JERSEY
744 BROAD STREET, FL. 16
NEWARK, N.J. 07102
(973) 735-0548

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: (646) 428-3213
E-MAIL: EST@DMLEGAL.COM

July 12, 2005

Via Facsimile
Lawrence E. Tofel, Esq.
Tofel & Partners, LLP
800 Third Avenue
New York, New York 10022

     Re:   East 44th Realty, LLC v. East Forty Fourth Street LLC, Index No. 110952/04

Dear Larry:

    This will respond to the e-mail you sent me today at 3:45 p.m. (copy enclosed).

    If it is belief that the Appellate Division's July 7, 2005 order (the "Modification Order") empowers you to bypass the default and notice provisions of the Lease to unilaterally declare a default that will effectively dissolve the Stay, such belief is seriously misguided.

    By its terms and intent, and in direct response to the request for relief made in your motion, the Modification Order simply confirms that East 44th Realty is required to continue to comply with its obligations under the Lease and that you, as the Landlord, are authorized to enforce the provisions of the Lease, other than those which are the subject of the appeal, without prejudice to your position that the Lease has been terminated. Thus, even assuming that our client's failure to pay the GAB expense within the less than two business days you demanded did constitute a default under the Lease—it clearly did not—your sole remedy would be to serve a proper notice of default as provided in Paragraph Thirteenth of the Lease, from which point our client would have twenty (20) days to cure. Please advise us immediately if you believe otherwise, as we will to seek additional clarification from the Appellate Division if need be.

    In any event, as (i) you failed to serve a default notice as required in the Lease; and (ii) as of the writing of this letter, our client's payment of the $ 2,850 GAB expense is on its way to you (if not already in your hand), the issue is moot. That you have chosen (once again) to incur

00330061

DAVIDOFF MALITO & HUTCHER LLP

Lawrence E. Tofel, Esq.
July 12, 2005
Page 2

unnecessary, legal fees on the Landlord's behalf by drafting a premature (and ill-motivated) application to the Court is a matter between you and your client.  Should you attempt to charge such fees to our client as "additional rent", or otherwise, under the Lease, we will be object to same.

Sincerely,

Esther S. Trakinski

cc:    Jay Itkowitz, Esq.

00330061

## Trakinski, Esther S.

| | |
|---|---|
| **From:** | Lawrence E. Tofel [letofel@ttplaw.com] |
| **Sent:** | Tuesday, July 12, 2005 3:45 PM |
| **To:** | Trakinski, Esther S. |
| **Cc:** | Eisland, Evan M.; Hutcher, Larry K.; 'Alex Gardner'; 'Robert L. Tofel' |
| **Subject:** | RE: 44th street |
| **Sensitivity:** | Confidential |

Esther
You will, I am sure, appreciate that we are disinclined to rely on any representations from your firm insofar as you
seem to have little historic regard for the truth. Your advice last week was that payment would be in our
possession "by" "early" this week.  That being said, had you responded in a timelier manner to my inquiry
yesterday afternoon, we would have avoided the need to draft an application to the Appellate Division.

---

**From:** Trakinski, Esther S. [mailto:est@dmlegal.com]
**Sent:** Tuesday, July 12, 2005 2:22 PM
**To:** Lawrence E. Tofel
**Cc:** Eisland, Evan M.; Hutcher, Larry K.; Alex Gardner; Robert L. Tofel
**Subject:** RE: 44th street
**Sensitivity:** Confidential

Larry,

As I told you the other day, the payment for the GAB invoice would be issued early this week.  In fact, I have just
confirmed with the client that the check is to be delivered to you office by hand this afternoon.

In this connection, I noticed that there was no formal report issued by GAB included in the materials that you sent
us and the client.  IF there is such a report, we would appreciate receiving a copy as soon as possible.  Thanks.

Esther



Esther S. Trakinski
Davidoff Malito & Hutcher LLP
605 Third Avenue, 34th Floor
New York, New York 10158
Tel: (646) 428-3213
Fax: (212) 286-1884
est@dmlegal.com



---

**From:** Lawrence E. Tofel [mailto:letofel@ttplaw.com]
**Sent:** Monday, July 11, 2005 3:12 PM
**To:** Trakinski, Esther S.
**Cc:** Eisland, Evan M.; Hutcher, Larry K.; 'Alex Gardner'; 'Robert L. Tofel'
**Subject:** 44th street
**Importance:** High
**Sensitivity:** Confidential

Esther
Last week you indicated that payment of the GAB invoice would be made forthwith. We have received no payment and, before we seek an Order from the Appellate Division declaring that the May 26 stay has ceased to have any vitality or effect, please advise when we might receive payment, obviating any such application. Absent a prompt and acceptable response, we shall proceed.

