# EXHIBIT "A"

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-16167

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


EAST 44TH REALTY, LLC,


          Debtor.


- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, NY   10004


                March 10, 2006

                10:12 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

2

1   HEARING re Docket #70; Motion to Assume Lease

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Bar-Leib

3

1

2   A P P E A R A N C E S :

3   DAVIDOFF, MALITO & HUTCHER, LLP

4        Attorneys for Debtor

5        305 Third Avenue

6        34th Floor

7        New York, NY 10158

8

9   BY:   ESTHER S. TRAKINSKI, ESQ.

10

11   BACKENROTH, FRANKEL & KRINSKY, LLP

12        Attorneys for Principal Debtor

13        489 Fifth Avenue

14        New York, NY  10017

15

16   BY:   ABRAHAM J. BACKENROTH, ESQ.

17

18   WEIL, GOTSHAL & MANGES, LLP

19        Attorneys for the Landlord

20        767 Fifth Avenue

21        New York, NY 10153

22

23   BY:   JUDY G.Z. LIU, ESQ.

24        RACHEL EHRLICH ALBANESE, ESQ.

25

4

1

2  TOFEL & PARTNERS, LLP

3      Attorneys for the Landlord

4      800 Third Avenue

5      New York, NY 10022

6

7  BY:   LAWRENCE E. TOFEL, ESQ.

8

9  KRAMER, LEVIN, NAFTALIE & FRANKEL, LLP

10     Attorneys for New York Community Bank

11     1177 Avenue of the Americas

12     New York, NY 10036

13

14  BY:   GARY BECKER, ESQ.

15      RONALD S. GREENBERG, ESQ.

16

17

18

19

20

21

22

23

24

25

5

1          EAST 44TH REALTY, LLC

2              P R O C E E D I N G S

3          THE COURT:  Please be seated.  All

4      right.  East 44th Street Realty.

5          MS. TRAKINSKI:  Esther Trakinski,

6      Davidoff, Malito for the debtor.

7          MR. BACKENROTH:  Abraham Backenroth

8      for the principal of the debtor.

9          MS. LIU:  Judy Liu from Weil,

10     Gotshal for the landlord.

11         MR. TOFEL:  Lawrence Tofel, Tofel &

12     Partners for the landlord.

13         THE COURT:  Okay.  I, obviously,

14     received, since the last time we were

15     here on the debtor's motion to assume the

16     lease and the landlord's objection

17     thereto, the citations to additional

18     cases that counsel for the landlord --

19     I'm sorry, the counsel for the debtor

20     said she wanted to submit.  And I gave

21     her leave to submit, as well as the

22     response by the landlord to those

23     citations.  I've also received some

24     additional materials, some of which I

25     wanted to receive, others that I didn't.

6

1          EAST 44TH REALTY, LLC

2     I received additional materials in

3     respect of the landlord's claim for

4     attorneys' fees.  I had asked for time

5     records and the like.  I got those.  I

6     also got supporting affidavits by Mr.

7     Tofel in connection therewith.  I also

8     received an affidavit from Mr. Tofel

9     regarding the landlord's attempts to

10    mitigate damages, which we had discussed

11    at the end of the hearing.  I received

12    this morning a courtesy copy of a

13    response to that affidavit which I've

14    only very briefly looked at since I got

15    it this morning.  And I have received

16    correspondence back and forth with

17    respect to the precondition that I had

18    set for Mr. Tofel's deposition, which was

19    that the debtor show me that in fact it

20    had sufficient funds to make me

21    comfortable that there was a reason to

22    proceed on this matter, since I believed

23    that there would have to be at least a

24    reserve in respect to the assumption

25    motion of, as I phrased it, a few hundred

7

EAST 44TH REALTY, LLC

1
2 thousand dollars.  Originally, it struck
3 me that those representations were
4 inadequate.  I subsequently received an
5 affidavit by the debtor's principal, Mr.
6 Yesef Bildirici in which he swore under
7 oath that the 300,000 dollars in the bank
8 account that was referred to in the
9 affidavit was (a) not the debtor's money
10 and (b) dedicated solely to payment of
11 cure costs and otherwise in connection
12 with assumption of the lease.  That
13 happened only recently and I don't know
14 whether Mr. Tofel has been deposed and
15 where we stand at this point in terms of
16 any further adversary evidentiary matter
17 in this lease assumption matter.  So
18 maybe the parties can inform me of that.
19        MR. TOFEL:  If I can, Your Honor.
20 I have not been deposed yet, and let me
21 tell you exactly what the thought process
22 was from our side of the table, at least.
23        THE COURT:  All right.
24        MR. TOFEL:  We were aware of the
25 submission by Ms. Trakinski of a letter

8

1          EAST 44TH REALTY, LLC

2     indicating two different potential

3     sources of funding, one from an insider

4     of the debtor and one from a home equity

5     line.  We also understood Your Honor to

6     request more.

7          THE COURT:  Right.

8          MR. TOFEL:  There were two issues

9     with respect to that.  One, we did not

10    understand Your Honor to have identified

11    a number as Your Honor has observed was

12    several hundred or a few hundred thousand

13    dollars --

14         THE COURT:  Right.

15         MR. TOFEL:  And as we understand,

16    at least, the submission, the last

17    submission, the affidavit to which Your

18    Honor referred, it does say what Your

19    Honor said, but what it actually says is

20    the money is there only if and it's there

21    for the purposes that Your Honor

22    indicated, but only if Your Honor caps

23    the cure amount at 300,000 dollars or

24    less.  Thus, a somewhat longer response

25    to we do not understand the Court yet to

EAST 44TH REALTY, LLC

1
2 have determined whether the debtor has
3 met Your Honor's inquiry or satisfied the
4 Court's concerns and, obviously, we need
5 some guidance on that. Obviously, we
6 believe the amount of 300,000 dollars not
7 only would be inadequate, but also
8 inconsistent with Your Honor's prior
9 rulings where Your Honor had said, I
10 think back in December, perhaps in
11 January, I don't want to see an arbitrary
12 cut-off which would not account for
13 expenditures in connection with these
14 processes and these hearings. But, so --
15 we need some guidance from Your Honor --
16     THE COURT: All right.
17     MR. TOFEL: --on that, but of
18 course that also presupposes the gating
19 issue, which is the termination issue.
20     THE COURT: Right.
21     MR. TOFEL: And then there are also
22 some things that have happened more
23 recently that I think Your Honor should
24 be aware of since the hearing, not with
25 respect to the filings, which we believe

10

1       EAST 44TH REALTY, LLC

2       are further disregard of -- not only

3       disregard, but also direct violation of

4       this Court's prior orders.

5              THE COURT:  All right.  Well, in

6       respect to the affidavit, I certainly

7       recognize that I had left the amount

8       vague in saying a few hundred thousand

9       dollars.  Partly, that was because I had

10      not had the chance to review the fee

11      information material that you

12      subsequently gave me, and that's really

13      particularly no one's fault.  As I read

14      this affidavit, however, it doesn't limit

15      the amount that the debtor would pay as

16      cure.  And as I read it, it says that the

17      full 300,000 dollars is there.

18      Obviously, they're not going to pay

19      300,000 dollars if I find the cure is

20      200,000 dollars.  On the other hand, if I

21      find the cure is 350,000 dollars, they're

22      going to have to come up with another

23      50,000 dollars.  And what I had in mind,

24      really, was simply having some assurance

25      that, based on the record of the prior

11

1          EAST 44TH REALTY, LLC
2      hearing, the debtor in fact did have
3      sufficient funds to continue to proceed
4      in good faith.  Because I believe that
5      given all the issues here, including the
6      issues regarding adequate assurance of
7      future performance, it would have to come
8      up with some real money.  And, in my
9      view, and I'll get into this in more
10     detail later, having reviewed the fee and
11     expense submissions and having gone back
12     again and reviewed the law on attorneys'
13     fees in connection with a cure claim and
14     having again reviewed the lease
15     provisions dealing with attorneys' fees,
16     as well as Judge Diamond's order, for
17     purposes of, if you will, continuing on
18     with the motion and subjecting you to
19     discovery, I think the 300,000 dollars is
20     sufficient.  That's not a ruling on what
21     the cure amount is but I didn't want to
22     create additional expense on your end if
23     the debtor didn't have a good faith
24     amount of money.  So, that's how I view
25     the affidavit.

12

1   EAST 44TH REALTY, LLC

2       MR. TOFEL:  That's fine.  I just --

3   I think it would be helpful at least from

4   our perspective, and perhaps also from

5   the Court's -- again we read that

6   affidavit as saying that if Your Honor

7   were to rule, to use your hypothetical,

8   with the cure amount as 350, that there

9   could be conditions with respect to the

10  funds that are now in that bank account.

11  It would make those funds not available.

12      THE COURT:  Well, I don't know --

13      MR. TOFEL:  The affidavit is very

14  carefully written in terms of the money

15  is there and available, conditioned upon

16  or limited, if the Court were to find

17  that the amount were not to exceed.

18      MR. BACKENROTH:  Your Honor, if I

19  can clarify.

