UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                          :
In re:                                    :       Chapter 11
                                          :
EAST 44TH REALTY, LLC,                    :       Case No. 05-16167 (RDD)
                                          :
               Debtor.                    :
---------------------------------------------------------X


### TRUSTEE'S RESPONSE TO OBJECTION TO CURE CLAIM

TO:   THE HONORABLE ROBERT D. DRAIN,
      UNITED STATES BANKRUPTCY JUDGE

   David R. Kittay, Chapter 11 Trustee for the estate of East 44th Realty, LLC (the "Debtor"), as and for his Response to the Objection to Cure Claim filed by Yusef Bildirici dated August 6, 2007 (the "Objection") respectfully states:

### Preliminary Statement

   1.   Yusef Bildirici's ("Bildirici") Objection is yet one more example of why the Stipulation[1] between and among the Trustee, the Landlord and the Lender represents the Debtor's estate's best chance at selling the estate's only asset, paying the Debtor's secured creditor in full, providing a meaningful distribution to general unsecured creditors and, hopefully, a distribution to equity[2]. Absent approval of the Stipulation, the Landlord, Bildirici and the Lender will continue to

---

   [1]   Terms not otherwise defined herein are ascribed the meaning set forth in the Motion of the Chapter 11 Trustee For: (I) an Order (A) Approving an Agreement for the Trustee to Assume and Assign, Sell and Convey Leases, (B) Approving Bidding Procedure (Including Break-Up Fee), and (C) Approving Notice and (II) an Order Approving the Trustee's Sale of the Leases, dated June 13, 2007.

   [2]   Ironically, the more time (and therefore money) the Trustee spends responding to Bildirici's objections, the less money there will be for a distribution to equity.

dissipate estate assets in improvident litigation that will benefit none and harm all.

## Payment of the Lender's Legal Fees is
## Appropriate and in the Best Interest of the Debtor's Estate

2. Pursuant to the terms of the Stipulation, the Lender is not receiving more than it is entitled to under the terms of the Consolidated, Amended and Restated Mortgage, Security Agreement and Assignment of Leases and Rents dated December 4, 2002 (the "Mortgage") and the Consolidated Amended and Restated Promissory Note dated December 4, 2002 (the "Note"). In the context of reviewing the Lender's time records, which he did prior to entering into the Stipulation[3], the Trustee carefully considered:

> Paragraph 29 of the Mortgage which explicitly makes the Debtor "responsible for the payment of all costs and expenses incurred by Mortgagee in connection with the enforcement of this Mortgage and the other Loan Documents.";

> Paragraph G of the Note which provides that: "[t]he entire principal balance of this Note, together with all accrued and unpaid interest thereon, and all other expenses, including, but not limited to, reasonable attorneys' fees and expenses incurred by Lender in collecting or enforcing payment hereof ... shall, upon written notice from Lender, immediately become due and payable ...";

> Paragraph J. (c) of the Note which provides that, even though the Note is non-recourse, the "Borrower **shall** be personally liable to Lender for any and all claims, liabilities, actions, proceedings, obligations, debts, damages, losses, reasonable costs and expenses .... (including but not limited to, reasonable attorneys' fees and other costs of defense) Lender shall incur due to, relating to, caused by, attributable to or arising from" any number of causes including fraud in obtaining the loan, misappropriation of security deposits and the filing of bankruptcy (emphasis in the original); and

> Paragraph 3 and 4 of the Second Interim Stipulation (A) Authorizing Use of Cash Collateral and (B) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 (the "Second Cash Collateral Order"), which was "so ordered" on September 30, 2005 in which the Debtor

---

[3] The Trustee inadvertently left this discussion out of his motion seeking approval of the Stipulation (the "Motion") in his efforts to provide all interested parties with sufficient time to review and interpose objections to the requested relief.

explicitly consented to the payment of the Lender's fees, costs, expenses and charges related to the Note and Mortgage.

3. In the same way that the Trustee analyzed the terms of the Lease to determine the strengths and weaknesses of the Landlord's position, the Trustee and his professionals reviewed the applicable sections of the Lease and determined that the fees incurred by the Lender resulted from and were related to Paragraph TWENTY-EIGHTH of the Lease. The Trustee determined that because Paragraph TWENTY-EIGHTH arguably required the Landlord to enter into a new lease with the Lender, much, if not all, of the ensuing litigation reasonably flowed therefrom. Although the Trustee attempted to negotiate a reduction in the Lender's fees, the Lender refused to reduce its fees on the ground that it was entitled to recover in full (for work that resulted as a consequence of the Debtor's default under the Note and Mortgage and the related bankruptcy work) under all of the provisions cited to above.

4. Thus, although the legal fees were high, they were reasonable within the scope of work performed and the value of the asset being preserved. Moreover, the Debtor reaffirmed its commitment to pay all of the Lender's costs and expenses when it entered into the Second Cash Collateral Order. The Debtor's principal can not now seek to revise its obligation to pay the Lender nor can it expect the Trustee to.

