```
UNITED STATES BANKRUPTCY COURT             Return Date: December 5, 2007
SOUTHERN DISTRICT OF NEW YORK              Return Time: 10:00 a.m.
---------------------------------------------------------x
In re:                                  :   Chapter 11
                                        :
EAST 44TH REALTY, LLC,                  :   Case No. 05-16167 (RDD)
                                        :
                        Debtor.         :
---------------------------------------------------------x
```

## AFFIRMATION OF DAVID R. KITTAY

David R. Kittay, says under penalty of perjury and respectfully states:

1. I am over the age of 18 and I am an attorney duly admitted to practice before the Courts of the State of New York and the District Courts for Southern and Eastern Districts of New York.

2. The results achieved in this case speak for themselves. It is my hope that this Court, which is intimately familiar with the case as a whole, and particularly familiar with the situation as it presented itself upon my appointment, will agree that we took a case that could charitably have been called a mess and steered it to a successful conclusion, overcoming numerous obstacles that appeared insurmountable. The facts of the instant case are readily distinguishable from the *Brous* case. Indeed, I believe that application of the *Brous* methodology to cases like this one – where creditors will be paid 100%, where the Trustee undertook significant risk and where it was the Trustee's savvy and tenacity that made the result possible -- would discourage experienced bankruptcy practitioners from serving as bankruptcy trustees, particularly where, as here, there were serious liability issues and the prospect of even getting paid hourly rates was far from assured. For these reasons, and those set forth in my *Response to Bildirici's Objection to the Commission Application and the Fee Application* (the "Response"), I respectfully urge the Court to award the maximum percentage commission set forth in Section

326 of the Code.

3. Review of the case history will demonstrate that I gave careful consideration to Bildirici's assertion that the many years of litigation and the Debtor's bankruptcy case were caused by the acts of its Landlord which was set on recovering the Lease. The documents will show that I also considered the Landlord's arguments that the Lease at issue had terminated in the Spring of 2005 and that as a result of such termination, the Debtor's estate had no Lease to assume and assign and that the Landlord was owed approximately $2 million in sub-lease proceeds.

4. As set forth in the *Commission Application*, the *Fee Application*, the *Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) Seeking Approval of Global Stipulation and Mutual Releases Between and Among David R. Kittay, Chapter 11 Trustee for the Debtor, New York Community Bank and East Forty-Fourth Street L.L.C.* filed July 27, 2007 (the "9019 Motion"), and the *Trustee's Brief in Opposition to Bildirici Brief* (the "Trustee's Brief"), I carefully analyzed each and every one of the Landlord's time entries, the Lease provisions and the applicable law and determined that: (a) the Landlord was entitled to approximately $1.7 million under the terms of the Lease; (b) a legitimate question existed as to the Landlord's rights to the sub-lease proceeds; and (c) the Lease actually may have terminated in Spring 2005.

5. My analysis was supported by, among other things, the Appellate Division, First Department's conclusion that the Landlord was entitled to appeal the Debtor's stay of an earlier State court decision dissolving a "Yellowstone Injunction" on the ground that the Debtor's stay was mooted by the fact that the Lease had terminated prior to the requested relief being sought.

*See, e.g.*, *9019 Motion* at ¶89; *Trustee's Brief*, p. 8.

6.   My concerns were recognized by this Court to be legitimate at the August 8, 2007 hearing on the *9019 Motion* wherein the Court stated, among other things:

> [t]he first issue, the issue of pre-petition termination, was one that I decided as a <u>threshold</u> matter before considering the issues raised by the debtor. ... I concluded that it had not been fully terminated or, <u>perhaps better stated, that the debtor still maintained an interest in the lease. That issue is one that is still subject to appeal. An interlocutory appeal was denied, but that threshold issue is one that I recognize a different court could view differently</u>.

*Transcript of August 8, 2007 Hearing on the 9019 Motion* (the "*9019 Transcript*"), pp. 39-40 (emphasis added).