Yours truly,
Lawrence E. Tofel, Esq.
Tofel & Partners, LLP
800 Third Avenue
New York, New York 10022
Tele. (212) 752-0007
Fax (212) 752-8881
E-Mail: letofel@ttplaw.com
Cell: (917) 847-1433

This e-mail (which includes all attachment(s) thereto) is intended only for use by the addressee(s) named herein and may contain privileged and/or confidential information. If you are not the intended and designated addressee, or believe you have received this e-mail in error, you are both requested to return it to the sender and advised to delete and destroy it and all copies and printouts of it in your possession or control, and that use or dissemination of such information is strictly prohibited.

*********************************************************************
STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify us immediately by email reply to sender or by telephone to Davidoff Malito & Hutcher LLP at (800) 793-2843, ext. 3281, and destroy all copies of this message and any attachments.
*********************************************************************

# EXHIBIT B

# EAST 44 REALTY LLC.
## 12 E 37TH STREET
## NYC, NY 10016

**PHONE # 212 447 6848**                    **FAX#   212 447 6851**

## 5/17/05

## ATTN : LARRY HUTCHER
## FROM : AYSEL ARAN

**Please find attached letter from one of the our tenant
regarding May and June rent payment.**

Aysel Aran

Alyse Vishnick
230 East 44th St. #11P
New York, NY 10017

I spoke to Lawrence Tofel this morning, May 17, 2005, who advised me to keep May's
rent in the escrow account until court documentation is produced attesting to whom
payment should be made. He said he anticipates the Supreme Court of New York should
reach a favorable decision for the owner of the property in the near future. I told
Lawrence that June's rent will accompany May's rent in the escrow account should a
decision still be pending when June rent is due. I am NOT trying to withhold rent; I am
ready, willing and able to pay. I would just like to make sure I am paying the rightful
party.

# EXHIBIT C

# DAVIDOFF MALITO & HUTCHER LLP

### ATTORNEYS AT LAW
### 605 THIRD AVENUE
### NEW YORK, NEW YORK 10158

———

### (212) 557-7200
### FAX (212) 286-1884
### WWW.DMLEGAL.COM

## MEMORANDUM

TO:      Larry E. Tofel, Esq.

FROM:   Esther S. Trakinski, Esq.

DATE:   November 7, 2005

RE:      E. 44th Realty: 2005 Engineering
          Report/Remediation Progress Report

———

In response to your November 2 e-mail request, the following summarizes the status of the remediation work recommended in the Building Condition and Compliance Report, dated February 16, 2005 (the "Report"). We note that although the Report bears a February date, the Tenant did not it until the end of June, when he "picked up" a copy that had been left at the Building. Apparently, the Tenant had not received notice that the Report was being left on the premises. (Going forward, we appreciate having all such documents and materials delivered directly to the Tenant at its management office.)

Finally, please note that while we wish to provide the Landlord with a prompt response, the Tenant is still following up on a number of relevant matters, and reserves the right to amend and supplement its responses as necessary.

## A.   Exterior Inspection from Roof and Penthouse Level

**(Note: The un-numbered items are addressed in the order in which they appear on p. 2-3.)**

Repointing of mortar joints:

- East side wall of water tank enclosure has been completed.

- Upper north area of west and north walls requires the erection of scaffolding. Please advise if the Landlord is willing to consent to the expenditure in the Bankruptcy proceeding. In this connection, it would be helpful to have Mr. Haim

00334585

identify with greater specificity which specific areas of brick on the upper north area of the west and north facades need to be repointed, (Perhaps the photographs can be marked to pin-point the areas in need of remediation, particularly on the upper west wall, which looks to us to be in good condition.) Finally, we note for the record that since the areas identified by Mr. Haim are recessed and above the roof line, the condition causes no danger to passers by on the street. Accordingly, the repointing recommended by Mr. Haim was not been cited in the Building's Local Law 11 Report, nor is it required under applicable codes.

- Mortar joints between the copingstones of the west and north walls have been repaired.

The open mortar joints noted above the copper counter flashing on the interior side of parapet wall on the north side have been repaired.