20      THE COURT:  I don't read it that

21  way, but why don't we have the debtor's

22  lawyer or Mr. Bildirici's lawyer --

23      MR. BACKENROTH:  Yeah, but all it

24  says, basically, is that he's committed

25  the 300,000.  It's there in escrow.  If

EAST 44TH REALTY, LLC

1  
2  Your Honor ruled fine and say, according
3  to your hypothetical, 350, then he'll
4  have a decision to make.  That decision
5  is put up another 50,000 or walk away
6  from the assumption obligation.  In other
7  words, he's committed 300,000, it's
8  sitting in escrow.  If Your Honor rules
9  250, it's 250, he gets paid absolutely,
10  there's no issue, but if Your Honor rules
11  more than that, then it's a moment of
12  truth, so to speak.  And he may lose the
13  lease --
14       THE COURT:  Right.
15       MR. BACKENROTH:  -- if he doesn't
16  put up the extra money.  But that's our
17  good faith basically.
18       THE COURT:  All right.  Okay.
19       MS. TRAKINSKI:  If I can just add
20  something from the debtor's perspective,
21  Your Honor, that language and the intent
22  of the language so that there is no
23  misunderstanding that those funds belong
24  to the equity shareholders, they are not
25  the debtor's funds and in the event Your

14

1          EAST 44TH REALTY, LLC

2     Honor rules that it's something less than

3     300,000, we want it to be perfectly clear

4     that those funds were not available to be

5     tapped for other obligations of the

6     debtor, other than the cure of the

7     attorneys' fees.  And that's been purely

8     the intent.

9          THE COURT:  All right.  So, I think

10    everyone is in agreement that there is, I

11    suppose, some risk that a deposition of

12    Mr. Tofel and continued litigation of

13    this matter would be wasting everyone's

14    time, that is, if I find a greater cure

15    amount and/or need for adequate

16    assurance, and the shareholders decide

17    not to put it up.  On the other hand,

18    300,000 is a lot more than I thought,

19    reasonably based on what I heard on the

20    last hearing on the record, that perhaps

21    the debtor was willing to pay, since

22    everything on the record in the last

23    hearing was trying to squeeze out every

24    possible cent through set-offs and the

25    like.  And, again, as I said, I've

15

```
 1              EAST 44TH REALTY, LLC
 2       reviewed the cure claim in more detail
 3       having received more detail, and I think
 4       that is a good faith basis to continue.
 5              Now, I am prepared to address the
 6       issue of whether this is in fact an
 7       unexpired lease or whether in fact it was
 8       terminated pre-petition, but I guess
 9       before I do that, Mr. Tofel, you said you
10       had something else that was relevant?
11              MR. TOFEL:  Well, I know there are
12       facts that have occurred since we were
13       last before you that I think you should
14       know you will decide whether --
15              THE COURT:  But they don't pertain
16       to this lease termination issue?
17              MR. TOFEL:  They pertain to whether
18       the debtor's complied with prior orders
19       of this Court.
20              THE COURT:  Okay.  All right.  But
21       not at -- there's not been a further
22       development, say, in the Appellate
23       Division or in front of Judge Diamond or
24       anything like that.
25              MR. TOFEL:  No.
```

16

EAST 44TH REALTY, LLC

1    
2        THE COURT:  All right.  All right.
3    So I probably ought to deal with, then,
4    what has been referred to from time to
5    time as the gating issue, which is the
6    issue of whether the debtor's lease,
7    which is essentially its only asset other
8    than its right to collect rent from the
9    tenants, terminated pre-petition or
10   perhaps, more specifically, and this is
11   how the landlord has phrased it, whether
12   the debtor lost the right to cure the
13   default and pre-petition.
14   This is because, obviously,
15   Section 365 of the Code applies only if
16   the lease is in existence at the
17   commencement of the case and has not
18   otherwise expired -- of course it's not
19   expired as it's a long term lease --
20   since the commencement of the case.
21        As Collier says at 3 Collier on
22   Bankruptcy, paragraph 365.02[2], if the
23   contract or lease has expired by its own
24   terms or has been terminated under
25   applicable law before the commencement of

17

```
 1              EAST 44TH REALTY, LLC
 2        the bankruptcy case, there is nothing
 3        left for the trustee to assume or assign.
 4        However, the termination process must
 5        actually be completed and not be subject
 6        to reversal, a determination that will
 7        require reference to applicable state
 8        law.  As the parties may recall from the
 9        last hearing, most of the last hearing
10        was dedicated to argument with respect to
11        whether the lapse of time between the
12        issuance of a decision and order by Judge
13        -- or Justice -- Diamond on February 24,
14        2005, lifting her Yellowstone injunction,
15        after which the landlord went through the
16        notice and termination procedure provided
17        for under the lease, which the landlord
18        contends resulted in an effective
19        termination on March 31, 2005, was
20        vitiated or mooted by the subsequent
21        issuance of a stay pending appeal by the
22        Appellate Division in an order dated May
23        6, I believe, of 2005.  That stay by the
24        Appellate Division remained in place
25        through the date of the commencement of
```

18

1              EAST 44TH REALTY, LLC

2      this Chapter 11 case.  Fairly early on in

3      the Chapter 11 case, the Court lifted the

4      automatic stay to permit the conclusion

5      of the litigation of the appeal in front

6      of the Appellate Division, but of course

7      not beyond the issuance of a decision by

8      the Appellate Division.  That is, not to

9      the point of enforcement.

10         On December 15th, 2005, the

11      Appellate Division determined that the

12      substantive portion of Judge Diamond's --

13      Justice Diamond's, excuse me -- February

14      24, 2005 order should be upheld and that

15      in fact the debtor had an obligation to

16      cure the default in respect of the lease

17      which was the subject of her order.  That

18      is, to make the repairs to the building.

19      It's, I believe, acknowledged by the

20      parties that those repairs and that work

21      have been substantially completed and

22      that to finish the work in the grand

23      scheme of this case would cost a

24      relatively small amount of money.

25         The Appellate Division's December

19

EAST 44TH REALTY, LLC

1
2   2005 order said nothing, as it would not
3   be expected of the Appellate Division to
4   say anything, regarding the issue before
5   me, which is, did its earlier May 2005
6   order effectively toll retroactively the
7   debtor's right to cure that default if,
8   as happened, the Appellate Division ruled
9   against the debtor on the merits in
10  respect of the existence of the default.
11  The landlord contends that no such right
12  to cure exists and, effectively, that the
13  stay was intended only to preserve the
14  lease if in fact the debtor prevailed and
15  convinced the Appellate Division that
16  there was no default and that Justice
17  Diamond was incorrect on the merits.  On
18  the other hand, the debtor and its
19  principal contend that the Appellate
20  Division's stay had the effect of a
21  reinstatement of Yellowstone-like relief,
22  and that if the debtor did not prevail on
23  the merits of the appeal, there was
24  nothing to indicate that it would not be
25  able at that time to cure the default,

20

1          EAST 44TH REALTY, LLC

2     which, of course it is proposing now to

3     do pursuant to Section 365, which permits

4     the cure of defaults of unexpired leases.

5          I asked for additional case law on

6     this issue and in reviewing that case law

7     as well as the procedural history in the

8     state court where, among other things, it

9     was argued to the Appellate Division that

10    the appeal itself was moot, according to

11    the landlord, for essentially the same

12    reasons that it's arguing to me that the

13    lease was terminated, and, therefore,

14    that the Appellate Division did not have

15    to decide any issue because of the lapse

16    of time between the termination of the

17    Yellowstone injunction by Justice Diamond

18    and the proposed imposition of the stay

19    by the Appellate Division.  Obviously,

20    the Appellate Division determined to

21    continue with the appeal and not to

22    consider it moot.

23          I've also reviewed again the

24    specific injunction or stay issued by the

25    Appellate Division.  It was argued simply

21

1              EAST 44TH REALTY, LLC

2          as a matter of semantics by the landlord

3          in its response to the additional cases

4          sent to me by the debtor that the debtor

5          had actually sought the reimposition of

6          the Yellowstone injunction and the

7          Appellate Division had instead imposed

8          merely a stay.  I don't really see that

9          level of analysis in the Appellate

10         Division's order, which says "an appeal

11         having been taken to this Court from the

12         order of the Supreme Court on or about

13         February 28, 2005, and

14         plaintiff/appellant having moved pursuant

15         to CPLR 5518 and CPLR 5519(c) for a

16         preliminary appellate injunction, inter

17         alia enjoining respondent from commencing

18         any action or proceeding to recover

19         possession of the premises, located at

20         228-3 230-80s 44th Street, New York, New

21         York, interfering with appellant's use

22         occupancy and possession of the premises,

23         including appellant's relation with its

24         tenants and staying proceedings with

25         respect to respondent's counterclaims all

22

1           EAST 44TH REALTY, LLC

2     pending hearing and determination of this

3     appeal and for related relief and

4     defendant having responded and having

5     cross-moved for dismissal of the

6     aforesaid appeal or, in the alternative,

7     for an order fixing an undertaking, that

8     the motion for a stay is granted upon the

9     terms and conditions contained in the

10    order of a justice of this Court dated

11    May 6, 2005, which required, among other

12    things, payment and continued payment of

13    the rent, and upon the further condition

14    that plaintiff perfects the appeal for

15    the October 2005 term."