5. Accordingly, in determining that the Lender was entitled to its $499,760.98 in fees, the Trustee applied the three-step analysis the Court suggested at the March 10, 2006 hearing and determined that payment of the fees was reasonable and appropriate. Because the Landlord was only willing to enter into a stipulation which resolved its claims with both the Debtor and the Lender,

and the Lender would only enter into a stipulation which included its payment in full, absent the full payment to the Lender, the Trustee would not have been able to negotiate a resolution of the obstacles impeding the sale of the Lease.

### Payment of the Monetary Cure Amount Represents a Meaningful Reduction of the Amount Owed to the Landlord and Is In the Estate's Best Interest

6.      Pursuant to Bankruptcy Code Section 365(b), the Trustee is required to cure all monetary and non-monetary defaults under the Lease. As set forth in great detail in the Motion, after carefully reviewing all of the Landlord's time records, documents filed in the First Litigation, the Second Litigation, the Appellate Litigation, the Court of Appeals Litigation, the Cash Collateral Motion, the Space Lease Dispute, the Assumption Motion and the Lease, the Trustee negotiated a settlement of the Landlord's attorneys' fees. The Trustee's Notice of Monetary Cure Amount dated July 17, 2007, did not reflect the actual amount due to the Landlord, it reflected the compromised amount that the Landlord had agreed to.

7.      As explained in greater detail in the Motion, the Landlord's attorney's fees through June 2007 were $1.9 million. However, the $1.7 million Monetary Cure Amount embodies more than a 14% reduction in legal fees. The $1.7 million payment: (i) eliminates potential litigation costs of $500,000, (ii) encompasses the Landlord's agreement to give up his claim to Space Lease Proceeds aggregating approximately $2 million, (iii) represents a waiver of all legal fees from and after July 1, 2007 (unless the Closing is delayed beyond October 15, 2007), and (iv) negates a potential disastrous holding by the appellate court that the Lease terminated in 2005.

8.      Bildirici's argument that the Landlord is only entitled to legal fees incurred after

4

Lease termination is, simply put, incorrect. Bildirici objects to the recovery of legal fees on the basis of the *ipso facto* provisions of Lease Paragraph THIRTEENTH and the damage provisions of Lease Paragraph 14. However, the Landlord was never claiming under the *ipso facto* provisions of Paragraph THIRTEENTH (1)(a). Instead, as set forth in the Motion, the Landlord claimed a default under Paragraph THIRTEENTH (2)(b) and recovery under Paragraph FOURTEENTH (2) which provides for recovery if the Lease is terminated by summary proceeding, or otherwise as provided in paragraph "THIRTEENTH". The fact that the Lease may not have terminated – which is disputed – is irrelevant to the payment of the Landlord's attorneys' fees.

9. Accordingly, Bildirici's attempt to discount the Monetary Cure Amount by the $124,597.50 in Bank Litigation fees because the Lease did not terminate is misplaced.

10. Similarly, and as set forth in greater detail in the Trustee's Motion, the $823,571 Bildirici claims is not compensable because it represents time accrued for fees arising solely under the Bankruptcy Code is incorrect. The vast bulk of this time flows from the initial default under the State Settlement and the Landlord's efforts to protect an asset worth at least $16.7 million dollars. Finally, the approximately $421,000 of "miscellaneous" fees represents time spent on a multitude of the areas that were identified in the Trustee's breakdown but due to "lumping" and lack of description could not be explicitly categorized. However, the fees at issue took place within the time-frame and context of previously identified categories and the Trustee believes that, in the context of the case, are compensable. Thus, as identified by the Trustee, the full $1.9 million in fees through June 2007 is compensable. Moreover, the fees were justified by: (a) the value of the asset at risk (the Lease alone is worth $16.7 million) and (b) as noted by the *Nicfur-Cruz* court, the fact that the litigation (which was

5

caused in large part by Bildirici) was necessary to preserve the creditor's interest.

### The Third Party Releases and Indemnification Are Justified and Appropriate

11. Paragraph 3 of the Stipulation provides that the Trustee will file a plan of reorganization that includes a permanent injunction against the assertion by equity of any claims against the Landlord, the Lender or related entities. The Trustee believes that such an injunction is appropriate given the unique circumstances of the case and the substantial consideration provided by the Lender and the Landlord, namely an acknowledgment that the Lease exists and is capable of being assumed. Although Bildirici believes the issue of Lease termination has been decided, the rulings by the various courts, the interlocutory nature of the District Court's decision and all of the parties' unwillingness to concede anything belie that assertion.

12. Bildirici also fails to read the language of the Stipulation. The Trustee is only obligated to use his best efforts to obtain Court approval of a plan containing the release provisions. If the Court determines that the releases render the plan unconfirmable, the Trustee will delete such provisions.