7.   The steps I took in analyzing the Landlord's claim to the sub-lease proceeds are set forth in the *9019 Motion*, as well as in the *9019 Transcript*. There, too, the Court acknowledged that "there [was] at least some risk that the Landlord would win." *9019 Transcript*, pp. 40, 41.

8.   As discussed in the case law set forth in my Response, Congress's intent in drafting the phrase "moneys disbursed or turned over" included situations such as the instant case where a trustee sells an asset on an all cash basis and ensures that the debtor's secured creditor receives payment on its claim:

> It should be noted that the base on which the maximum fee is computed includes moneys turned over to secured creditors, to cover the situation where the trustee liquidates property subject to a lien and distributes the proceeds. commission should be calculated on the full amount of funds disbursed either by myself or by my agent.

This is entirely in keeping with Congress's intent that my role as a trustee is to collect and reduce to money the debtor's assets.

9.   As evidenced by the documents attached to my Response, the Lender was paid in

3

full on its outstanding mortgage and issued, among other things, a mortgage satisfaction. It also issued a new loan and mortgage to Global. In fact, in paragraph 25 of his Objection, Bildirici complains about the $308,000 mortgage recording tax paid with respect to the new mortgage. In addition, Intracoastal Title Company disbursed $1,675,517.90 to the Lender and $1.7 million to the Landlord. My bankruptcy counsel disbursed $324,000 to my real estate broker. The remainder of the monies on which I seek commission relate to disbursements made by my counsel and managing agent to run the Debtor's building. As discussed in my Response, case law directs that I be allowed to calculate my commission on the full amount of the funds disbursed either by myself or my agents.

10. As for Bildirici's contention that commission should not be calculated based on the Bank's new loan, although I did not believe that I could alter the bidding procedures and the terms of the Global Agreement to permit the assignment (as set forth in Section 3 of the Global Agreement, the sale of the Lease was an all-cash transaction), without opening the sale process up to appeals and the possibility that the entire process would have to be repeated, the Lender independently advised my counsel that it would not accept an assignment of the outstanding mortgage to Global. It is my understanding that the Lender wanted to receive the consideration necessary to satisfy this obligation and wipe the obligation off of its books. The only means by which the Lender would participate in the Global transaction was if it issued a new mortgage, for new consideration to Global. *See* copy of October 4, 2007 time records (pg. 170 of 184) annexed to Fee Application as Exhibit C.

11. Bildirici is also incorrect when he asserts that K&G's fees should be reduced by time spent by other attorneys (*i.e.,* Proskauer Rose LLP) reviewing sale contracts and working

4

on the aborted G Squared closing and the successful Global closing. As set forth in the *Response*, the *Commission Application*, the *Fee Application* and the contemporaneous time records annexed to the Fee Application as Exhibit C, K&G's efforts were focused solely on bankruptcy trustee issues. As a result of K&G's efforts, the Global Agreement and the G Squared Agreement were so favorable to the Estate that both the Lender and Proskauer were concerned that it would be difficult to find a purchaser to execute such a document. They were wrong, and it was these favorable provisions that enabled me to retain Global in the transaction after G Squared's default and close the transaction.

12.    Indeed, it is only as a result of K&G's efforts in drafting and inserting the language that required a one-day closing with time of the essence that I was able to successfully argue to this Court that the Estate was entitled to retain G Squared's $1.67 million down payment. It is ironic that it is this downpayment that in the main constitutes a potential distribution to equity, which presumably gives Bildirici the financial incentive to seek to reduce the compensation awarded to the Trustee and his counsel.

13.    Moreover, as detailed in K&G's time records, Global's title company did not think title was insurable given G Squared's appeal of the Motion of the Chapter 7 Trustee for Entry of an Order in Accordance with Court's August 9, 2007 Order Authorizing Release of Escrowed Funds. My counsel worked with the title company to assuage the title company's concerns and persuade it to issue title. If K&G had not been able to satisfy the title company, I may have been deemed to have defaulted under the terms of the Global Agreement and I may have been required to return the Global down payment. In that case, I would have lost the Estate's only remaining potential purchaser and, I believe, the case would have been converted

5

to a case under Chapter 7 of the Bankruptcy Code.