With respect to the "ponding" on the flat roof of the stairwell bulkhead noted by Mr. Haim, the roof has been inspected by a roofer in order to determine what, if any, corrections need to be made to prevent this. The Tenant was advised that the roof, in fact, is flat and that after heavy rains, it is normal that a certain amount of water will accumulate ("pond") in limited areas. After a thorough inspection of the roof, the roofer confirmed (i) that the roof was in good condition; and (ii) that there was no water damage and no other defects on the roof. Moreover, the Tenant confirms that the limited water accumulations that are evident after rainfalls dry up within a day or two, and that there have been no reports of leaks into the apartments or common areas below. The Tenant is willing to have a second roofer inspect the roof to consider the issue, if you wish. Please advise.

The Tenant has been advised that the applicable building codes do not require that the steel roof access ladder have a "gooseneck portion". If you or Mr. Haim believe that it is, please provide the relevant citations and we will reconsider this item.

The Tenant sent a letter to the Restaurant advising them of the need to clean the venting room for the restaurant's exhaust system located on the roof and according to the Building superintendent, the restaurant did clean the area. Pease note, however, that the Tenant has been advised that this area is part of the chimney enclosure and thus under applicable codes need not be cleaned. If you believe that this is not the case, please provide the relevant citations.

Appropriate repointing of open mortar joints noted on the lintel over the roof access door on the south side has been completed.

The electric fan on the west side of the roof is operational.

The debris noted around the roof drains has been cleared away, and the Tenant is checking it periodically.

- 2 -

00334585

The deteriorating mortar joints on the south wall observed from Penthouse A have been repaired.

00334585

## B.  South Facade Wall

We understand the repairs generally noted in this section to be the same issues that are the subject of the pending litigation and appeal. For this reason, and because Mr. Haim notes that his observation was limited by his access, and recommends extensive additional inspections, no work has been commenced on this issue. However, Tenant remains willing to submit the bulging brick and other south facade mortar issues for resolution by an independent third party engineer.

## C.  Garage Area

1. Complying with regulations concerning the limits on numbers of cars parked in the garage is the sole responsibility of the garage sub-tenant. Without admitting responsibility for monitoring, much less controlling, the number of cars parked in the garage, the Tenant has sent the garage tenant a letter addressing Mr. Haim's concern. In this connection, we note that Mr. Haim's observation is speculative, at best, as he did not count the cars present and does not cite the applicable regulation or the limitations purportedly set forth therein.

2. The sufficiency of the lighting in the garage is also the responsibility of the garage tenant, and we have advised them of Mr. Haim's concern.

3. The condensate pump has been repaired.

4. The floor drains have been repaired.

5. Maintenance of concrete inside the garage is also the responsibility of the garage tenant, and we have advised them of Mr. Haim's concern. We understand that this issue has been corrected.

6. All exit signs are operational.

7. The garage tenant is responsible for the lighting inside the Garage and has been advised of the condition.

8. Complying with regulations concerning access to exit doors in the garage is the sole responsibility of the garage sub-tenant. Without admitting responsibility for monitoring, much less controlling, the manner in which cars parked in the garage, the Tenant advised the garage tenant of Mr. Haim's concern about blocked exits and the Tenant understands that the situation has been rectified.

9. See response to numbers 1 and 8.

- 4 -

00334585

10. "Housecleaning" within the garage is the responsibility of the garage sub-tenant and the Tenant has advised them of Mr. Haim's concern.

11. This issue has been rectified.

12. All exit doors have been fitted with spring loaded mechanisms to make them self-closing.

13. The second means of egress from the garage is under the control of the garage sub-tenant and we understand it has been cleared.

14. As the picture was not sufficiently detailed, the Tenant was unable to ascertain the location of the "cover plate over the storm water pit". Please clarify.

15. The ventilation exhaust fan is under the exclusive control, and is the sole responsibility, of the garage sub-tenant. The Tenant has advised them of Mr. Haim's concern and understands that the condition has been addressed.

## D.    Building Interior

1. The coupling joint connecting the Con Edison steam supply pipe has been maintained cleaned and sealed.

2- 7. These items have all been addressed.

## E.    Violations and Permits

1. As you have been previously advised, DOB elevator violations have been corrected.

2. Same with respect to Fire Department violations. The Tenant understands that re-inspection has been satisfactorily completed and has been informed by the Fire Marshal that the violations have been removed from the records.

3. HPD-no violations.

4. The correct fire safety plan has been received and posted.

5. The current HPD registration is available in the office, per regulations. (Applicable regulations do not require that it be posted in the lobby.)

00334585

Finally, as the final Note on page 6 concerns the condition of the neighboring building, no response is necessary.

Please let me know if you have any further questions.

E.S.T.

00334585