16       Based on my review of that order,

17    it appears to me that what was indeed at

18    issue in the motion for an appellate

19    injunction was the debtor's continued

20    right to possession of the premises and

21    from that flowed all of its other rights,

22    including the right to collect rent.  And

23    that that is what the Appellate Division

24    preserved and that was what was at the

25    start of this case still preserved.

23

EAST 44TH REALTY, LLC

1
2          That's certainly consistent with

3    the logic of a Yellowstone injunction,

4    which is clearly intended to stay the

5    tolling -- stay or toll the running of

6    the cure period, so that after a

7    determination of the merits of a dispute,

8    the tenant may cure the defect, if any is

9    found on the merits, and avoid a

10   forfeiture of the lease.  As Judge

11   Diamond herself found in her October 14,

12   2005 order issuing a Yellowstone or

13   Yellowstone-type injunction for the

14   benefit of the lease mortgage holder

15   here, the courts are not specifically

16   limited to the fact pattern of the

17   Yellowstone case.  Indeed, the Appellate

18   Division, First Department, issued

19   Yellowstone-like relief in the form of a

20   preliminary injunction to avoid

21   forfeiture pending determination of

22   default issues on the merits in Empire

23   State Building Association v. Trump

24   Empire State Partner, 667 N.Y.S.2d 31,

25   1st Dept 1997.

24

```
1              EAST 44TH REALTY, LLC
2         So, given the inescapable fact that
3    the Appellate Division did enter such
4    relief in the form of its stay, and was
5    fully aware of the expiration of time
6    between -- or the running of time between
7    Justice Diamond's order terminating the
8    Yellowstone injunction and the request
9    for a stay of the -- by the debtor at the
10   Appellate Division, I conclude that's
11   what was intended by the Appellate
12   Division.
13        As a matter of law, that may well
14   be something I can't review under the
15   Rooker-Feldman doctrine or related
16   principles of collateral estoppel and res
17   judicata.  But, in any event, it does
18   appear to me consistent with the law as
19   set forth in the main case that we had
20   discussed at the prior hearing, which I
21   continue to believe is the leading case
22   in this area:  Mann Theaters Corporation
23   of California v. Mid-Island Shopping
24   Plaza Company, 464 N.Y.S.2d, 793, 2nd
25   Dept, 1983, affirmed, 62 NY 2d 930, 1983.
```

25

EAST 44TH REALTY, LLC

1

2        I recognize, as I had recognized at

3    the earlier hearing, that there are cases

4    where at least in the context of a, not a

5    previously issued Yellowstone injunction,

6    but the expiration of a TRO, courts would

7    not reinstate or retroactively impose,

8    more appropriately, a Yellowstone

9    injunction.  That certainly was the

10   result in TW Dress Corporation v.

11   Kaufman, 553 N.Y.S.2d 548, 2nd Dept.,

12   1988.  But, since it is ultimately an

13   equitable remedy that can, in my view

14   under the case law, be revived at least

15   if there was a previously issued

16   Yellowstone injunction during an appeal,

17   I think that it was up to the Appellate

18   Division to determine when it issued its

19   stay, whether in fact the debtor should

20   be estopped from attempting to revive

21   such a right because of inactivity, or

22   the like, that was inequitable or

23   inappropriate.  And the Appellate

24   Division did not do that.  Instead it

25   issued its stay.

26

1               EAST 44TH REALTY, LLC

2           So, it appears to me that, again,

3     what the Appellate Division did was with

4     knowledge of the background here, because

5     the landlord made its arguments very

6     plain to the Appellate Division that it

7     believed the lease had already

8     terminated, the Appellate Division, to

9     the contrary, continued the stay pending

10    determination of the merits and that

11    consequently the tenant, having lost on

12    the merits, should be given a right to

13    cure, which the Bankruptcy Code, of

14    course, expressly recognizes under

15    Section 365.

16        So, in my view, there is a lease

17    extant that can be assumed.  Now, in

18    terms of the requirements for assumption

19    and assignment, we had testimony by Mr.

20    Bildirici with regard to adequate

21    assurance of future performance.  We

22    hadn't closed the record, however, on the

23    issue of assumption and assignment, and,

24    to my mind, the landlord still has an

25    opportunity to present contrary evidence

27

1      EAST 44TH REALTY, LLC

2      with regard to adequate assurance, and

3      although I believe, with respect to

4      adequate assurance, the debtor had

5      concluded it obviously has the right to

6      rebut any evidence the landlord wants to

7      submit.  On that score, Mr. Tofel or Weil

8      Gotshal, I forget which, have provided in

9      addition to the other materials that it

10     provided to me after the last hearing a

11     critique of Mr. Bildirici's affidavit and

12     testimony with regard to adequate

13     assurance.  To some extent, I think that

14     critique offered items of evidence as

15     well, but I think I'm capable of sifting

16     through and determining what was a

17     critique and what was not.  In addition

18     to having a right, however, as a factual

19     matter, to submit evidence in respect of

20     adequate assurance, the landlord -- I'm

21     sorry -- the landlord has also asserted

22     almost a million dollar cure claim in

23     respect of attorneys' fees over and above

24     the what I refer to as relatively small

25     amount actually needed to cure the repair

28

EAST 44TH REALTY, LLC

1
2   default.  And I recognize that amount has
3   not been agreed to expressly, but that's
4   -- the million dollar attorneys' fees are
5   on top of that cure amount.  I had said
6   that the landlord needed to provide time
7   records in respect of the attorneys' fees
8   cure claim, which it did, although I
9   don't believe it provided them to the
10  debtor under claims of privilege, saying
11  that they would have to be so heavily
12  redacted, in effect, that there was no
13  reason to provide them, other than just
14  the flat bills without the time records,
15  to the other side.  And the amount at
16  issue is so large that I had some real
17  doubts that there could be simply a
18  reserve to cover that issue pending a
19  further hearing in regard to the
20  attorneys' fees, which is why, among
21  other things, I requested that the -- why
22  I required that the debtor at least put
23  up a few hundred thousand dollars pending
24  further discovery in respect of those
25  fees.

29

1        EAST 44TH REALTY, LLC

2          So, that's where we stand at this

3      point.  I can have a hearing on the cure

4      claim as part of the lease assumption

5      motion.  And, again, I don't know whether

6      the landlord wants to submit evidence on

7      the adequate assurance issue or not, but

8      I also would have a hearing on that, too.

9      But, it seems to me on both of those

10     points, at least in respect of the cure

11     point, there needs to be some additional

12     discovery.

13          MS. LIU:  I guess I have a

14     question, Your Honor.  We did submit what

15     I'll call the projections affidavit, just

16     for ease of reference --

17          THE COURT:  Right.  If you don't

18     want to submit additional evidence on the

19     adequate assurance point, I'm not telling

20     you to do it.  I think that --

21          MS. LIU:  No, I understand that you

22     are saying we can if we'd like.

23          THE COURT:  Right.

24          MS. LIU:  I guess I was just

25     puzzled, though, at your comment about it

30

1           EAST 44TH REALTY, LLC

2       being a critique.  It says what it says.

3       It's just trying to show you that -- and

4       I'll point out it was not responded to.

5       It's an uncontroverted affidavit.

6           THE COURT:  Well, it's not

7       something I asked to have be submitted,

8       so I wouldn't expect anyone to respond to

9       it.

10          MS. LIU:  Okay.  Well, that's a

11      fair comment, but the reason we -- I'll

12      just offer my explanation of why it was

13      submitted, and that's because that was at

14      the end of the hearing and Your Honor had

15      to get to another hearing, and we thought

16      that it might be difficult for you to

17      follow the transcript of that portion.

18      And so, it was an attempt to just write

19      it down for you.

20          THE COURT:  All right.  That's

21      fine.

22          MS. LIU:  And, similarly -- okay.

23      Well, that was the explanation.

24          THE COURT:  To the extent that --

25      and I don't think it's replete with

31

1           EAST 44TH REALTY, LLC

2    factual assertions, as opposed to

3    commentary on Mr. Bildirici's factual

4    assertions, but to the extent there are

5    factual assertions in the affidavit, I

6    took it as the opening shot, if you will,

7    in the landlord's factual showing on

8    adequate assurance and, of course, the

9    debtor would be entitled to cross-examine

10    Mr. Tofel on those factual assertions.

11    Now, there are not a lot of them in

12    there.  It's mostly again commentary on

13    his -- on Mr. Bildirici's testimony.  But

14    I didn't know, having seen that, whether

15    the landlord actually wanted to have its

16    own factual record, as well, or would

17    simply rely on a critique without

18    additional factual assertions of what the

19    debtor put in the record on adequate

20    assurance.