13. Similarly, the indemnification provision of the Stipulation are fair and equitable. It was not, as Bildirici asserts in paragraph 86 of the Objection, negotiated for the purpose of allowing the Lender or Landlord to sue Bildirici. Rather, it was negotiated to provide the Landlord and the Lender assurance that their (financial) involvement in the Debtor's case would terminate upon the sale of the Lease. Moreover, the provision only comes into existence if Equity chooses to commence an action, the defense of which by the Landlord or Lender would diminish the amount available to satisfy the Lender's secured claim and the Landlord's cure claim and all other general unsecured claims. The

decision to have its general unsecured claim subordinated to the administrative claim of the Lender and/or Landlord would be solely the insiders' choice.

### The Debtor's Estate is Not Administratively Insolvent

14. Bildirici mistakenly claims that the Debtor's estate is administratively insolvent. This is not accurate. The Trustee presently has approximately $300,000 in his operating account and approximately $100,000 is being held by Davidoff Malito & Hutcher ("DMH"). When combined with the minimum $16.7 million the Trustee will realize for the Lease, the Debtor's estate is comprised of approximately $17.1 million. Even after satisfying closing costs[4], there will be approximately $1,606,000 to satisfy Chapter 11 administration expenses. Even assuming Chapter 11 administration fees of $765,000[5], there would still be over approximately $840,000 to satisfy the Trustee's statutory commission of $525,000 and all other claims.

15. Although it is premature to consider plan confirmation[6], the Trustee notes that the estate is administratively solvent. Moreover, the Trustee has not yet determined if he will commence any litigation which could result in additional funds for the estate.

---

[4] The Trustee will pay the Lender $12,660,000, the Landlord $1,700,000, Marcus & Millichap $334,000 and will set aside the full $200,000 for the Repair Escrow to repair items Bildirici was obligated address and which he claimed he did address and which are still outstanding. In addition, he may have to pay the $300,000 break up fee and set aside approximately $300,000 to replace security deposits.

[5] The Trustee notes that Bildirici now asserts that Davidoff Malito & Hutcher ("DMH") may have a Chapter 11 administration claim of $250,000. The Trustee has been advised that DMH has no claim against the estate. Out of an abundance of caution, the Trustee includes the full $250,000 in his calculation.

[6] Bildirici mistakenly argues that the estate would be liable for transfer taxes if the plan is not confirmed. The contract, signed by the Purchaser, clearly states that to the extent the Trustee is unsuccessful in confirming a plan, the Purchaser will pay any and all transfer taxes.

**The Remainder of Bildirici's Assertions are False or Inaccurate**

16. In order to avoid a detailed, paragraph-by-paragraph response to each of the remaining points raised by Bildirici, the Trustee summarizes his response as follows:

The Trustee is aware of the $350,000 the Appellate Court ordered the Debtor to pay to the Landlord as a condition to obtaining a stay and such monies were used by the Landlord to satisfy two months' of back rent and additional rent (including water and sewer charges and real estate taxes) and the remaining approximately $20,000 was used to pay the legal fees of the Landlord's landlord/tenant counsel. Objection paragraphs 5 and 66-67;

There has been no final determination on the existence of the Lease. The District Court's decision was interlocutory. Objection paragraphs 10, 70;

The Landlord's attorneys' fees are compensable and the absence of a signed retention agreement does not preclude such payment because the Landlord and its counsel had a pre-existing relationship that negated the need for a signed retention agreement. Objection paragraphs 42-48;

The repairs were required both under the terms of the Lease and the State Court Settlement, as found by Justice Diamond. The fact that the Debtor did not believe the Landlord had any reason to commence a suit (given the value of the repair work to be performed) does not mean that the Landlord was not permitted to commence such a suit, as demonstrated by the Trustee in his Motion. Objection paragraphs 52 and 53;

Prior to entering into the Stipulation, the Trustee confirmed that the legal fees were for legal fees only and did not include any sort of management fee. Objection paragraph 56.

Prior to negotiating the Stipulation, the Trustee reviewed the pleadings related to the so-called "off-set" for water and sewer overcharges. The Trustee determined that although the Debtor had been "over-charged" for water and sewer by approximately $1,500/month, it had underpaid real estate taxes by approximately $7,500/month. These issues were resolved by the Appellate Division ordered $350,000 payment referenced above. Objection paragraphs 57-65;

As set forth in the Motion, the Trustee believes that the language in the Lease is vague and that the law governing the Space Lease Dispute is contested; Objection paragraph 69; and

The issues in this case involve more than a hearing on a fee dispute. They also involve a determination of the Lease's viability and the Space Lease Dispute. Appeals would most likely

be taken to the Second Circuit on one or both of these issues.  Given the issues at hand, the parties' past conduct and the appellate courts' docket, it is unlikely that these issues would be resolved promptly or cost-effectively.  Objection paragraph 73-76.

17. For all of these reasons, and those set forth in greater detail in the Motion, the Objection should be denied and the relief requested in the Motion be granted in its entirety.

Dated: Tarrytown, New York
       August 7, 2007

KITTAY & GERSHFELD, P.C.
Attorneys for the Trustee

 /s/ Judith L. Siegel
Judith L. Siegel (JS 1208)
100 White Plains Road
Tarrytown, New York 10591
(914) 332-8000