14.    For all of the foregoing reasons, the *Commission Application* and the *Fee Application* should be granted in their entirety.

15.    In order that the Court have a full record on these applications for compensation, I am annexing copies of the following documents:

a.   Brief of David R. Kittay, Chapter 11 Trustee for the Estate of East 44th Realty, LLC, in Opposition to Appellant's Appeal;

b.   Motion Seeking Approval of (I) an Order (A) Approving an Agreement For the Trustee to Assume and Assign, Sell and Convey Leases, (B) Approving Bidding Procedure (Including Break-up Fee), and (C) Approving Notice and (II) an Order Approving the Trustee's Sale of the Leases ("Sale Motion") filed on June 14, 2007;

c.   Objection to Sale Motion filed on July 6, 2007;

d.   Transcript of Motion of the Trustee for Order Approving an Agreement to Assume and Assign, Sell and Convey Leases, Approving Bidding Procedure and Approving Notice and Order Before the Honorable Robert D. Drain United States Bankruptcy Judge;

e.   Order Approving the Bidding Procedure for the Auction and Sale of the Estate's Assets entered July 13, 2007;

f.   Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) Seeking Approval of Global Stipulation and Mutual Releases Between and Among David R. Kittay, Chapter 11 Trustee for the Debtor, New York Community Bank and East Forty-Fourth Street L.L.C. filed July 27, 2007;

g.   Objection to Landlord's Cure Claim filed on August 2, 2007;

h.   Objection to Trustee's Motion for Approval of Settlement filed on August 6, 2007;

i.   Response to Yusef Bildirici's Objection to Cure Claim filed on August 7, 2007;

j.   Transcript of August 8, 2007 Hearing on the 9019 Motion;

k. Order Approving Global Stipulation and Mutual Releases between and among David R. Kittay, Chapter 11 Trustee for the Debtor, New York Community Bank and East Forty-Fourth Street, L.L.C. filed August 9, 2007 ("Global Stipulation Order");

l. Transcript of August 8, 2007 Hearing on Sale Motion;

m. Order Authorizing Assumption, Assignment and Sale of certain unexpired leases entered August 9, 2007;

n. Sale-Purchase Agreement between David R. Kittay and Global Capital Holding LLC;

o. Sale-Purchaser Agreement between David R. Kittay and G Squared Management LLC and G Squared Associates LLC;

p. Motion of the Chapter 7 Trustee for Entry of an Order in Accordance with Court's August 9, 2007 Order Authorizing Release of Escrowed Funds, filed August 23, 2007;

q. Objection to Motion for Authority to Release Funds from Escrow filed on September 7, 2007;

r. Declaration of Larry I Glick in Opposition to Motion for Authority to Release Funds from Escrow filed September 7, 2007;

s. Response to Objection to Motion for Authority to Release Funds from Escrow;

t. Affidavit of Joshua J. Angel in Opposition to Motion to Release Deposit from Escrow filed September 7, 2007;

u. Affidavit of Adam T. Berkowitz in Further Support of Motion to Release Deposit from Escrow;

v. Order Authorizing Release of Escrowed Funds to Estate in Accordance with Court's August 9, 2007; and

      w.      Appellee's Brief Seeking Reversal of Court's Global Stipulation Order.

Dated: Tarrytown, New York
      December 4, 2007

                               /s/ David R. Kittay
                               David R. Kittay

Exhibits

Copies of each of the Exhibits referenced herein are not being electronically filed due to their voluminous nature. Copies can be obtained, free of charge, by contacting the Trustee, care of his attorney, Judy Siegel, Esq., Kittay & Gershfeld, P.C., 100 White Plains Road, Second Floor, Tarrytown, New York 10591, (914) 332-8000, jsiegel@kittaylaw.com