21       MR. TOFEL:  Let me rise with a

22    question which I recognize is somewhat

23    out of the ordinary.  We have commented,

24    and I don't want to put a label on it --

25       THE COURT:  Right.

32

```
1              EAST 44TH REALTY, LLC
2          MR. TOFEL:  -- but we've commented
3      on, for example, the debtor has submitted
4      projections showing a certain rental
5      revenue string.
6          THE COURT:  Right.
7          MR. TOFEL:  I don't know whether
8      Your Honor takes that as critique,
9      factual presentation --
10         THE COURT:  Well --
11         MR. TOFEL:  I want to give Your
12     Honor what you want.  I want to give it
13     to you in the form that you want it.
14         THE COURT:  All right.  Well, there
15     are statements in the affidavit that X
16     percent of the leases are going to expire
17     by a date certain and others won't and
18     you won't be able to raise the rents
19     because the ones that aren't expiring are
20     going to continue.  If that's in the
21     record already somewhere, you don't have
22     to show me that, but if it's not in the
23     record, you're going to have to show me.
24     Unless you're happy with the sort of
25     vague answer that Mr. Bildirici said
```

33

1          EAST 44TH REALTY, LLC

2      which is that some of them will not

3      expire.  So, there are things like that.

4      I mean, you just have to go through it

5      and see what are things that are not in

6      the record yet, and what are things that

7      are.

8          MR. TOFEL:  I guess, the concern

9      I've got and the question that I'm

10     raising is we don't view the debtor as

11     having put forth the facts.  They put

12     forth conclusions.

13         THE COURT:  Well, I understand, but

14     all I'm saying is to the extent you are

15     putting forth facts, if it's in the form

16     of an affidavit (a) they have an

17     opportunity to cross-examine you and (b)

18     I think as per the last hearing, they

19     have an opportunity to take your

20     deposition.  That's all.

21         MR. TOFEL:  Very well.  We

22     understand Your Honor's comments.  Thank

23     you.

24         THE COURT:  Okay.

25         MS. TRAKINSKI:  May I just address

34

1        EAST 44TH REALTY, LLC

2     that, Your Honor?

3          THE COURT:  Yes.

4          MS. TRAKINSKI:  You're absolutely

5     right.  One of the reasons we put no

6     response in to that portion of their

7     submission was the fact that we're still

8     waiting for the opportunity to depose Mr.

9     -- or Mr. Tofel.

10         THE COURT:  All right.  And again,

11    I don't fault the landlord for not making

12    him available yet.  I think there was

13    enough ambiguity and tha, that's fine.

14         MS. TRAKINSKI:  Is Your Honor

15    prepared to address the issue of

16    disclosure of the time records because

17    without them, frankly, we're lost.

18         THE COURT:  Yes, I am.  I want to -

19    - first of all, I think it's fair, since

20    this has clearly involved enough legal

21    hours already, to give you all some

22    preliminary guidance on the standard by

23    which I believe the aspect of the cure

24    that the landlord asserts is attributable

25    to attorneys' fees should be reviewed by

35

1          EAST 44TH REALTY, LLC

2    me.

3          As I see it, it's a three-step

4    analysis and it's laid out well, or at

5    least clearly enough, in three Southern

6    District cases and well discussed in a

7    Delaware case.

8          The first step is to review the

9    actual provisions of the lease that

10   provide for attorneys' fees, because

11   without such provisions a landlord would

12   not have a right to attorneys' fees in

13   connection with either a claim under 502

14   or here, a cure claim under Section

15   365(b)(1)(B).

16         And I've done that and there

17   clearly are three provisions that are

18   applicable here.  Paragraphs 12 and 26 of

19   the lease speak to attorneys' fees

20   generally in connection with enforcing

21   rights under the lease in respect of the

22   default.  And paragraph 13, if I needed

23   it, addresses a right to fees in respect

24   to the Yellowstone injunction litigation

25   which Justice Diamond awarded anyway, to

EAST 44TH REALTY, LLC

1
2  the extent they were reasonable, in her
3  decision.  She didn't award a specific
4  amount of fees.  She said that the
5  landlord would be entitled to reasonable
6  fees.  But, as the courts have been
7  clear, that's the first step in the
8  analysis.
9       The second step involves a bit more
10  of the exercise of judgment on my part
11  and leaves, some open area for dispute,
12  obviously, which is that the cases have
13  been careful to make a distinction in
14  connection with landlord claims for
15  attorneys' fees as to whether they are
16  claims for actions undertaken by the
17  landlord to enforce rights under the
18  lease in a manner consistent with Section
19  365, for which they'd be compensable, or
20  whether they're or they were incurred in
21  connection with contesting the debtor's
22  rights generally under the Bankruptcy
23  Code, for which they're not compensable.
24  On the outer edges this is a pretty easy
25  distinction to make when landlords seek

37

EAST 44TH REALTY, LLC

1
2 to compel assumption or rejection; for
3 example, for termination of exclusivity
4 or dismissal of the case for bad faith or
5 the like, the courts have been pretty
6 quick to find that those are not
7 appropriate cure claim rights, incure
8 claims under leases that have similar
9 language to the language here.  On the
10 other hand, where the landlord is
11 realistically and reasonably in doubt as
12 to whether it will be paid its rent and
13 seeks to enforce its right to be paid
14 rent, then that is part of the cure
15 claim, clearly.
16        Intermediate steps are a little
17 more difficult.  For example, in the
18 Delaware case I mentioned -- I'll give
19 you all the cites on this at the end --
20 where the right to attorneys' fees itself
21 in connection with asserting a cure claim
22 for attorneys' fees was a matter of first
23 impression, Judge Walrath found that
24 there was a basis to provide for some
25 attorneys' fees in that area, because the

38

1          EAST 44TH REALTY, LLC

2     law was not clear and of course

3     attorneys' fees themselves were a part of

4     the lease.

5          The third step of the analysis is

6     to determine whether the fees were

7     reasonable.  And the courts again are

8     clear that this is not a simple lodestar

9     analysis where you look at the work done

10    and the normal fee requested, but have to

11    factor in other factors, including the

12    amount of the dispute relative to the

13    attorneys' fees requested, the debtor's

14    good faith to resolve the amount at

15    issue, the debtor's compliance with the

16    Code and whether the issue is a matter of

17    first impression.  Judge Beatty in the

18    Nicfur-Cruz Realty Corporation case

19    boiled it down ultimately to whether in

20    addition to the lodestar factors, the

21    services were necessary to accomplish the

22    appropriate end that was sought and she

23    found that a substantial disproportion of

24    the fees sought to the amounts involved

25    in conjunction with the clear rights,

39

1           EAST 44TH REALTY, LLC

2     powers and privileges afforded the debtor

3     by the Bankruptcy Code would result in

4     limitations of an attorneys' fees claim

5     even if it was otherwise provided for

6     under the parties' agreement, because it

7     was not reasonable.

8         Anyway, let me give you the cases

9     that discuss this in addition to In re

10    Nicfur-Cruz Realty Corporation, which is

11    50 BR 162 Bankruptcy S.D.N.Y. 1985, which

12    really focuses on the reasonableness

13    analysis, and that is the third prong of

14    the analysis.

15        I've been relying heavily on a

16    summary and analysis of the case law in

17    this area by Judge Walrath in In re Crown

18    Books Corporation, 269 BR 12 Bankruptcy

19    District Delaware 2001, where she also

20    applies the same point that Judge Beatty

21    did in Nicfur-Cruz with regard to fees

22    substantially in excess of the amount in

23    dispute.

24        In addition, Judge Sweet in Loews

25    Cineplex Entertainment Corporation at 202

40

1               EAST 44TH REALTY, LLC

2      Westlaw 535479 S.D.N.Y. April 9, 2002,

3      discusses the distinction between issues

4      based on the landlord's right to collect

5      amounts due under its bargained-for lease

6      and otherwise to enforce its rights under

7      the lease.  In contrast to cases that did

8      not allow fees where the landlord was

9      dealing with bankruptcy-related issues,

10     contrary to bankruptcy rights that the

11     debtor had, such as to generally assume

12     or reject, maintain the exclusive period,

13     extend the time to assume or reject and

14     the like, Judge Sweet cites the cases

15     there that I've also reviewed but, in

16     particular, Judge Brozman's case In re

17     Best Products Company, 148 BR 413

18     Bankruptcy S.D.N.Y. 1992 appears to me to

19     be relevant in that there, a lot of time

20     was spent in essence seeking to terminate

21     the lease.

22         Then, finally, the case of In re

23     Child World, Inc., 161 BR 349 Bankruptcy

24     Southern District New York 1993.

25         In light of those cases, I think

41

EAST 44TH REALTY, LLC

1  it's important to review the time records
2  in detail, particularly those for the
3  post-petition period.  I really have
4  little, if any, problem with the pre-
5  petition time records of landlord/tenant
6  counsel.  But as you can see from my
7  going through the three-step analysis in
8  regard to the cure claim, the post-
9  petition time, which, as I took it was
10 all the time in this case of Weil Gotshal,
11 and Mr. Tofel's really does require
12 parsing through because there's been a
13 lot of activity in this case, much of
14 which may not be compensable under the
15 standard that I've just described, that
16 is the second prong of the standard,
17 leaving aside the reasonableness issue.
18
19         I also think that there's another
20 issue with regard to Mr. Tofel's time on
21 the reasonableness point, which is that
22 normally the Courts are sensitive to
23 duplication of effort by counsel, and
24 he's very effective and Ms. Liu and Weil
25 Gotshal are very effective, but it's not

42

EAST 44TH REALTY, LLC

1    clear to me that a cure claim should
2    cover both of them.  And that's
3    particularly the case if Mr. Tofel has
4    really been acting largely as the client
5    and if that's why he was needed to be
6    here to assist Ms. Liu.  So in weighing
7    the request -- well, I took it as a
8    request, although it was stated as a fact
9    -- that the landlord was not going to
10   provide its time records to the tenant
11   debtor, I believe, because of attorney
12   client privilege, I believe that those
13   records are essential to deciding this
14   issue.  And while obviously I'm sensitive
15   to the attorney client privilege, I think
16   that a blanket withholding of those
17   records is outweighed by the materiality
18   of the issues that I've just gone through
19   and the prejudice to the debtor.
20   MS. LIU:  Could I just comment on
21   that?
22   THE COURT:  Yeah.
23   MS. LIU:  The reason that at least
24   in the first instance they weren't

43

1              EAST 44TH REALTY, LLC

2        provided was simply this.  We thought

3        that Your Honor, based on the principles

4        you just enunciated, was going to look

5        through them and apply those principles

6        and make the decision yourself because

7        you're the Court.

8              THE COURT:  Well --

9              MS. LIU:  Well, hold on.  I'm

10       explaining.

11             THE COURT:  Okay.

12             MS. LIU:  And the reason is because

13       it's been the debtor's position, almost

14       like a foregone conclusion, that none of

15       the fees are reasonable.  So, we thought

16       that that would be a kind of a futile

17       exercise.  But we're prepared to, of

18       course --

19             THE COURT:  Well, I understand, but

20       I have to assume, and if I'm wrong about

21       this assumption, it'll probably come back

22       to bite them when their own fees are

23       reviewed, that in addition to making any

24       blanket objection, which is easily made

25       in one sentence and shouldn't take a lot

44

1               EAST 44TH REALTY, LLC

2          of time and shouldn't result in a lot of

3          expense being incurred by the estate,

4          that they'll make the proper objection

5          based on the more nuanced analysis that's

6          required.  And I can't preclude them from

7          doing that.  I'm not some form of -- it's

8          an adversary system; I can't decide it

9          without giving them the chance to review

10         it.

11              Again, I don't fault you for doing

12         it this way because as far as you knew,

13         it would all be moot, so why waive the

14         attorney client privilege if this issue

15         never is going to come up anyway?

16              MS. LIU:  That's right, Your Honor.

17              THE COURT:  So, I don't fault you

18         for that.  But I think at this point,

19         however, they are entitled to review

20         them.

21              MS. LIU:  And we -- of course we

22         would then do that but we would of course

23         want to just take a look at them and

24         redact anything that we think it's

25         appropriate.  But also in connection with

45

1                EAST 44TH REALTY, LLC
2        this, you know, I need, I think, a little
3        guidance on this.  We did submit an
4        affidavit that talked about I guess what
5        you referred to as the mitigation, you
6        know, the settlement efforts.
7                THE COURT:  Right.
8                MS. LIU:  And is Your Honor going
9        to factor that into your review?  Because
10       that's why we submitted it.
11               THE COURT:  Yes.  Unfortunately, it
12       is an element in the cases.  I mean, it's
13       something that Judge Beatty went through,
14       for example, in Nicfur.  And I know that
15       there was an attorneys' affidavit
16       submitted in response this morning which
17       I just really skimmed through.  I didn't
18       really pay much attention to it.  In my
19       view, if this can't be resolved that's
20       also an issue that I probably need to
21       hear cross-examination on.
22               MR. TOFEL:  The fact or observation
23       that Your Honor made as a matter of fact.
24       It's not correct and Your Honor is
25       misunderstanding whether the claim that

46

1              EAST 44TH REALTY, LLC

2         the landlord's attorneys' fees, at least

3         as concerns my firm's time, are all in

4         the post-petition period.

5              THE COURT:  Oh, I know they're not.

6         No, I'm saying the post-petition part of

7         your firm's time

8              MR. TOFEL:  Okay.

9              THE COURT:  That's what I'm

10        referring to.  When you're acting as --

11        as long as you're not acting,

12        effectively, as the client in the pre-

13        petition time, again, the pre-petition

14        time I don't really have much of a

15        problem with, except on that one point,

16        which is -- you know, is this something

17        that you -- I don't really know -- I've

18        been told you're the managing agent for

19        the client.  I don't know if that's true.

20        That may be an issue.  But that's, as far

21        as I can see, the only issue.

22             MR. TOFEL:  My affidavits say that

23        I am the manager of the landlord.  That

24        is, in fact, correct.

25             THE COURT:  Well, see, but I don't

47

1        EAST 44TH REALTY, LLC
2    know what that -- I don't know whether
3    you separately bill people for -- that's
4    a separate issue.
5            MS. TRAKINSKI:  Well, that's part
6    of the whole discovery process, Judge.
7            THE COURT:  Exactly.  That's part
8    of the discovery process.
9            MR. TOFEL:  Let me deal with just
10   something else, and that is, what I would
11   propose and I don't know if Your Honor
12   has, frankly, concluded the rulings that
13   Your Honor wishes to impart today.
14           THE COURT:  Well the thing on
15   attorneys' fees is just some guidance to
16   you.
17           MR. TOFEL:  No, no, I appreciate
18   that.  And I understand Your Honor's
19   rulings before and, obviously, you
20   recognize with them, respectfully, there
21   obviously are some things that are now
22   going to go forward.  I take Your Honor's
23   comments to require us to deliver time
24   records and we will deliver time records.
25   We will go through them and redact the

48

1          EAST 44TH REALTY, LLC

2      things that we are most particularly

3      concerned about and deliver records to

4      counsel.  But I just want to make sure

5      that we understand each other.  Your

6      Honor includes anything for which we seek

7      reimbursement.  That is correct.

8          THE COURT:  That's right.

9          MR. TOFEL:  Okay.

10         MS. TRAKINSKI:  Judge, may I --

11         THE COURT:  He's not finished yet.

12         MS. TRAKINSKI:  -- the timing of

13     this should be only be the post-petition

14     one?

15         MR. TOFEL:  Well, that's what I

16     think -- I think that's what he's not

17     saying.  He's not saying it's post-

18     petition.

19         THE COURT:  No, you should provide

20     them all.  I can tell you that if there

21     was a privilege issue with regard to your

22     landlord/tenant firm, I would be -- you

23     redact and they say they shouldn't be

24     redacting this much, when I review it in

25     camera, I'll probably be more sensitive

49

1              EAST 44TH REALTY, LLC

2       to your point than their point.  But the

3       balance kind of flips for the post-

4       petition period.  And the separate issue

5       as to your role as managing agent and

6       attorney for the pre-petition period,

7       that was the basis for my distinction.

8       But they're entitled to all the time

9       records.

10              MR. TOFEL:  Okay.

11              MS. TRAKINSKI:  Judge, can I

12       address the redaction issue?

13              THE COURT:  Yes.

14              MS. TRAKINSKI:  In re Pine 50

15       speaks very clearly about the add issue

16       waiver here.  It's our position that the

17       redaction in and of itself is

18       inappropriate and anything they're

19       redacting, they're not entitled to claim.

20       If they're claiming fees for a

21       conversation, for example, we're entitled

22       to know what the subject of that

23       conversation was.  It's going to be very

24       difficult for us to probe the

25       reasonableness, particularly of the post-

50

1          EAST 44TH REALTY, LLC

2     petition period, as you point out,

3     because we've got this dichotomy of Mr.

4     Tofel's role.

5          THE COURT:  Well, all right.  I can

6     deal with that --

7          MS. TRAKINSKI:  And, by the way,

8     Judge, just if I may, I'm sorry.  The

9     dichotomy of roles applies to the pre-

10    petition period as well because Mr. Tofel

11    was acting as the manager.

12         THE COURT:  No, I already said

13    that.  I've already addressed that.  It

14    does, I agree.

15         MS. TRAKINSKI:  The redaction issue

16    is a real problem and I'm not sure that

17    we can adequately depose him if we --

18         THE COURT:  Well, if -- I don't

19    know how much they're going to redact.

20    If it becomes an issue, then you can

21    raise it.

22         MS. LIU:  Yeah, Your Honor, I would

23    like to just comment.

24         MR. BACKENROTH:  Your Honor, if I

25    can have a word, as well.

51

1        EAST 44TH REALTY, LLC

2        THE COURT:  Well, I think Ms. Liu

3    was next.

4        MS. LIU:  I would like to just

5    comment that redaction is pretty standard

6    procedure when attorneys' fees are

7    submitted in bankruptcy cases --

8        THE COURT:  I agree.  I agree.  I

9    think it's something that people can use

10   their judgment on.  If you have cases

11   that you want to give to Ms. Liu, that's

12   fine and she can use her judgment on it.

13   And if there's still a disagreement, I'll

14   resolve that.

15        MS. TRAKINSKI:  I'm reminded

16   there's one other issue with respect to

17   at least the bills that are attached to

18   Mr. Tofel's affidavit.  I don't know what

19   Your Honor received in terms of the

20   actual time records, but they've only

21   submitted bills with his affidavit.  We

22   understand there are fees they've not

23   even been paid for.  There's a

24   substantial amount of fees from what we

25   can tell that they've already been

52

1            EAST 44TH REALTY, LLC

2       reimbursed for and used Mr. Tofel's --

3            THE COURT:  All right.  Well,

4       that's a separate issue which you can --

5       you can take up in discovery.

6            MS. TRAKINSKI:  But I want to make

7       sure that the order is clear that what

8       they have to turn over to us in terms of

9       time records is every single dollar

10      they're claiming was spent on this and

11      that they're claiming and they can't --

12           MS. LIU:  Your Honor, that's not

13      correct.

14           MS. TRAKINSKI:  Judy, can I please

15      finish?  I've been respectful.

16           THE COURT:  There's no order.

17      That's part of the -- I mean that's what

18      you can ask Mr. Tofel on discovery.

19           MR. BACKENROTH:  Your Honor, if I

20      may --

21           THE COURT:  There's no order.  I'm

22      not issuing an order today.  That's all

23      I'm saying.

24           MS. TRAKINSKI:  We may come back to

25      you for one later on.

53

1        EAST 44TH REALTY, LLC

2            THE COURT:  All right.  But I would

3        assume that if there's an actual issue as

4        to what the landlord's been paid or not,

5        they're going to have to show that.  I

6        mean, you can't submit a claim unless --

7        if there's a legitimate dispute as to

8        whether the claim has been paid or not,

9        that's a fair game for discovery.

10            MR. BACKENROTH:  Your Honor, if --

11            MS. LIU:  And, Your Honor, what's

12        at issue is the cure amount which by

13        definition means --

14            THE COURT:  Unpaid.

15            MS. LIU:  -- it's the unpaid

16        amount.

17            MR. BACKENROTH:  No, it's a little

18        bit more than that because if for

19        argument's sake, the claim can be a

20        million three of which three hundred

21        thousand they've been paid, when we talk

22        about the analysis between what it is and

23        what they intended to cure --

24            THE COURT:  No, you can ask Mr.

25        Tofel what he's been paid, that's fine.

54

1       EAST 44TH REALTY, LLC

2           MR. BACKENROTH:  And we can also

3       ask for the time sheets as to what he's

4       been paid, as well, because it comes to

5       the reasonableness of the total fees that

6       have been requested.  And what he has

7       been paid towards that and whether or not

8       how much more has to be paid towards that

9       activity, so I think breaking it off of

10      at that point does not allow us to

11      present a full picture to Your Honor.

12          I was going to suggest yet

13      something in addition that I think would

14      be helpful in order to get the ball

15      rolling.  And I mean that what I would

16      like to see from the landlord's counsel

17      as one would have in a fee application

18      presented to this Court a breakdown of

19      their time and the allocations into his

20      portions, so that we can take a look at -

21      -

22          THE COURT:  No, they don't have to

23      do that.  I don't think they have to do

24      that under this standard.  This isn't

25      503(b), this isn't --I don't think this

55

1              EAST 44TH REALTY, LLC

2       is covered by the Fee and Expense

3       Guidelines like that.

4              MR. BACKENROTH:  It's not for the

5       purpose of the guidelines.  It's for the

6       purpose of trying to calculate certain

7       services, whether or not they are

8       compensable.  Otherwise we'll have to do

9       it if Your Honor -- we'll do that if we

10      have to do that.

11             THE COURT:  You know, I know it

12      will be helpful to me but I think it's up

13      to them whether they want to do that or

14      not.

15             MR. BACKENROTH:  Fine.  We'll ask

16      for our discovery.

17             THE COURT:  I mean, there's a risk

18      in not doing it as much as in doing it.

19      Because there's bound to be some level

20      of, as Judge Walrath said in her case,

21      she did the best she could in determining

22      what was reasonable in looking at a stack

23      of things.  And if it's not broken down

24      in manageable chunks of time, it's easier

25      to make a mistake one way or the other.

56

1           EAST 44TH REALTY, LLC

2      But it's not really a mistake because

3      you're just acting -- in essence you're

4      acting as an objective person who says

5      what's reasonable or not and --

6           MR. BACKENROTH:  Then, Your Honor,

7      we'll go about doing that as part of our

8      discovery then.

9           THE COURT:  Okay.  All right.

10          MR. TOFEL:  Let me deal with a

11     couple of items that I alluded to earlier

12     that now impact or are impacted by Your

13     Honor's determinations this morning.

14          THE COURT:  Okay.

15          MR. TOFEL:  Most specifically, and

16     let me deal with them in discrete

17     modules, if I can, Your Honor has

18     commented on whether to offer the

19     landlord opportunity, if we will, to put

20     in factual presentations, as opposed to,

21     I guess, what Your Honor described as a

22     critique, and I don't -- there's no

23     pejorative in there.  I understand I'm

24     just trying to give labels.  One of the

25     things that would enable us to do that,

57

1           EAST 44TH REALTY, LLC
2      and Your Honor heard a lot at the
3      beginning of this case about our request
4      for and we had worked for, literally, a
5      year to get and with Your Honor's help,
6      we finally did get some, but not all of,
7      the subleases.  We clearly have some.
8      What I would ask Your Honor today to
9      direct the debtor to do is take the
10     whatever date upon which they last
11     delivered subleases to us, I accept them,
12     I think they represented at the time that
13     we had all that they had at that point.
14     What I would ask them, in short order, is
15     to deliver to us any leases that have
16     either incepted since that point going
17     forward or any leases that have come up
18     for a renewal at that point.  So that,
19     between that delivery and the prior
20     deliveries we have --
21          THE COURT:  All right.  If I don't
22     see it that's fine, right?  You can do
23     that, can't you?
24          MR. BACKENROTH:  Yeah, within some
25     reasonable time we'll put it together.

58

1        EAST 44TH REALTY, LLC

2            THE COURT:  All right.  Okay.

3            MR. TOFEL:  Secondly, the -- I

4        referred to earlier some events that have

5        transpired since we were here last.  Let

6        me deal with one in particular, and Your

7        Honor has now heard numerous times about

8        insurance issues.  As  Your Honor will

9        recall back in December, Your Honor

10       issued a directive shortly before the

11       holiday right after the Appellate

12       Division had issued a decision where you

13       made it very clear and directed the

14       debtor to reimburse the landlord for its

15       insurance.  At that point and at

16       subsequent points, Mr. Graham had come to

17       court and complained that we were not

18       cooperating in enabling the debtor to

19       afford itself of its opportunities under

20       the lease.  The -- that amount was, as

21       Your Honor will recall, paid.  In March,

22       last week, actually, the umbrella and

23       excess insurance policies that the

24       landlord maintains were renewed.  The

25       lease provides that not less than twenty

59

1          EAST 44TH REALTY, LLC
2     days before that renewal, if the debtor
3     wishes to or if the tenant wishes to, it
4     can deliver to the landlord fully paid
5     copies of insurance policies that it
6     proposes to offer as replacement and
7     umbrella insurance.  The debtor did not
8     do that.  That day came and went.  It was
9     February 14th.  Happy Valentines Day,
10    everyone.  On February 17, I bound the
11    renewal, effective March 6 of the
12    existing and renewing excess in umbrella
13    insurance.  I submitted to the debtor the
14    broker's invoice.  It's approximately
15    54,450 dollars asking to be reimbursed.
16    As of this moment, we've not been
17    reimbursed.  What we've been told is that
18    the debtor has gone out and bought other
19    coverage.  That other coverage is not
20    compliant with the lease for -- on
21    several reasons and simply on its face.
22    It doesn't even require exhaustive
23    analysis.  It doesn't name the proper
24    insured, it doesn't name the landlord at
25    all as an insured.  It's inadequate in

60

EAST 44TH REALTY, LLC

1
2    the amounts and what they've done is
3    rather than buy excess or umbrella
4    coverage over the existing primary
5    insurance, they've gone out and bought a
6    totally separate primary coverage which
7    is in and of itself wholly inadequate.
8    So, they've literally refused, despite
9    Your Honor's orders, to reimburse us and
10   we'd like to be reimbursed.  It's 54,450
11   dollars due under the lease.  Paragraph
12   10 makes it clear as a matter of fact and
13   a matter of law that it has to be
14   reimbursed.  The debtor had, if it had a
15   lease at all, and we understand Your
16   Honor's determination, it had until
17   February 14 to propose --
18         THE COURT:  Okay.  All right.  This
19   is not really teed up in front of me -- I
20   mean, I appreciate you alerting me to
21   this, but is this in dispute?
22         MS. Trakinski:  Can I -- I have to
23   address it, Judge.
24         MR. TOFEL:  Excuse me.  It is --
25   let me, please.

61

1          EAST 44TH REALTY, LLC

2          THE COURT:  No, I mean, the facts

3     aren't in front of -- I mean, it's just

4     two lawyers talking.  It's -- you know

5          MS. TRAKINSKI:  Well, Judge, I have

6     the facts to hand out --

7          MR. TOFEL:  No, it's not two

8     lawyers talking.  Your Honor has issued

9     orders --

10          THE COURT:  No, no.  This part is

11     two lawyers talking.  I don't have -- I'm

12     not going to sit here now and parse

13     through what the lease requires.  That's

14     all I'm saying.

15          MR. TOFEL:  Your Honor has already

16     ruled what the lease requires.

17          THE COURT:  No, no, no.  You don't

18     understand what I'm saying.  I appreciate

19     what you're telling me.  The debtor's

20     lawyer is standing and I guess she wants

21     to tell me something different.

22          MS. TRAKINSKI:  I just --

23          THE COURT:  But ultimately it's

24     just two lawyers talking.  I understand I

25     told him to pay the insurance, but if

62

```
 1              EAST 44TH REALTY, LLC
 2      they have some other way of paying the
 3      insurance -- I mean, I don't know.  What
 4      do you have to say?
 5              MS. TRAKINSKI:  We paid the
 6      insurance.  Paragraph 10 of the lease.
 7      You can sit down, Larry, and let me speak
 8      now.  Paragraph 10 of the lease provides
 9      the tenant shall insure the building.
10      And there's a phrase the tenant shall
11      procure, the tenant shall pay over and
12      over again.  So, first of all, paragraph
13      10 does not require the landlord to buy
14      insurance and the tenant to pay, number
15      one.
16              THE COURT:  But are there --
17              MS. TRAKINSKI:  Number two, Mr.
18      Bildirici gave the landlord more than 28
19      months to review the proposed insurance
20      that he had had designed by an insurance
21      broker, several people reviewed the
22      lease, he's been given absolute assurance
23      that what he's purchased and his purchase
24      -- a binder was delivered to the landlord
25      that does --
```

63

1              EAST 44TH REALTY, LLC

2              THE COURT:  Within the time frames

3       that the lease requires?

4              MS. TRAKINSKI:  The binder, the

5       binder -- yes.

6              MR. TOFEL:  Excuse me.

7              THE COURT:  Well, wait.  No, no.

8       Look.

9              MS. TRAKINSKI:  Larry, please.

10             THE COURT:  There are two people --

11      one thing about lawyers that I do accept

12      is that they have an obligation to at

13      least tell me something that they believe

14      in good faith is accurate.  Once they do

15      that, and once they're saying two

16      different things, I can't decide it on

17      the fly.  You know, Judge McKelvey, one

18      of his favorite movies was the movie

19      Diner.  You remember that movie?

20             MS. TRAKINSKI:  Yes.

21             THE COURT:  It's a real good movie.

22      It's all about a bunch of people sitting

23      around talking.  It's a great movie but

24      it wouldn't be a good trial because

25      they're just talking.  And that's what

64

1          EAST 44TH REALTY, LLC
2      this is, is people talking.  If there's a
3      dispute that two lawyers are telling me
4      is a legitimate dispute, it has to be
5      teed up in front of me so I can actually
6      decide it.
7          MR. BACKENROTH:  We'd like to
8      opportunity to respond to such a thing as
9      well.
10          MR. TOFEL:  I appreciate what Your
11      Honor is saying; however, it does not
12      take a rocket scientist to look at a
13      calendar --
14          THE COURT:  All right.  So, tee it
15      up promptly, that's all.  Maybe you're
16      right.  If you're right, then it's a real
17      big strike against the debtor, because
18      it's -- I think that maybe they're being,
19      generally, intransigent.  On the other
20      hand, if you're wrong, you're wrong.
21      But, tee it properly -- if it's really
22      simple to understand, just tee it up very
23      quickly.  I'll decide it.
24          MR. TOFEL:  We will do that.
25          THE COURT:  Okay.

65

EAST 44TH REALTY, LLC

1

2       MR. TOFEL:   The other issue is

3   continued use of cash.   And I want to

4   deal with that very directly and then

5   Your Honor can maybe give us guidance.

6   And then I have a request or a proposal

7   for how we move forward over the next

8   days, weeks and months.   Your Honor ruled

9   in January that the debtor's use of cash

10   would continue through some date in

11   February.   It hasn't renewed since then.

12   Be that as it may --

13       THE COURT:   Is there an extant

14   order?   Is there an order, a cash

15   collateral order?

16       MR. TOFEL:   No.  No.  The debtor

17   has operated for the last month without

18   permitted use of cash.   That's not the

19   issue.   The issue, interestingly enough,

20   is that on January 18, Your Honor was

21   very clear in continuing cash and Your

22   Honor made specific rulings that part of

23   what was motivating the Court's

24   determination was that the debtor had

25   been represented to Your Honor that it

66

1            EAST 44TH REALTY, LLC

2      had not for some time and would not,

3      prospectively, and Your Honor made it

4      clear, that the debtor could not pay its

5      management fee going forward.  Although

6      we don't have any information with

7      respect to the month of February.  That

8      is, the March operating reports haven't

9      been filed and the debtor has yet once

10     again failed to provide us with a level

11     of detail or anything about February that

12     Your Honor has previously ordered.  The

13     February operating report for the month

14     of January shows that, contrary to Your

15     Honor's ruling, the management fee is

16     being paid.  Again, we think it's a clear

17     violation of Your Honor's ruling --

18          THE COURT:  Well, didn't -- I

19     thought there was a portion of the

20     management fee that could be paid, which

21     was --

22          MR. BACKENROTH:  That's right.

23          MR. TOFEL:  No.

24          THE COURT:  -- their sort of bread

25     and butter employees, and that the

67

```
 1              EAST 44TH REALTY, LLC
 2       management fee that goes to Mr. Bildirici
 3       was going to be escrowed or something to
 4       that effect?
 5              MR. BACKENROTH:  He had the right,
 6       exactly.  But direct expenses as opposed
 7       to the profit or however you want to
 8       characterize it --
 9              MR. TOFEL:  Right.  Your Honor said
10       on January 18 on page 36, beginning at
11       line 14, and I'm quoting, As I understand
12       it, the debtor has not been paying any
13       management fee to its insider for at
14       least a couple months --
15              THE COURT:  Yeah, to the insider.
16              MR. TOFEL:  The insider.
17              THE COURT:  Yeah.
18              MR. TOFEL:  No, the management fee
19       that is paid goes to B&F Imports.  That
20       is the insider.  What we are talking
21       about -- let me go back.  There was -- if
22       Your Honor referred to there was a six
23       percent fee and Your Honor directed that
24       one percent or one-sixth of that go into
25       escrow.  We're talking about now not just
```

68

```
1              EAST 44TH REALTY, LLC
2      the one percent, but the five percent --
3      the total six percent.  And Your Honor
4      said --
5              THE COURT:  That's not what I was
6      talking about.  I was talking about the
7      money that really went to the insider,
8      Bildirici.  The other people I thought
9      you didn't have a problem with because
10     they were the people, that was the
11     bookkeeper, and the person that checked
12     on the tenants --
13             MR. TOFEL:  No, Judge.
14             THE COURT:  -- the ordinary -- the
15     ordinary Joes.
16             MR. TOFEL:  Your Honor did not
17     distinguish --
18             THE COURT:  Because we weren't
19     talking about that.
20             MR. TOFEL:  Yes, we were.
21             MS. TRAKINSKI:  Judge, if he thinks
22     we're in violation of the order he should
23     tee this one up, too.
24             THE COURT:  Well, all right.  Well,
25     no, what really should be done is the
```

69

1          EAST 44TH REALTY, LLC

2      debtor should tee up a request for use of

3      cash collateral because the order is --

4      I'm not comfortable proceeding on just

5      matters that are stated on the record

6      about continuation of cash collateral.

7          MS. TRAKINSKI:  We'll take care of

8      that early next -- by the beginning of

9      next week, Judge.

10         THE COURT:  Okay.

11         MR. TOFEL:  The last issue that I

12     would propose, Your Honor obviously

13     envisions or either now agreement between

14     the parties or further discovery.  It

15     won't come as a surprise to you that we

16     respectfully disagree with Your Honor's

17     ruling on what we've referred to

18     colloquially as the gating issue.  I do

19     believe and we have to consider whether

20     we're going to seek review of that.  My

21     question for Your Honor would be whether

22     we can agree or whether Your Honor would

23     entertain coming to an agreement on

24     continued use of cash very much

25     consistent with prior budgets as Your

VERITEXT

70

1              EAST 44TH REALTY, LLC

2       Honor has ruled that we defer for a brief

3       period of time the issue which is going

4       to require a great deal of lawyer's time

5       on the issue of cure amounts and things

6       of that ilk until we both either

7       determine whether we're going to seek

8       review and obtain that review.

9              THE COURT:  Well, that's -- I

10      haven't -- this isn't an order.  This is

11      for the parties' convenience.  I've

12      staged this this way.  But there's only

13      one order that I'm going to issue, which

14      is an order granting assumption or

15      rejection or not.

16             MR. TOFEL:  Well, Your Honor had

17      before you a motion to lift stay under

18      paragraph 24 of the lease and allow us to

19      collect sublease proceeds and that teed

20      up as Your Honor will recall the issue of

21      lease termination.

22             THE COURT:  Well, I guess I can --

23      you're right, I can rule on that.

24             MR. TOFEL:  I think Your Honor has.

25             MS. TRAKINSKI:  Yeah.

71

1            EAST 44TH REALTY, LLC

2            MR. TOFEL:  As we understand it,

3     Your Honor --

4            THE COURT:  No, I mean, I can issue

5     an order on that.  That's fine.  It's an

6     interlocutory order, but I can issue it.

7     I had forgotten that you had separately,

8     in addition to in your objection to the

9     motion, you had, I remember, separately

10    made your lift/stay motion.

11           MS. LIU:  Are you saying it's

12    interlocutory, Your Honor?  Because

13    you're saying that maybe after you hear

14    all the cure amount-related testimony.

15           THE COURT:  No, it's a motion for

16    relief from the automatic stay.

17           MS. LIU:  -- you may decide to not

18    allow the assumption of the lease?  Is

19    that why?  Because otherwise you've

20    ruled.

21           THE COURT:  No, I had -- Mr. Tofel

22    had reminded me that there was a separate

23    motion for relief from the automatic stay

24    for lack of adequate protection and the

25    like.  I think that given the analysis

72

1            EAST 44TH REALTY, LLC

2     that I have to do on a lift/stay motion

3     it is interlocutory.  It does decide one

4     issue in that context.  But that's a

5     separate -- I'm not talking about the

6     motion to assume.

7        MS. LIU:  Okay.  You were talking

8     about that motion but I guess my question

9     to you now is you've made a ruling on the

10    law and the facts and the law that the

11    lease did not terminate --

12        THE COURT:  Just as a matter of

13    staging this -- the handling of this

14    trial.

15        MS. LIU:  Okay.  And then you're

16    saying, when you hear the rest you'll

17    make your final determination on whether

18    --

19        THE COURT:  Right.  As to whether

20    it can be assumed or not.

21        MS. LIU:  --the lease is assumable

22    or not.  But didn't you separately

23    already decide it hasn't been terminated?

24        THE COURT:  Yes.

25        MS. LIU:  Okay.  But you don't see

73

1           EAST 44TH REALTY, LLC

2      that as a separate --

3           THE COURT:  It's all in the context

4      of a motion to assume.  So, I don't think

5      so.

6           MS. TRAKINSKI:  But there's no

7      separate motion on the issue.

8           MR. BACKENROTH:  It's

9      interlocutory.

10          THE COURT:  There is no request for

11     declaratory judgment.  It's just to

12     really to give all the parties, as I

13     think they had sought, a way to handle

14     this matter efficiently.  But Mr. Tofel's

15     right.  There was a separate motion.

16     I'll go back and look at that.  If this

17     equally -- if my determination as to

18     termination or not, which I dealt with

19     today, applies to that motion, and I

20     think it probably does as I remember that

21     motion now, I'll issue an order on that.

22          MR. TOFEL:  Thank you, Judge.

23          THE COURT:  All right.  I guess you

24     all have to get the time records and work

25     out a discovery schedule.  I don't know

74

| | |
|---|---|
| 1 | EAST 44TH REALTY, LLC |
| 2 | if you're going to take anyone's |
| 3 | deposition besides Mr. Tofel's. |
| 4 | MS. LIU:  Oh, yes.  We will, Your |
| 5 | Honor. |
| 6 | THE COURT:  All right. So, I think |
| 7 | for now -- well, you're going to be |
| 8 | making a motion for continued use of cash |
| 9 | collateral.  I will adjourn this hearing |
| 10 | or continue this hearing to that date |
| 11 | which should definitely be within the |
| 12 | next few weeks. |
| 13 | MS. LIU:  Can I just mention a |
| 14 | scheduling difficulty?  We've previously |
| 15 | accommodated Ms. Trakinski's vacation and |
| 16 | I guess it's now my turn.  I was going to |
| 17 | be away between March 22 to March 31. |
| 18 | THE COURT:  Okay. |
| 19 | MS. TRAKINSKI:  No problem. |
| 20 | MR. BACKENROTH:  That period of |
| 21 | time is difficult for me, too, so that's |
| 22 | -- |
| 23 | MS. LIU:  And I have a -- |
| 24 | THE COURT:  Why don't you all work |
| 25 | out, you can work out -- maybe this |

75

1          EAST 44TH REALTY, LLC

2      would be a good thing.  You can work out

3      the schedule among yourselves.  Maybe

4      that would be an initial step to perhaps

5      trying to work together.

6          MS. TRAKINSKI:  We're not looking

7      to inconvenience anybody, Judge.

8          MR. BACKENROTH:  Yeah.

9          THE COURT:  Okay.  All right.  The

10     last thing I'll say which I guess I just

11     alluded to is I understand that the

12     landlord has hotly asserted over the

13     course of proceedings both in state court

14     and here for a number of months its view

15     that the lease terminated.  And it's

16     certainly entitled to continue to pursue

17     that issue.  On the other hand, knowing

18     now that it would do it on an appellate

19     level and knowing also, sort of

20     generally, how I view the attorneys' fee

21     issue, and I think, frankly, the Best

22     Products and Nicfur cases are pretty

23     instructive there, as well as Judge

24     Walrath's case in Crown, in light

25     ultimately of the underlying cure costs,

1                    EAST 44TH REALTY, LLC
2           separate and apart from the attorneys'
3           fees being what I think everyone would
4           agree is relatively a small amount of
5           money, I would strongly urge the parties
6           to try to resolve this.  One aspect of
7           that resolution in my mind clearly is
8           adequate assurance of future performance,
9           and I think one element that the
10          landlord's fully entitled to is assurance
11          that the lease will continue to be
12          performed.  But I have a hard time seeing
13          at this point continually mounting
14          attorneys' fees to terminate this lease
15          when the ultimate expense in respect of
16          the building is relatively small.  I
17          don't know whether an appellate court
18          would agree with me, but it just seems to
19          me to be contrary to the general policy
20          under New York law as certainly clearly
21          well under the bankruptcy law to keep
22          doing this.  And so, I would really urge
23          the parties to try to reach a reasonable
24          settlement here.  One thing's clear to me
25          is that this being America, the landlord

77

1               EAST 44TH REALTY, LLC

2        does have the right to continue to

3        litigate.  And I don't think its position

4        is frivolous, by any means.  So the

5        debtor is going to continue to be out its

6        attorneys' fees, as well as having the

7        risk, of course, that some material

8        portion of what the landlord is seeking

9        is going to be paid, too.  So, I think

10       there's a reason for the parties to get

11       over what has clearly been separating

12       them for the last several months and try

13       to resolve this.  And I would really urge

14       them to do so.  If they think there is a

15       basis for doing so that would be

16       materially furthered by a mediator, I'm

17       happy to appoint a mediator and direct

18       mediation.  There clearly are some very

19       strong personalities here and I think

20       that's on the client level, too, although

21       maybe it's -- maybe strong may not be so

22       much the word as frustrating and a

23       mediator may be helpful there, including

24       to deal with people at the client level.

25       So, I would urge you all to consider

78

1              EAST 44TH REALTY, LLC

2      that, too, and let me know about that.

3      Okay.

4              MR. TOFEL:  Thank you, Your Honor.

5              MS. TRAKINSKI:  Thank you, Judge.

6              (Whereupon this proceeding was

7      concluded.)

8              (Time noted:  11:40 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

79

1
2                                    **I N D E X**
3    Examination by                    Page      Line
4    (NONE)
5
6                              **E X H I B I T S**
7    Description                       Page      Line
8    (NONE)
9
10                          INDEX TO INSERTS
11                                    Page      Line
12   (NONE)
13
14                          INDEX TO RULINGS
15                                    Page      Line
16   (NONE)
17
18
19
20
21
22
23
24
25

80

1                    C E R T I F I C A T I O N

2

3        I, Lisa Bar-Leib, hereby certify that the

4    foregoing is a true and correct transcription,

5    to the best of my ability, of the sound

6    recorded proceedings submitted for

7    transcription in the matter of the bankruptcy

8    hearing for except, where as indicated, the Court

9    has modified its bench ruling:

10   EAST 44TH REALTY, LLC.

11        I further certify that I am not employed

12   by nor related to any party to this action.

13

14        In witness whereof, I hereby sign this

15   date:

16   March 13, 2006.

17

18   _____

19                    Lisa Bar-Leib

20

21

22

23

24

25